Jeremiah A. Lowe (CA SBN 239166)
jeremiah@lowelazarlaw.com
Victoria J. Lazar (CA SBN 298668)
victoria@lowelazarlaw.com
Lowe Lazar Law, LLP
402 W. Broadway, Suite 1720
San Diego, CA  92101
Telephone:      (619) 878-2725
Facsimile:      (619) 878-2737

**Attorneys for Plaintiff**
**JUSTINO RUPARD and the Estate of Lonnie Rupard**

Daniel M. Gilleon (CA SBN 195200)
dan@gilleon.com
The Gilleon Law Firm
1320 Columbia St., Suite 200
San Diego, CA 92101
Telephone:      (619) 702-8623
Facsimile:      (619) 702-6337

**Attorneys for Plaintiff**
**RONNIE RUPARD and the Estate of Lonnie Rupard**

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

ESTATE OF LONNIE RUPARD, BY
AND THROUGH HIS
SUCCESSORS-IN-INTEREST
JUSTINO RUPARD & RONNIE
RUPARD; JUSTINO RUPARD
INDIVIDUALLY AND IN HIS
CAPACITY AS SUCCESSOR IN
INTEREST; AND RONNIE RUPARD
INDIVIDUALLY AND IN HIS
CAPACITY AS SUCCESSOR IN
INTEREST

                Plaintiff,

vs.

COUNTY OF SAN DIEGO; BILL
GORE, IN HIS INDIVIDUAL
CAPACITY; KELLY MARTINEZ, IN
HER INDIVDIUAL CAPACITY;
COAST HOSPITALIST MEDICAL
ASSOCIATES, INC. (CMHA);
COAST CORRECTIONAL
MEDICAL GROUP (CCMG); MARK
O'BRIEN, IN HIS INDIVIDUAL
CAPACITY; CORRECTIONAL

Case No:  **'23CV1357 CAB BLM**

**COMPLAINT FOR DAMAGES FOR:**

1. **Wrongful Death;**
2. **Dependent Adult Neglect;**
3. **42 U.S.C. § 1983: Deliberate Indifference (*Monell*);**
4. **42 U.S.C. § 1983: Substantive Due Process (*Monell*);**
5. **42 U.S.C. § 1983: Deliberate Indifference;**
6. **42 U.S.C. § 1983: Substantive Due Process;**
7. **Cal. Gov. Code § 52.1 (Bane Act);**
8. **Cal. Gov. Code § 845.6 (Failure to Summon Medical Care);**
9. **Negligence**

HEALTHCARE PARTNERS (CHP);
NAPHCARE; BARBARA LEE, IN
HER INDIVIDUAL CAPACITY; JON
MONTGOMERY, DO, IN HIS
INDIVIDUAL CAPACITY;
DEFENDANT DEPUTIES DOES 1-
10, DEFENDANT MEDICAL
PROVIDERS DOES 1-10;
DEFENDANT SUPERVISOR DOES;
1-10.

Defendants,

**10.  Negligence: Negligent Training and Supervision**

**DEMAND FOR JURY TRIAL**

Plaintiffs JUSTINO RUPARD and RONNIE RUPARD, individually and on behalf of the Estate of LONNIE RUPARD hereby allege as follows:

## **INTRODUCTION**

1.    Plaintiffs Justino Rupard and Ronnie Rupard individually, and in their capacities as successors-in-interest to the estate of Lonnie Rupard (hereinafter "Plaintiffs") sue to seek justice and recover damages arising from the wrongful death of their father, Lonnie Rupard, (hereafter "Lonnie") while he was in the care and custody of the County at the San Diego Central Jail (hereafter "SDCJ").

2.    On March 17, 2022, Lonnie died at the age of 47 while in custody at the SDCJ due to neglect.

3.    Lonnie suffered from schizophrenia, and he was dependent on others for his wellbeing.

4.    While in custody at the SDCJ, County employees neglected his schizophrenia and basic care needs despite obvious signs that he was in medical distress requiring medical care.

5.    According to the medical examiner, Lonnie ultimately died from pneumonia, malnutrition, and dehydration in the setting of neglected schizophrenia.

6.    While at the SDCJ, Lonnie did not receive even the most basic level of human dignity and care.

7.    The neglect surrounding his care was so egregious that the Medical Examiner ruled his manner of death to be a homicide.

LOWE LAZAR LAW, LLP

-2-

COMPLAINT.

8.      Plaintiffs request a jury trial.

### JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs assert causes of action for constitutional violations arising under 42 U.S.C. § 1983.

10.     The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

11.     The County of San Diego's Medical Examiner ("ME") disclosed its findings on the cause of death until March 2, 2023. In accordance with the requirements of the California Tort Claims Act (Cal. Gov. Code §§ 810-996.6).

12.     On March 9, 2023, Plaintiff Justino Rupard served a timely tort claim against the County of San Diego and its employees under Cal. Gov. Code § 900.4, and resubmitted the claim on March 14, 2023, along with an application for leave to file a late claim pursuant to Cal. Gov. Code § 911.4.

13.     On March 10, 2023, Plaintiff Ronnie Rupard served a timely tort claim against the County of San Diego and its employees under Cal. Gov. Code § 900.4 along with an application for leave to file a late claim pursuant to Cal. Gov. Code § 911.4.

14.     Plaintiffs' claims were timely because the accrual date for presenting a government tort Claim against the County of San Diego ("County") for their father's death was March 2, 2023, when the County first released its Medical Examiner's report ruling Lonnie's death a homicide. Under the Delayed Discovery Doctrine, accrual of the cause of action is postponed until the plaintiff discovers, or has reason to discover, the cause of action. Plaintiffs did not know, and had no way of knowing, the cause of action stemming from Lonnie's death on March 17, 2022, until the ME report was released on March 2, 2023.

15.     Even if the accrual date was the date of Lonnie's death on March 17, 2022, as the

County claims, which it is not, Plaintiffs timely sought leave to file a late claim for failure to present a claim within six months of Lonnie's death on account of inadvertence, surprise, and excusable neglect. Plaintiffs had no way of knowing there was any cause of action related to Lonnie Rupard's death until March 2, 2023, when the San Diego County ME disclosed the findings that Lonnie's death was due to pneumonia, malnutrition, and dehydration in the setting of neglected schizophrenia, ruling the death a homicide.

16.   Prior to the ME's announcement, the County prevented Plaintiffs from discovering the facts giving rise to a cause of action by publishing incomplete and false information including, but not limited to, completely omitting all relevant facts and findings consistent with the ultimate cause of death disclosed on March 2, 2023, including dehydration, malnutrition, and neglected schizophrenia.

17.   Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiffs' claims arise out of events and omissions occurring in the County of San Diego, which is situated in the Southern District of California.

## **PARTIES**

18.   Plaintiffs are the biological children of Lonnie Rupard.

19.   Plaintiffs are, and have at all times relevant to this Complaint, residing in San Diego, California.

20.   In addition to suing individually for personal damages arising from losing their father, Plaintiffs sue as Lonnie's successors-in-interest to prosecute all claims surviving Lonnie's death pursuant to Cal. Civ. Code § 377.30. See Exhibit A, Declaration by Justino Rupard; Exhibit B, Death Certificate.

21.   Defendant County of San Diego (hereinafter "County") is a governmental entity organized and existing under the laws of the State of California.

22.   Defendant Bill Gore (hereinafter "Gore") was the Sheriff for the San Diego County Sheriff's Department just prior to Lonnie's death, retiring on February 3, 2022. In his capacity as Sheriff, Gore was a final policymaker for the Sheriff's Department

and for the County on matters relating to the Sheriff's Department, the SDCJ, and its deputies, employees, and agents. He was also responsible for the County's compliance with state and federal laws and constitutions and for the training and supervision of County employees and agents.

23.     Defendant Kelly Martinez (hereinafter "Martinez") was the Undersheriff for the San Diego County Sheriff's Department prior to Lonnie's death and the Acting Sheriff at the time of Lonnie's death, from February 3, 2022 to April 5, 2022. In her capacity as Undersheriff and Acting Sheriff, Martinez was a final policymaker for the Sheriff's Department and for the County on matters relating to the Sheriff's Department, the SDCJ, and its deputies, employees, and agents. She was also responsible for the County's compliance with state and federal laws and constitutions and for the training and supervision of County employees and agents.

24.     Defendant Medical Providers Does 1-10 (hereinafter "Doe Medical Providers") are all County employees, agents, or contractors working within the Sheriff's Department Medical Services Division who were responsible for Lonnie's medical care, including follow-up assessments and referrals for further treatment, whether or not they actually provided Lonnie with any medical care. Doe Medical Providers include all Qualified Mental Health Providers. Doe Medical Providers were acting under color of law and within the scope of their employment at all times relevant to the events described in this Complaint.

25.     Defendant Dr. Jon Montgomery, DO was, at all times relevant, the Chief Medical Officer for the Sheriff's Department and was responsible for overseeing the Medical Services Division at the SDCJ. He was responsible for and oversaw the development and implementation of quality assurance and utilization review policies and procedures. All medical and psychiatric doctors and staff at the SDCJ worked under Dr. Montgomery's direction. He is sued in his individual capacity for his failure to properly treat Lonnie, failure to properly oversee Lonnie's care, and failure to supervise other medical staff in caring for Lonnie.

26.     On information and belief, Defendant Barbara Lee, at all times relevant, was the Medical Administrator for the Sheriff's Department. She was responsible for supervising medical staff at the SDCJ, including Defendant Medical Provider Does 1-10. She was also responsible for and oversaw the implementation of quality assurance and the development and implementation of policies and procedures.

27.     On information and belief, Defendant Coast Correctional Medical Group (hereinafter "CCMG") and Coast Hospitalist Medical Associates, Inc.("CHMA") were third-party contractors to the San Diego County Sheriff's Department and employed, supervised, and/or trained Medical Provider Does 1-10.

28.     On information and belief, Mark O'Brien was the President and CEO of CHMA and CCMG at all times relevant. He is sued in his individual capacity for his own conduct and omissions and failing to properly train and oversee medical staff operating within the Medical Services Division at the SCDJ.

29.     On information and belief, NaphCare was a third-party contractor to the San Diego County Sheriff's Department and employed, supervised, and/or trained Defendant Medical Provider Does 1-10.

30.     On information and belief, Correctional Healthcare Partners ("CHP") was a third-party contractor to the San Diego County Sheriff's Department and employed, supervised, and/or trained Defendant Medical Provider Does 1-10.

31.     Defendant Deputy Does 1-10 are all Sheriff's Department deputies who were responsible for summoning medical or mental health care, observing any audio or video monitors, or conducting wellness or safety checks on Lonnie in any housing unit in which Lonnie was housed leading up to his death on March 17, 2022, including but not limited to deputies in the housing unit "7D" or Module D on the seventh floor.

32.     Defendant Deputy Does 1-10 will hereinafter be referred to collectively as "Doe Deputies" unless otherwise noted. Doe Deputies were acting under color of law and within the scope of their employment at all times relevant to the events described in this Complaint.

33.     Defendant Deputy Supervisor Does 1-10 (hereinafter "Doe Deputy Supervisors") are Sheriff's Department deputies who were responsible for training and supervising Doe Deputies. Doe Deputy Supervisors were acting under color of law and within the scope of their employment at all times relevant to the events described in this Complaint.

34.     Doe Deputies and Doe Medical Providers are sued in their individual capacities for the purposes of claims arising under § 1983 and as County employees for the purposes of claims arising under state law.

35.     Plaintiffs are ignorant of the true names of all Doe Deputies, Doe Deputy Supervisors, and Doe Medical Providers despite due diligence and will amend the Complaint to add their true names upon learning them.

36.     The SDCJ is owned and operated by Defendant County and staffed by County employees, agents, and contractors.

## FACTUAL ALLEGATIONS

### A. Circumstances Surrounding Lonnie Rupard's Death in Custody

37.     According to the medical examiner's report, on the morning of December 19, 2021, Lonnie Rupard was arrested by National City Police for a parole violation and booked in San Diego Central Jail.

38.     The arresting officer reported that Lonnie had a history of psychotic disorders.

39.     On December 20, 2021, psychiatry sick call notes documented a history of psychiatric illness on extensive medications, prior treatment at Patton State Hospital and maintenance on medications during previous incarceration.

40.     On December 29, 2021, the initial psychiatry sick evaluation noted that Lonnie had a history of unspecified schizophrenia and other psychotic disorders.

41.     The psychiatrist's plan was to offer/start previously used psychiatric medications including Haldol, Cogenti, and Valproic acid.

42.     Lonnie reportedly refused medications daily from December 20, 2021 through January 20, 2022.

43.     A psychiatry sick call was reportedly requested on January 15, 2022 which was purportedly due to Lonnie's refusal to take medications.

44.     Per psychiatrist progress notes on January 20, 2022, due to Lonnie's refusal to take medications, the medications were discontinued.

45.     According to nursing progress notes, on January 29, 2022 Lonnie was seen laying on the housing floor following use of force by deputies.

46.     On February 1, 2022, SDCJ staff reportedly asked to have Lonnie seen by a qualified mental health professional for psychiatric illness.

47.     On February 9, 2022 a wellness check was reportedly performed, at which time Lonnie was reportedly unable to be fully assessed due to refusal and/or inability to cooperate.

48.     On February 20, 2022 progress notes indicate Lonnie was placed on lockdown.

49.     On February 20, 2022, it was reported that Lonnie was again seen by a psychiatrist. During that visit, there were purportedly multiple attempts made to engage in conversation. Lonnie purportedly did not answer questions, rambled incoherently, and became verbally aggressive. Due to Lonnie's presentation and psychiatric history, and potential for decompensation, the reported plan was to continue to monitor him and offer treatment with follow up in six to seven weeks or sooner if needed. The psychiatrist reportedly indicated Lonnie did not require immediate psychiatric intervention at that time.

50.     On February 23, 2022 staff reportedly requested again that Lonnie be seen by a qualified mental health professional for a wellness check.

51.     No additional sick calls, progress notes, or wellness checks were documented from February 23, 2022 until Lonnie's passing on March 17, 2022.

52.     On March 14, 2022, three days prior to his death, Lonnie was reportedly seen by a court-ordered psychiatrist for examination of mental competency to stand trial.

53.     The psychiatrist noted Lonnie's cell was dirty with trash throughout. The toilet was full of excrement and the room was malodorous. There were feces on the floor and food smeared on the walls.

54.     Lonnie was observed to be unkempt and dirty.

55.     During the exam, Lonnie was observed lying in bed in an uncomfortable manner with a blanket over his head.

56.     The psychiatrist opined that Lonnie suffered from severe mental illness and was not competent to stand trial.

57.     The psychiatrist recommended referral to a state hospital and that he be given antipsychotic medication involuntarily as allowed by law.

58.     Lonnie was not, however, referred to a state hospital, and was not given antipsychotic medications involuntarily as allowed by law.

59.     Lonnie was reportedly last seen alive during cell checks on March 17, 2022 at approximately 2146.

60.     At 2248 on March 17, 2022, Lonnie was reportedly found to be unresponsive in his bunk covered with a blanket and not breathing.

61.     Lonnie's cell was soiled with feces. There was also old food that contained insect larvae found in the cell.

62.     While an autopsy was performed on March 19, 2022, the medical examiner's report was not released until March 2, 2023.

63.     At the time of the autopsy, Lonnie was 105 lbs, representing a 60-pound weight loss, or 36% loss of total body weight, since the time of his arrest.

64.     The autopsy findings revealed that Lonnie had decreased skin turgor and postmortem vitreous chemistry testing with elevated sodium, chloride, and vitreous urea nitrogen levels, altogether indicating dehydration.

65.     The autopsy findings further revealed that he had pulmonary congestion and edema, with acute bilateral bronchopneumonia.

66.     The autopsy findings further revealed that his right lung showed evidence of prior

LOWE LAZAR LAW, LLP

COMPLAINT.

1  aspiration of gastric content with foreign body giant cells surrounding plant material.

2  67.    Postmortem nasopharyngeal swab for Covid-19 was positive.

3  68.    Lonnie had no significant cardiovascular disease, liver disease, or kidney disease.

4  69.    A 2.5 cm by 2 cm ulcer was noted in the proximal duodenum.

5  70.    Lonnie also had several superficial pressure sores on his torso and extremity.

6  71.    Neuropathology consultation of the brain documented a remote small cortical

7  contusion on the right orbital frontal region.

8  72.    Toxicology testing was negative for alcohol, common drugs of abuse, and

9  medications.

10  73.    The Deputy Medical Examiner concluded based on the autopsy findings and

11  circumstances of death that "the cause of death is pneumonia, malnutrition, and

12  dehydration in the setting of neglected schizophrenia, with Covid-19 viral infection,

13  pulmonary emphysema, and duodenal ulcer listed as contributing conditions."

14  74.    The Deputy Medical Examiner concluded:

15              Records document that care was made available to the decedent in

16              the form of meals, continuous in-cell water supply, prescription

17              medications to treat his psychiatric illness, and medical evaluations;

18              nevertheless, the ineffective delivery of that care ended with his

19              death. While elements of self-neglect were present, ultimately this

20              decedent was dependent upon others for his care; therefore, the

21              manner of death is classified as homicide.

22  75.    Simply stated, Lonnie's basic care needs were so severely neglected by deputies

23  and other staff despite obvious signs that he needed care that it resulted in his death, and

24  was classified as a homicide.

25  ///

26  ///

27  ///

28  ///

1

2   **B. The County's Long History of Deliberate Indifference to Detainees'**

3   **Health, Mental Health, and Constitutional Rights**

4

5   76.    From 2006 through 2020, a total of 185 people died in San Diego County's

6   jails—a rate higher than any other large county across the State.

7   77.    Since 2018, a total of 86 people reportedly died in San Diego County jails.

8   78.    In both 2021 and 2022, the infamous Rikers Island jail had fewer deaths despite a

9   far larger jail population.

10   79.    In February 2022, the California State Auditor completed its audit of the San

11   Diego County Sheriff's Department to determine the cause of the high rate of in-custody

12   deaths in San Diego County jails and to identify any steps that the Sheriff's Department

13   took in response to those deaths.[1]

14   80.    The Auditor reviewed data over a 15-year period.

15   81.    The Auditor found deficiencies in caring for and protecting individuals, which

16   likely contributed to in-custody deaths.

17   82.    Also, these were not limited occurrences—the audit's findings "suggest[ed] that

18   the problems with the Sheriff's Department's care for incarcerated individuals are

19   systemic."

20   83.    Specifically, the Auditor found the following deficiencies:

21          a. Inadequate and inconsistent provision of medical and mental health care;

22          b. Inadequate and inconsistent follow-up regarding medical and mental health

23             needs;

24          c. Inadequate and inconsistent performance of visual checks to ensure

25             the health and safety of detainees;

26   _____

27   [1] Plaintiffs incorporate herein by reference the State Auditor's report: https://www.auditor.ca.gov/pdfs/reports/2021-

28   109.pdf.

d. Failure to implement meaningful corrective action to guard against future deaths when deaths have occurred;

e. Failure to adequately investigate and review in-custody deaths;

f. Failure to implement key recommendations from external entities related to detainees' welfare and safety; and

g. Inadequate policies.

84. State auditors found that the department had yet to meaningfully implement recommendations made by independent experts over the last several years.

85. The San Diego Citizens' Law Enforcement Review Board (CLERB) also conducted an analysis of data regarding in-custody deaths in San Diego County jails over the past 10 years, the results of which were released in April 2022.

86. CLERB made the following findings, in pertinent part:

a. Residents of San Diego County are no more likely to die than residents of other California counties;

b. San Diego jails have the highest number of unexplained deaths compared with all other California counties when controlling for jail population;

c. The risk of overdose/accidental deaths is the greatest in San Diego jails;

d. Elevated risk of death appears to be isolated to the unsentenced jail population;

87. At the time of Lonnie's death, the County had de facto policies or widespread, longstanding practices or customs including but not limited to:

a. Failing to properly house individuals to ensure their safety and well being;

b. Leaving individuals unattended in their cells for extended periods despite signs of medical or mental distress;

c. Failing to summon medical or mental health care when obviously necessary;

d. Failing to coordinate, share, or update internal information systems with critical medical or mental health information;

e. Failing to provide critical medical treatment to individuals suffering from

dehydration;

    f.     Failing to provide medical or mental health treatment to individuals suffering from mental health conditions; and

    g.     Failing to adequately staff the medical services division;[2]

88.    The myriad of jail deaths and wrongful death cases demonstrate the County's de facto policies or widespread, longstanding practices or customs described herein.

89.    For example, Hayden Schuck died on March 16, 2022—just one day before Lonnie.

90.    According to the complaint filed on 4/28/23, Case number 23CV0785-DMS-AHG, incorporated by reference, Hayden Schuck (hereafter "Hayden") exhibited similar symptoms of medical distress during his time in custody and died in large part due to dehydration and neglect.

91.    Hayden had similarly elevated levels of sodium, chloride, and urea nitrogen.

92.    Hayden, like Lonnie, had pneumonia, a duodenal ulcer, and pressure sores.

93.    Hayden and Lonnie were also reportedly being housed in the same housing unit, 7D.

94.    Despite Hayden's death the day prior, deputies and medical staff still did not check on Lonnie's wellbeing.

95.    Further, Plaintiffs specifically incorporate by reference the Third Amended Civil Class Action Complaint for Declaratory and Injunctive Relief, Doc. No. 231, in *Dunsmore v. San Diego County Sheriff's Department et al, 20cv00406-AJB*.

96.    The Dunsmore plaintiffs are a class of individuals who are or were in custody in the San Diego County jails who are collectively suing, in pertinent part, for the County's failure to adequately staff the medical division, including mental health professionals, interference by deputies with the delivery of medical and mental health

---

[2] Unionized health care workers stated that understaffing created "dangerous and inhumane" conditions for people in custody and medical staff. In June 2022, 199 medical division positions were vacant. See Jeff McDonald, Kelly Davis, Persistent medical staffing shortages in San Diego jails are causing lapses in care, driving down morale, San Diego Union-Tribune, Sept. 4, 2022,

LOWE LAZAR LAW, LLP

COMPLAINT.

care, failure to identify and treat medical and mental health conditions at intake, failure to provide adequate medical care for individuals with substance use disorders and/or who are under the influence at intake, failure to continue medically necessary medications and treatments upon arrival, failure to maintain adequate, accurate, and complete medical records, failure to adequately diagnose individuals and refer them to outside specialists where needed, failure to provide adequate follow-up medical treatment, and failure to implement and maintain quality assurance and improvement processes to ensure adequate care.

97.     Plaintiffs further specifically incorporate by reference the declarations by plaintiffs as well as experts filed in the Dunsmore case at *Doc. No.119 and Doc. No. 162.*

98.     Additionally, San Diego County's belated implementation of programs and policy changes after Lonnie's death despite the prior numerous deaths in its jails serve to demonstrate the Sheriff's Department's knowledge of and past apathy regarding its failures.

99.     For example, in June 2022, the SDCJ purportedly implemented "wellness checks" which require recurring visits to higher risk and vulnerable individuals in the jail.

100.    Those new checks require a multidisciplinary team of sworn deputies, medical staff, mental health staff, and reentry services representatives to visit individuals in their cells.

101.    Additionally, the County reportedly has begun holding collaborative multi-disciplinary group meetings to discuss individuals who may need additional care and/or are at a higher risk of harm.

102.    Further, the County purports to be implementing updated protocols for when someone refuses medical or mental health care.

103.    The Sheriff's Department / County jails have never successfully achieved NCCHC certification.

104.    Rather, in 2017, NCCHC reviewed the practices of San Diego County jails and

found they failed to meet 26 of 38 "essential standards."

105.   Had the County addressed known deficiencies within its jails and made changes in order to comply with NCCHC standards earlier, these changes could have saved lives, including Lonnie's.

106.   In sum, Defendant County of San Diego, and individual Defendants Gore, Martinez, Lee, Montgomery, and O'Brien were aware of a perpetual pattern of preventable in custody deaths caused by the Sheriff's Department's systemic and wide-ranging misconduct, negligence, and failures.

## I.

## FIRST CAUSE OF ACTION

### Wrongful Death

### (By Plaintiffs as Individuals Against All Defendants)

107.   Plaintiffs allege and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

108.   Plaintiffs, as Lonnie's children, have standing to assert a claim for wrongful death. See Cal. Civ. Proc. § 377.60; Ex. A.

109.   As alleged above, Defendants violated Gov. Code § 845.6, which constitutes "wrongful acts" within the meaning of § 377.60.

110.   As alleged above, Defendants violated § 1983 by showing deliberate indifference to Lonnie's medical needs.

111.   Defendants' conduct was an actual and proximate cause of Lonnie's pain, suffering, and death, which were direct and foreseeable results of Defendants' conduct.

112.   Defendant County is liable for the conduct of the individual defendants who were acting within the scope of their employment with the County. See Cal. Gov. Code §§ 815.2, 845.6.

113.   Defendants CHMA, CCMG, CHP, and NaphCare are vicariously liable for the conduct of their employees, agents, and contractors who were acting within the scope of their employment.

LOWE LAZAR LAW, LLP

COMPLAINT.

114.   Plaintiffs Justino Rupard and Ronnie Rupard seek economic and non-economic damages in an amount to be proven, including compensatory damages which include, but are not limited to, any coroner's fees and funeral expenses, emotional distress, loss of love, companionship, comfort, care, assistance, protection, affection, society, and moral support.

## II.
### SECOND CAUSE OF ACTION
### Dependent Adult Neglect
### (By Plaintiffs as Individuals Against All Defendants)

115.   Plaintiffs allege and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

116.   Lonnie Rupard had physical and mental limitations that restricted his ability to carry out normal activities or protect his own rights. Defendants had a substantial caretaking and custodial relationship with Lonnie, involving ongoing responsibility for his basic needs.

117.   San Diego County had a custodial relationship with Lonnie during the time he was in custody at the SDCJ.

118.   Defendants had an ongoing responsibility for Lonnie's basic needs, which an able-bodied and fully competent adult would ordinarily be capable of managing without assistance.

119.   Lonnie was a dependent adult during the time he was in custody at the SDCJ.

120.   Defendants failed to use the degree of care that a reasonable person/entity in the same situation would have used in providing for Lonnie's basic needs, including, but not limited to:

   a.  Failing to provide Lonnie with food;
   b.  Failing to provide Lonnie with medical care for his physical and/or mental needs;

LOWE LAZAR LAW, LLP

COMPLAINT.

1        c.  Failing to prevent malnutrition;

2        d.  Failing to prevent dehydration;

3   121.   Defendants' conduct was a substantial factor in causing Lonnie's death.

4   122.   Defendants and their employees/agents acted with recklessness in neglecting

5   Lonnie.

6                                     **III.**

7                          **THIRD CAUSE OF ACTION**

8   **42 U.S.C. § 1983: Fourteenth Amendment Deliberate Indifference (Monell)**

9              **(By Plaintiffs As Individuals Against Defendant County)**

10  123.   Plaintiffs allege and incorporate herein by reference each and every allegation

11  contained in the preceding paragraphs.

12  124.   Defendant County was acting under color of state law because its employees and

13  agents were acting or purporting to act in the performance of their official duties as

14  deputies and employees of the County.

15  125.   As alleged above, Defendant County, by and through its employees

16  and agents, deprived Lonnie of his constitutional rights under the due process

17  clause of the Fourteenth Amendment prohibiting deprivation of life without due

18  process of law.

19  126.   Defendant County, by and through its employees and agents, acted pursuant to

20  the following official policies, or widespread or longstanding practices or customs, of

21  Defendant County:

22        a. Failing to recognize when a detainee has serious medical needs;

23        b. Failing to communicate detainees' medical needs between medical staff and

24           deputies;

25        c. Providing insufficient medical care to detainees;

26        d. Failing to transfer detainees to the hospital when medically necessary;

27        e. Failing to respond properly or timely to serious medical needs of detainees;

28        f. Failing to conduct timely safety checks;

LOWE LAZAR LAW, LLP

COMPLAINT.

g. Failing to monitor live video feeds for signs of medical distress;

h. Failing to recognize when a detainee has serious medical needs during safety checks;

i. Failing to meet accepted community standards of care with respect to medical care of detainees; and

j. Failing to properly investigate in-custody deaths and properly respond to the results of those investigations to prevent further deaths.

127.   Defendant County knew of a substantial risk that its polices were inadequate to prevent violations of law by its employees and agents. Defendant County was deliberately indifferent to this risk and the well-documented history of widespread unconstitutional acts by employees and agents at the SDCJ. Yet, Defendant County failed to set forth appropriate policies regarding the treatment of detainees.

128.   Defendant County is also liable in that Lonnie's death was also the result of a failure to train employees to properly evaluate the health of and risks to detainees at intake and while in custody, to determine proper and adequate courses of treatment for detainees in need of medical treatment, and summon and provide adequate medical care when necessary. The County knew their failure to adequately train their staff made it highly predictable and foreseeable that its employees and agents would engage in conduct that would deprive detainees of constitutionally protected rights and result in additional deaths. The County was deliberately indifferent to the rights of individuals in their custody and care as evidenced by their knowledge of disparately high rates of in-custody deaths, systemic failures, and the fact that the individual deputies and medical providers who they failed to properly train would come into contact with detainees. The inadequacy of the County's training actually caused Lonnie's constitutional deprivations.

129.   Defendant County also acted through and is liable by virtue of their final policymakers, such as Gore and Martinez, and/or their subordinates who had been delegated final policymaking authority. Defendant County's final policymakers,

including Gore and Martinez, and/or their subordinates were acting under color of state law. Their final policymaking authority concerned all constitutional violations described in this Complaint.

130.   Defendant County is also liable based on Gore's and Martinez's failure to enact new and different policies despite their knowledge of woefully inadequate care of past detainees, a high rate of substance use prior to booking, and a high rate of in-custody deaths at the SDCJ.

131.   Defendant County is also liable based on their ratification and approval of the constitutional, statutory, and other law violations as alleged in this Complaint.

132.   Defendant County's policies, customs, or practices, actions and failures to act by final policymakers, ratification of constitutional and law violations, and failure to train its employees, caused Lonnie's deprivation of rights by the individual defendants. That is, the County's policies, customs, or practices, actions and failures to act by final policymakers, ratification of constitutional and law violations, and failure to train its employees were so closely related to Lonnie's deprivation of rights that they were the moving force causing Lonnie's injury and death.

133.   Defendant County's actions and omissions actually and proximately caused Plaintiffs' economic and non-economic damages including funeral expenses, loss of love, companionship, society, comfort, care, assistance, protection, and moral support. Plaintiffs seek compensatory damages.

134.   Plaintiffs also seek punitive damages on the grounds that Defendants acted with deliberate and reckless disregard of Lonnie's constitutional rights.

135.   Plaintiffs are entitled to costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

### IV.

### FOURTH CAUSE OF ACTION

### 42 U.S.C. § 1983: Fourteenth Amendment Substantive Due Process (Monell)

### (By Plaintiffs As Individuals Against Defendant County)

136.   Plaintiffs allege and incorporate herein by reference each and every allegation contained in the preceding paragraphs. Plaintiffs specifically repeat and incorporate by reference the Monell theories of liability set forth in the above cause of action in particular, in support of this claim.

137.   Defendant County was acting under color of state law because its employees and agents were acting or purporting to act in the performance of their official duties as deputies and employees of the County.

138.   As alleged above, Defendant County, by and through its employees and agents, deprived Justino Rupard and Ronnie Rupard of their rights to companionship and society with their father, Lonnie, in violation of the Fourteenth Amendment.

139.   Defendant County's actions and failures to act actually and proximately caused Plaintiffs' economic and non-economic damages including loss of love, companionship, society, comfort, care, assistance, protection, and moral support. Plaintiffs seek compensatory damages.

140.   Plaintiffs also seek punitive damages on the grounds that Defendants acted with deliberate and reckless disregard of Lonnie's constitutional rights.

## V.

### FIFTH CAUSE OF ACTION

**42 U.S.C. § 1983: Fourteenth Amendment Deliberate Indifference**

**(By Plaintiffs As Successors-in-Interest Against Montgomery, Lee, Gore, Martinez, Doe Deputies, Doe Medical Providers, Doe Deputy Supervisors, CHMA, CCMG, O'Brien, CHP, NaphCare)**

141.   Plaintiffs allege and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

142.   Plaintiffs allege this cause of action as Lonnie's successors in interest.

143.   The actions and omissions by Defendants constituted objective and subjective

COMPLAINT.

deliberate indifference to Lonnie's medical needs and unsafe conditions of confinement. Defendants' actions and omissions violated the due process clause of the Fourteenth Amendment prohibiting deprivation of life without due process of law.

144.   Defendants made intentional decisions and omissions regarding Lonnie's conditions of confinement and the denial of adequate medical care, including but not limited to:

    a. Failing to house Lonnie in a medical observation unit;

    b. Failing to house Lonnie in a Psychiatric Stabilization Unit;

    c. Failing to timely and adequately check on Lonnie's safety and wellbeing while he was in his cell;

    d. Failing to summon medical care in the face of obvious signs that Lonnie's health was deteriorating dangerously, including but not limited to rambling incoherently with altered thought process, unkempt and dirty appearance with an unclean cell with feces and contaminated food with larvae, lying down appearing uncomfortable.

    e. Failing to timely and adequately document information regarding Lonnie's condition in the jail information system; and

    f. Failing to take appropriate measures to ensure Lonnie was receiving adequate and prompt medical care, particularly when he exhibited gravely concerning signs of illness.

145.   Defendants' intentional decisions and omissions put Lonnie at substantial risk of suffering serious harm.

146.   Defendants did not take reasonable available measures to abate or reduce the risk of serious harm, even though a reasonable officer or employee under the circumstances would have understood the high degree of risk involved—making the consequences of the defendants' conduct obvious.

147.   As alleged above, Defendants' conduct and omissions constituted various policy violations.

148.   Defendants' deliberate indifference was an actual and proximate cause of Plaintiffs' damages including both Lonnie's pain and suffering prior to his death and his death. Plaintiffs seek compensatory damages.

149.   Defendants CHMA, CCMG, O'Brien, CHP, and NaphCare are vicariously liable for the conduct of their employees, agents, and contractors because they were acting within the scope of their employment.

150.   Defendants CHMA, CCMG, CHP, and NaphCare are also liable for their failure to train their employees, agents, and contractors.

151.   Plaintiffs also seek punitive damages on the grounds that Defendants acted with deliberate and reckless disregard of Lonnie's constitutional rights.

152.   Plaintiffs are entitled to costs and reasonable attorney's fees pursuant to 42 U.S.C.§ 1988.

## VI.

## SIXTH CAUSE OF ACTION

### 42 U.S.C. § 1983: Fourteenth Amendment Substantive Due Process

### (By Plaintiffs As Individuals Against Montgomery, Lee, Barrera,

### Gore, Martinez, Doe Deputies, Doe Medical Providers, Doe

### Deputy Supervisors, CHMA, CCMG, O'Brien, CHP, NaphCare)

153.   Plaintiffs allege and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

154.   Plaintiffs Justino Rupard and Ronnie Rupard, as individuals, allege this Fourteenth Amendment substantive due process claim against Defendants for depriving them of their rights to companionship and society with their father, Lonnie Rupard.

155.   While Lonnie was in their custody and care, Defendants had adequate time to reflect and reason prior to acting or failing to act. Because Lonnie's health deteriorated over the span of several days, if not weeks or months, actual deliberation was practical.

156.   Yet, Defendants' actions and omissions constituted objective deliberate indifference to Lonnie's medical needs and unsafe conditions of confinement.

LOWE LAZAR LAW, LLP

COMPLAINT.

157.   Plaintiffs specifically incorporate by reference here, as alleged in the above cause of action, the myriad ways in which Defendants made intentional decisions and omissions regarding Lonnie's conditions of confinement and their denial of adequate medical care.

158.   Defendants' deliberate indifference was an actual and proximate cause of Plaintiffs' economic and non-economic damages including funeral expenses, loss of love, companionship, society, comfort, care, assistance, protection, and moral support. Plaintiffs seek compensatory damages.

159.   Defendants CHMA, CCMG, CHP, and NaphCare are vicariously liable for the conduct of their employees, agents, and contractors because they were acting within the scope of their employment.

160.   Defendants CHMA, CCMG, O'Brien, CHP, and NaphCare are also liable for their failure to train their employees, agents, and contractors.

161.   Plaintiffs also seek punitive damages on the grounds that Defendants acted with deliberate and reckless disregard of Lonnie's constitutional rights.

162.   Plaintiffs are entitled to costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

## VII.

## SEVENTH CAUSE OF ACTION

### Cal. Gov. Code § 845.6 (Failure to Summon Medical Care)

### (By Plaintiffs as Successors-in-Interest Against Defendants County, Gore, Martinez, CHMA, CCMG, CHP, NaphCare)

163.   Plaintiffs allege and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

164.   Plaintiffs assert this claim as successors-in-interest pursuant to Cal. Civ. Proc. § 377.30.

165.   Pursuant to Cal. Gov. Code §§ 845.6 and 815.2, Defendant County is liable because, while acting within the scope of their employment, Defendants Montgomery,

LOWE LAZAR LAW, LLP

COMPLAINT.

Lee, Gore, Martinez, Doe Deputies, Doe Medical Providers, and Doe Deputy Supervisors:

     a.  Knew or had reason to know that Lonnie required medical care;

     b.  Knew or had reason to know that Lonnie's need for medical care was immediate; and

     c. Failed to take reasonable action to summon medical care.

166.   Regarding (a), Defendants Montgomery, Lee, Gore, Martinez, Doe Deputies, Doe Medical Providers, and Doe Deputy Supervisors knew or had reason to know that Lonnie required medical care for a multitude of reasons, including but not limited to: low BMI, malnutrition, disorganized thinking, confusion, incoherence, and altered thought process, disheveled appearance and improper dress, an unclean cell, non-responsiveness toward staff, and the appearance of obvious wounds.

167.   Regarding (b), Defendants Montgomery, Lee, Gore, Martinez, Doe Deputies, Doe Medical Providers, and Doe Deputy Supervisors knew Lonnie's need for medical care was immediate because of all of the above circumstances and symptoms.

168.   Regarding (c), Defendants Montgomery, Gore, Martinez, Doe Deputies, Doe Medical Providers, and Doe Deputy Supervisors failed to take reasonable action to summon medical care by choosing not to house Lonnie in a medical observation cell, or psychiatric cell, and by failing to summon medical care throughout his time in custody despite grave signs of illness.

169.   Defendants Gore and Martinez are liable for Doe Deputies' failure to summon medical care, as described above, and due to their negligent supervision and training of employees regarding when to summon medical care.

170.   Defendants CHMA, CCMG, CHP, and NaphCare are vicariously liable for the conduct of their employees, agents, and contractors who were acting within the scope of their employment and failed to summon medical care.

171.   Defendants' conduct was an actual and proximate cause of Lonnie's pain, suffering, and death, which were direct and foreseeable results of Defendants' conduct.

172.   Plaintiffs Justino Rupard and Ronnie Rupard seek compensatory damages for Lonnie's pain and suffering prior to his death, see Cal. Civ. Proc. § 377.34(b), as well as damages for his death.

## VIII.

## EIGHTH CAUSE OF ACTION

## Cal. Gov. Code § 52.1 (Bane Act)

## (By Plaintiffs as Successors-in-Interest Against County, Montgomery, Lee, Gore, Martinez, Doe Deputies, Doe

## Medical Providers, Doe Deputy Supervisors, CHMA, CCMG, CHP, NaphCare)

173.   Plaintiffs allege and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

174.   Pursuant to Cal. Gov. Code § 377.30, Plaintiffs Justino Rupard and Ronnie Rupard assert this claim as successors-in-interest.

175.   As alleged above, Defendants acted, or failed to act, with deliberate indifference to the substantial risk to Lonnie's health and safety while he was in their custody and care. Defendants' due process violations are sufficient in and of themselves to constitute violations of the Bane Act.

176.   As alleged above, Defendants knowingly deprived Lonnie of constitutionally protected rights through inherently coercive and threatening acts and omissions such as when they chose to house Lonnie in a cell other than a, Psychiatric Stabilization Unit, failed to summon medical care, failed to provide Lonnie with adequate medical care, and failed to conduct adequate and timely safety checks.

177.   Defendants' deliberate indifference was an actual and proximate cause of Lonnie's pain, suffering, and death, which were a direct and foreseeable result of Defendants' actions and inaction.

178.   Plaintiffs seek compensatory damages including for the pain and suffering Lonnie was subjected to prior to his death pursuant to Cal. Civ. Proc. §377.34(b). Plaintiffs also seek all statutory remedies available pursuant to Cal. Civ. Code § 52 and 52.1 including civil penalties, treble damages, and attorneys' fees.

179.   Pursuant to Cal. Gov. Code § 815.2, the County is vicariously liable for the actions and/or omissions of its employees, Defendants Montgomery, Lee, Gore, Martinez, Doe Deputies, Doe Medical Providers, and Doe Deputy Supervisors because they were acting within the scope of their employment.

180.   Defendants CHMA, CCMG, CHP, and NaphCare are vicariously liable for the conduct of their employees, agents, and contractors because they were acting within the scope of their employment.

## IX.

## NINTH CAUSE OF ACTION

### Negligence

### (By Plaintiffs as Successors-in-Interest Against All Defendants)

181.   Plaintiffs allege and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

182.   Plaintiffs allege this claim as successors in interest pursuant to Cal. Civ. Proc. § 377.30.

183.   All individual defendants owed Lonnie a duty of reasonable care as "jailers" due to Lonnie's position of dependence and vulnerability in the jail context.

184.   As alleged above, Defendants breached that duty. Doe Deputies, Doe Medical Providers, and Doe Deputy Supervisors negligently failed to recognize, document, and monitor Lonnie's serious medical needs and failed to summon medical treatment. Doe Deputies, Doe Medical Providers, and Doe Deputy Supervisors failed to provide and place Lonnie in proper housing to ensure proper monitoring of Lonnie's medical needs. Doe Deputies, Doe Medical Providers, and Doe Deputy Supervisors violated multiple

County policies applicable to deputies and staff of the Medical Services Division as alleged above.

185.   Defendants Gore, Martinez, Montgomery, Lee, and O'Brien negligently failed to ensure that all detainees exhibiting signs of intoxication, withdrawal, or medical distress receive proper medical care, including an appropriate treatment plan, evaluation by a physician, and continuity of care despite their knowledge of woefully inadequate care of past detainees, a high rate of substance use prior to booking, and a high rate of in-custody deaths.

186.   All individual defendants failed to avoid violating Plaintiff's constitutional rights pursuant to the Fourteenth Amendment as alleged above.

187.   The County and Defendants CCMG, CHMA, CHP, and NaphCare are vicariously liable for the conduct of Defendants Gore, Martinez, Montgomery, Lee, Doe Deputies, Doe Medical Providers, and Doe Deputy Supervisors.

188.   Pursuant to Gov. Code § 855.8, the individual defendants, who were acting within the scope of their employment, are liable for failing to use due care and proximately causing Lonnie's injuries due to their negligence and wrongful acts and omissions in providing such treatment.

189.   Lonnie's injury and death were foreseeable results of Defendants' negligence.

190.   Defendants' negligence was the actual and proximate cause of Lonnie's pain, suffering, and ultimate death.

191.   Plaintiffs, Lonnie's successors-in-interest, seek compensatory damages including for Lonnie's pain and suffering prior to his death pursuant to Cal. Civ. Proc. §377.34(b).

///

///

///

///

///

///

## X.

## TENTH CAUSE OF ACTION

## Negligence: Negligent Training and Supervision

## (By Plaintiffs as Successors-in-Interest Against Defendants County,

## Montgomery, Lee, Gore, Martinez, O'Brien, Doe Deputy Supervisors,

## CCMG, CHMA, CHP, NaphCare)

192.   Plaintiffs allege and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

193.   Plaintiffs allege this claim as successors in interest pursuant to Cal.Civ. Proc. § 377.30.

194.   Defendants had a duty to use reasonable care in the training and supervision of its employees, deputies, sworn staff, contractors, and agents.

195.   Defendants had a duty to properly train and supervise its employees to use reasonable care in evaluating the health of and risks to detainees and determining the proper and adequate course of treatment for detainees in need of medical treatment.

196.   Defendants had a duty to properly train and supervise its employees to summon medical care for detainees whom they knew, or had reason to know, required medical care.

197.   Defendants breached their duty of care such that Lonnie's prolonged health crisis was deliberately ignored and Lonnie endured pain and suffering and ultimately died as a result.

198.   The County and Defendants CCMG, CHMA, CHP, and NaphCare, are vicariously liable for the conduct of individual defendants in supervisory and Defendants Montgomery, Lee, Gore, Martinez, O'Brien, and Doe Deputy Supervisors.

199.   As a direct, proximate, and foreseeable result of Defendants' breach of their duty of care, Plaintiffs suffered damages in an amount according to proof at the time of trial. Plaintiffs, as Lonnie's successors-in-interest, seek compensatory damages including for Lonnie's pain and suffering prior to his death pursuant to Cal. Civ. Proc. § 377.34(b).

1

2                                    **PRAYER FOR RELIEF**

3    Plaintiffs pray for judgment against Defendants as follows:

4           a. General and compensatory damages in an amount according to proof;

5           b. Punitive and exemplary damages against all individual defendants;

6           c. Civil penalties as provided by law;

7           d. Attorney fees pursuant to Cal. Civil Code § 52.1(b), Cal. Civil Code § 52, and

8    Welf & Inst. Code, §15657;

9           e. Costs and reasonable attorney fees pursuant to 42 U.S.C. §1988;

10          f. All other damages, penalties, costs, and fees as allowed by Cal. Civ. Proc. §§

11   377.20, 377.60, 1021.5

12          g. Costs;

13          h. And for all other and further relief as the Court may deem proper.

14

15

16   Dated: 7/26/2023                    LOWE LAZAR LAW, LLP

17

18

19                                       By: /s/ Victoria  Lazar
                                         Jeremiah Lowe and Victoria Lazar,
20                                       Attorneys for Plaintiffs Justino Rupard and the Estate of
                                         Lonnie Rupard
21

22

23   Dated:  7/26/2023                   GILLEON LAW FIRM, APC

24

25                                       By:  /s/ Daniel Gilleon
26                                       Daniel M. Gilleon, Attorneys for Plaintiffs Ronnie
                                         Rupard and the Estate of Lonnie Rupard
27

28

LOWE LAZAR LAW, LLP

COMPLAINT.