**LOTZ DOGGETT & RAWERS, LLP**
**JEFFREY S. DOGGETT, ESQ. (SBN 47235)**
**LAUREN E. HARDISTY, ESQ. (SBN 58531)**
**SARA R. SABZEROU, ESQ. (SBN 337300)**
101 West Broadway, Suite 1110
San Diego, California 92101
Telephone: (619) 233-5565
Facsimile: (619) 233-5564

Attorneys for Defendant,
CORRECTIONAL HEALTHCARE PARTNERS

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF LONNIE RUPARD, BY AND THROUGH HIS SUCCESSORS-IN-INTEREST JUSTINO RUPARD & RONNIE RUPARD; JUSTINO RUPARD, INDIVIDUALLY AND IN HIS CAPACITY AS SUCCESSOR IN INTEREST; RONNIE RUPARD, INDIVIDUALLY AND IN HIS CAPACITY AS SUCCESSOR IN INTEREST<br><br>Plaintiffs,<br>v.<br><br>COUNTY OF SAN DIEGO; BILL GORE, IN HIS INDIVIDUAL CAPACITY; KELLY MARTINEZ, IN HER INDIVIDUAL CAPACITY; COAST HOSPITALIST MEDICAL ASSOCIATES, INC. (CMHA); COAST CORRECTIONAL MEDICAL GROUP (CCMG); MARK O'BRIEN, IN HIS INDIVIDUAL CAPACITY; CORRECTIONAL HEALTHCARE PARTNERS (CF-IP); NAPHCARE; | CASE NO.: 23cv01357-CAB-BLM<br><br>**DEFENDANT, CORRECTIONAL HEALTHCARE PARTNERS MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PORTIONS OF PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br><u>Jury Trial Demanded</u><br><br>PER CHAMBER RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY COURT<br><br>Action Filed: 07/26/2023<br>Trial Date: TBA<br><br>Hearing Date: January 9, 2024<br>Courtroom: 15A |

| | |
|---|---|
| BARBARA LEE, LN HER INDIVIDUAL CAPACITY; DR. JON MONTGOMERY, DO, LN HIS INDIVIDUAL CAPACITY; DEFENDANT DEPUTIES DOES 1-10; DEFENDANT MEDICAL PROVIDERS DOES 1-10; DEFENDANT SUPERVISOR DOES 1-10 | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

# MEMORANDUM OF POINTS AND AUTHORITIES

Defendant, CORRECTIONAL HEALTHCARE PARTNERS, hereby submits this memorandum of points and authorities in support of its Motion to Dismiss portions of Plaintiffs' First Amended Complaint ("FAC") pursuant to Federal Rules of Civil Procedure 12(b)(6).

## I.
## INTRODUCTION

This case involves allegations of neglect related to the custody and care of decedent, Lonnie Rupard. Mr. Rupard suffered from a psychiatric condition that made him dependent on others for his needs. CORRECTIONAL HEALTHCARE PARTNERS provides medical, but not psychiatric, care at the jail facility where decedent was housed. Psychiatric care, including care by a psychiatrist, was provided by another defendant.

There are no facts to suggest that the physicians working with CORRECTIONAL HEALTHCARE PARTNERS were involved in the care and treatment of Mr. Rupard. Further, there are no facts alleged from which even an inference can be drawn, that the physicians had any knowledge of Mr. Rupard. The jail physicians are limited in their ability to provide care and treatment to inmates by the jail staff. If the jail staff do not bring the medical issues to the attention of the healthcare providers, there is no way for them to be aware of an inmates care needs.

Since CORRECTIONAL HEALTHCARE PARTNERS had no knowledge of Mr. Rupard or his needs, they could not have been negligent or liable for any intentional conduct. As such, Defendant respectfully requests that its Motion to Dismiss be granted.

## II.

## STATEMENT OF FACTS

On March 17, 2022, Mr. Rupard died at the age of 46 while in custody at SDCJ due to neglect. (FAC ¶2) Mr. Rupard suffered from schizophrenia, and he was dependent on others for his wellbeing. (FAC ¶3) CHP was a third-party contractor employed by the County and/or a contractor of the County working within the Sheriff's Department Medical Services division who was responsible for Mr. Rupard's medical care including follow-up assessments and referrals for further treatment. (FAC ¶36) CHP did not employ any of the individually named defendants nor does the FAC contain any such allegations.

On December 19, 2021, a medical clearance screening was completed by Ben Samonte, RN and May Ng, RN, in which Mr. Rupard was unwilling or unable to sign to the screening or general informed consent, was not fully (oriented x 2), and was verbally abusive. (FAC ¶55) Both Ben Samonte, RN and May Ng, RN were either employed by the County of San Diego or Liberty Healthcare Corporation. (FAC ¶¶39-40, 41) Neither is a CHP employee and CHP is not liable for their actions.

Mr. Rupard was scheduled for psychiatric evaluations on a number of occasions which did not occur. (FAC ¶¶60-62) CHP is not responsible for scheduling or performing psychiatric evaluations. CHP provides medical care which does not include psychiatric care. Psychiatric care is provided by Liberty, in this case through Dr. Anthony Cruz. (FAC ¶38, 41)

Mr. Rupard had a psychiatric evaluation performed by Dr. Cruz on December 29, 2021. (FAC ¶63) Following his evaluation, multiple nurses documented that Mr. Rupard refused to take his medications. (FAC ¶67) Mr. Rupard was re-

evaluated by Dr. Cruz on January 20, 2022. (FAC ¶68) Again there are no facts to suggest he was referred to a CHP healthcare provider.

On January 29, 2022, nursing notes document Mr. Rupard was observed laying on the housing floor after use of force by deputies. (FAC ¶72) On February 1, SDCJ staff asked to have Mr. Rupard seen by a qualified mental healthcare profession which was done on February 9, 2022. (FAC ¶74-75) On February 22, 2022, Mr. Rupard was seen by Dr. Cruz. (FAC ¶83) Mr. Rupard did not receive any medical care after the February 9, 2022, visit. (FAC ¶89) Again, there is nothing to suggest a medical consultation was requested.

Noticeably absent from the allegations are any facts suggesting that any of the nurses made anyone from CHP aware of the fact that Mr. Rupard was not taking his medications. There are no allegations that Mr. Rupard was placed on MD sick call or scheduled to treat with a CHP healthcare provider. There are no allegations that CHP had any knowledge of Mr. Rupard or his medical condition. In fact, the complaint specifically alleges that that no one requested Mr. Rupard be evaluated by a medical doctor. (FAC ¶79) CHP cannot be held liable for failing to treat a patient no one ever asked them to treat.

### III.
### LEGAL STANDARD FOR DISMISSAL PURSUANT TO FRCP 12(b)(6)

A motion filed under Federal Rule of Civil Procedure 12(b)(6) is a challenge to the sufficiency of the pleadings set forth in the complaint. Dismissal is proper pursuant to Rule 12(b)(6) if there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990), *Greshing v. Village of Lombard, III.*, 58 F.3d 295, 297 (7th Cir. 1995).

In resolving a Rule 12(b)(6) motion, a court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-plead factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336,

337-338 (9th Cir. 1996).  The court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d. 1049, 1055 (9th Cir. 2008) (citation omitted.)

> The Supreme Court in *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) stated: To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face."...A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged...The plausibility standard is not akin to a "probability requirement" but it asks for more than a sheer possibility that a defendant has acted unlawfully.  (citations omitted.

The Court "will dismiss any claim that, even when construed in the light most favorable to a plaintiff, fails to plead sufficiently all required elements of a cause of action."  *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  Further, the Court "need not assume the truth of legal conclusion case in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643. n.2 (9th Cir. 1986).  The Court is not required to allow Plaintiff an attempt to amend where "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

## IV.
## ARGUMENT

**A. THE COMPLAINT FAILS TO ALLEGE FACTS WHICH CONSTIUTE DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED (FIRST, THIRD AND FOURTH CAUSES OF ACTION)**

Plaintiffs' complaint fails to allege facts against CHP sufficient to maintain their first cause of action, deliberate indifference to a serious medical need.  In order to maintain their claim for deliberate indifference to a serious medical need against

CHP, Plaintiffs must plead the following: "(I) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved - making the consequences of defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries. "With respect to the third element, the defendant's conduct must be objectively reasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.'" "Thus, the plaintiff 'must provide more than negligence but less than subjective intent - something akin to reckless disregard." *Gordon v. City of Orange*, 888 F. 3d 1118, 1125 (9th Cir. 2018).

Plaintiffs fail to allege facts sufficient to maintain their cause of action for deliberate indifference as it relates to CHP. Plaintiffs' FAC fails to allege facts which establish that CHP was even aware of Mr. Rupard, much less that they were aware of and ignored a serious medical need. At best, the FAC alleges that there was a failure to refer Mr. Rupard to a medical doctor by others involved in Mr. Rupard's care. There are not even facts from which an inference can be drawn which establish that CHP was aware of Mr. Rupard or his need for healthcare. In fact, the opposite is true, Plaintiffs allege that one of the failures by Defendants was for there to be a request for him to be evaluated by a medical doctor. (FAC ¶79) As such, these claims should be dismissed as the CHP.

### B. THE COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO CONSTITUTE A CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA GOVERNMENT CODE SECTION 845.6 (FAILURE TO SUMMON MEDICAL CARE) AS TO CHP (FIFTH CAUSE OF ACTION)

California *Government Code* §845.6 provides as follows:

Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, except for as otherwise provided in Sections 855.8 and 856, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.  Nothing in this section exonerates a public employee who is lawfully engaged in the practice of one of the healing arts under any law of this state from liability for injury proximately caused by malpractice or exonerates the public entity from its obligations to pay any judgment, compromise, or settlement that it is required to pay under subdivision (d) of Section 844.6.

CHP "was a third-party contractor to the San Diego County Sheriff's Department and employed, supervised, and/or trained Defendant Medical Provider Does 1-10."  First, this statute was intended to provide immunity, not liability to public entities and their employees.  It is a shield not a sword.  Second, CHP is not a public entity nor is CHP an employee of a public entity.  Therefore, CHP cannot be held liable under this statute.  Third, as set forth above, the FAC fails to allege facts that would impute to CHP any knowledge of Mr. Rupard or any medical attention that required immediate care.  CHP respectfully requests the Court grant its Motion to Dismiss as to the Fifth Cause of Action.

### C. **THE COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO CONSTITUTE A CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA CIVIL CODE SECTION 52.1 (BANE ACT) (SIXTH CAUSE OF ACTION)**

In order for there to be liability under the Bane Act, a person must interfere with the rights of another through "threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion."  *Civil Code* §52.1(b).  There are no allegations in this case that CHP interfered with or attempted to interfere with Mr. Rupard's rights through threat, intimidation or coercion.  In fact, there are no

Case 3:23-cv-01357-CAB-BLM   Document 37-1   Filed 12/05/23   PageID.471   Page 8 of 10

allegations that anyone at CHP ever saw the patient or was aware of Mr. Rupard's existence or need for medical care. There is no basis for alleging violation of the Bane Act against CHP. CHP respectfully requests this court dismiss the sixth cause of action against it.

### D. THE COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO CONSTITUTE A CAUSE OF ACTION FOR DEPENDENT ADULT ABUSE (SEVENTH CAUSE OF ACTION)

The FAC alleges that CHP were independent contractors who provided medical care to the County of San Diego. CHP did not have custodial care of Mr. Rupard and there are no allegations which suggest that they did. Plaintiffs cannot maintain a cause of action for dependent adult abuse absent a custodial relationship. He custodial relationship was with the County of San Diego who had Mr. Rupard in custody.

"The Elder Abuse Act does not 'apply *whenever* a doctor treats any elderly [or dependent adult patient. Reading the act in such a manner would radically transform medical malpractice liability relative to the existing scheme.' " (*Alexander v. Scripps Memorial Hospital La Jolla* (2018) 23 Cal.App.5th 206, 223 original italics.) The first element of elder abuse is the existence of a caretaking or custodial relationship between the defendant and the elder or dependent adult. (*Winn v. Pioneer Med. Grp.*, Inc. (2016) 63 Cal. 4th 148, 165.) In *Winn*, the Supreme Court held that a cause of action under the Elder Abuse Act requires allegations of "a caretaking or custodial relationship-where a person has assumed significant responsibility for attending to one or more of those basic needs of the elder or dependent adult that an able-bodied and fully competent adult would ordinarily be capable of managing without assistance." (Id., at p. 155.) In order for the Elder Abuse and Dependent Adult Civil Protection Act (hereafter "The Act") to apply, Plaintiff must establish that defendant, in this case CHP, engaged in a substantial caretaking/custodial relationship. (*Winn v. Pioneer Medical Group, Inc.* (2016) 63 Cal. 4th 148, 164.) This means that the act

-8-

will not apply unless the defendant had an "ongoing responsibility for one or more [of the Plaintiff's] basic needs." (Id. at p. 151.)

Plaintiffs' FAC offers no factual allegations that CHP had "substantial caretaking/custodial relationship" with Mr. Rupard. Rather, Plaintiffs' FAC contains merely vague conclusory allegations that apply to Defendants generally. These vague and conclusory allegations, without any facts to support them, are insufficient.

The Elder Abuse Act provides for the recovery of enhanced damages when a Plaintiff proves by clear and convincing evidence that defendant is liable for physical abuse or neglect as defined in sections 15610.63 and 15610.57, respectively, and who can demonstrate that the defendant acted with recklessness, oppression, fraud or malice in the commission of the abuse. (*Winn v. Pioneer Medical Group, Inc.* (2016) 63 Cal.4th 148, 156.) Abuse is defined as "[p]hysical abuse, neglect, financial abuse, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering" or "the deprivation by a care custodian of goods or services that are necessary to avoid physical harm or mental suffering." *Carter v. Prime Healthcare Paradise Valley LLC*, supra, at p. 404, citing Cal. *Wel. & Inst. Code* § 15610.07(b).) "Physical abuse" is defined as including assault, battery, assault with a deadly weapon, unreasonable physical constraint or prolonged or continual deprivation of food or water, sexual assault, or the use of physical or chemical restraints. (Cal. *Welf. & Inst. Code* § 15610.63.) Under California Welfare and Institutions Code section 15610.57, "neglect" is limited to denial of care or the failure to provide care. (*Delaney v. Baker* (1999) 20 Cal.4th 23, 26.)

An Elder Abuse claim against a health care provider is distinct from a cause of action for wrongful death or injury based on medical malpractice. (*Delaney*, 20 Cal.4th at 29-42; *Benun v. Sup.Ct.* (2004) 123 Cal.App.4th 113, 124.) The goal of the Act is to provide heightened remedies for "acts of egregious abuse" against elder and dependent adults while allowing acts of negligence in the rendition of medical services to elder and dependent adults to be governed by laws specifically applicable

to such negligence. (*Delaney v. Baker* (1999) 20 Cal.4th 23, 45, 82 Cal. Rptr. 2d 610, 971 P.2d 986.) "When the medical care of a dependent adult is at issue, the statutory definition of "neglect" speaks not of the undertaking of medical services, but of the "failure to provide medical care." (*Carter*, 198 Cal.App.4th at 404-405, quoting Covenant Care Inc., 32 Ca1.4th at 783. (Emphasis added.)) A plaintiff must establish that medical care or medical services were "denied or withheld" to state a claim for elder abuse under the Elder Abuse Act. (Id. at 408.) In fact, "[disagreements between physicians and the patient or surrogate about the type of care being provided does not give rise to an elder abuse cause of action." (*Alexander v. Scripps Memorial Hospital La Jolla* (2018) 23 Cal. App. 5th 206, 223.)

As set forth above, there are no allegations that CHP's conduct rose to the level of dependent adult abuse. There are no allegations that CHP was aware of Mr. Rupard or his medical needs such that it would allow there to be even an inference of dependent adult abuse. As such, CHP respectfully requests this claim be dismissed.

## V.
## CONCLUSION

Based on the foregoing, CORRECTIONAL HEALTHCARE PARTNERS, respectfully requests this court grant its Motion to Dismiss.

Dated: December 5, 2023        **LOTZ, DOGGETT & RAWERS, LLP**

By: _/s/ Lauren Hardisty_
**JEFFREY S. DOGGETT, ESQ.**
**LAUREN E. HARDISTY, ESQ.**
**SARA R. SABZEROU, ESQ.**
Attorneys for Defendant,
CORRECTIONAL HEALTHCARE PARTNERS