UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTINO RUPARD, an individual; RONNIE RUPARD, an individual, <br><br> Plaintiff, <br><br> v. <br><br> COUNTY OF SAN DIEGO, et al., <br><br> Defendants. | Case No.: 23CV1357 CAB (BLM) <br><br> **ORDER GRANTING PLAINTIFF'SS MOTION TO COMPEL AND ISSUING ORDER TO SHOW CAUSE WHY MONETARY SANCTIONS SHOULD NOT BE IMPOSED** <br><br> **[ECF No. 158]** |

Currently before the Court is Plaintiff Justino Rupard's December 6, 2024 Motion to Compel Defendant County of San Diego to Produce Critical Incident Review Board ("CIRB") Documents ("MTC"). ECF No. 158. On December 13, 2024, Defendant County of San Diego ("County") filed an Opposition ("Oppo."). ECF No. 161. Plaintiff filed a Reply on December 20, 2024. ECF No. 163. Subsequently, the Court ordered Defendants to lodge the documents that are being withheld for an <u>in camera</u> review, along with proposed redactions. ECF No. 167. After reviewing Plaintiff's MTC, County's Oppo, Plaintiff's Reply, and all supporting documents, the Court **GRANTS** Plaintiff's Motion for the reasons set forth below.

## FACTUAL BACKGROUND

### A. Mr. Rupard's Death

On March 17, 2022, Lonnie Rupard died while in the custody of the San Diego Sheriff's Department in the San Diego Central Jail. ECF No. 1. Mr. Rupard, who suffered from

schizophrenia was initially arrested and housed at the jail on December 19, 2021.  Id. at 7.   On March 17, 2022 he was found unresponsive in his cell and later passed away.  Id.  The Deputy Medical Examiner determined the cause of death to be "pneumonia, malnutrition, and dehydration in the setting of neglected schizophrenia, with Covid-19 viral infection, pulmonary emphysema, and duodenal ulcer listed as contributing conditions."  Id. at 10.

### B. Critical Incident Review Board[1]

Following Mr. Rupard's death, the County convened a Critical Incident Review Board ("CIRB") whose primary purpose is specified in the San Diego Sheriff's Department Policies and Procedures § 4.23 as follows:

> The purpose of this board is to consult with department legal counsel when an incident occurs which may give rise to litigation. The focus of the CIRB will be to assess the department's civil exposure because of a given incident. The CIRB will carefully review      those incidents from multiple perspectives, including training, tactics, policies, and procedures with the goal of identifying problem areas and recommending remedial actions so that potential liability can be avoided in the future.

Ainslie Decl., Ex. 5 at 3.

The CIRB consists of three voting members, including Commanders from Law Enforcement, Court, and Detention Services.  Id. at 4.  There are two non-voting members which include the Sheriff Department's Director of Legal Affairs and the Human Resources Commander who chairs the meetings.  Id.  Section 4.23 requires the CIRB to convene within thirty (30) days a "Preliminary Critical Incident Review Board (Pre-CIRB)" to review incidents

---

[1] In their Opposition, Defendants set forth an entire section entitled "Critical Incident Review Board" in which they make several assertions about the nature, purpose, and functions of the CIRB without citation to any specific source except for a citation to the Sheriff Department's Policy and Procedure § 4.23.  See Oppo at 8-11.  Section 4.23 does not contain much of the information that is stated as fact in the Opposition.  Instead, the wording of this section appears to be nearly identical to the wording of the declaration of Michael Baranic that was submitted in Estate of Moreno Arroyo v. County of San Diego and attached to the Declaration of Adam Ainslie in this matter as Ex. 1.  However, there is no citation to this declaration in the County's Opposition and this declaration was not included in the County's Opposition.

deemed "critical" which includes an "in custody death" for a "preliminary assessment." Id. at 5. At the "Pre-CIRB," a Sergeant with the Division of Inspectional Services (DIS) "present[s] facts and circumstances to the members of the CIRB." Id.  At the "Final CIRB," investigators of the "critical incident" present facts and circumstances of the incident to the CIRB members which is followed by a question and answer session with the CIRB board members. Id.

If three voting Commanders determine that a policy violation may exist, the case is forwarded to Internal Affairs for investigation and then reviewed by the Sheriff's command "consistent with the Department's policies and procedures." Id.  Within forty-five (45) days of the Pre-CIRB or Final CIRB, the DIS Lieutenant prepares a report summarizing the board's actions and conclusions, including findings on policy violations and training or policy issues. Id. A copy of the "CIRB Confidential Report," along with "other related reports shall be filed in the Legal Affairs Section, Office of the Sheriff." Id.

## PROCEDURAL BACKGROUND

On July 26, 2023, Plaintiff initiated this action on behalf of the Estate of Lonnie Rupard alleging that Defendants County of San Diego, along with individually named Defendants, violated Mr. Rupard's civil rights by causing his death while he was detained in the San Diego Central Jail. ECF No. 1. On March 7, 2024, Plaintiff filed a Second Amended Complaint ("SAC"). ECF No. 79. On May 14, 2024, the County filed a motion to dismiss Plaintiff's SAC for failure to state a claim [ECF No. 119] which District Judge Cathy Ann Bencivengo granted in part and denied in part. ECF No. 136. On October 8, 2024, the County answered Plaintiff's SAC. ECF No. 147.

On July 16, 2024, counsel for Plaintiff, Eugene Iredale, served Plaintiff's Request for Production of Documents ("RPD"), Set Two, on the County.  Iredale Decl. at ¶ 3, ECF No. 158-2, Ex. 1.  On October 10, 2024, the County, after receiving extensions of time, served its responses to Plaintiff's RPDs which included a privilege log. Id. at ¶ 4, Ex. 2.  On October 22, 2024, Mr. Iredale transmitted a meet and confer letter regarding the County's withholding of documents relating to the CIRB in response Plaintiff's RPD. Id. at ¶ 5, Ex. 3.  On November 5, 2024, Mr. Iredale's co-counsel, Ms. Sarah Musumeci and counsel for the County, Ms. Rada

1  Feldman, met and conferred in-person and agreed that the Plaintiff would narrow some of his
2  requests "by date range and by providing the names of specific cases for which CIRB
3  documentation is sought." Id. at ¶ 6. Plaintiff narrowed his discovery request but the County
4  informed Plaintiff that they would "lodge the same objections set forth in the privilege log and
5  in its initial responses to the discovery." Id. at ¶ 10.

6      A briefing schedule was issued. Id. After the parties filed their briefs, the Court ordered
7  the County to lodge with the Court the CIRB Reports at issue for in camera review. ECF No.
8  167. The County lodged these documents with the Court on January 16, 2025.

9                              **LEGAL STANDARD**

10     The scope of discovery under the Federal Rules of Civil Procedure is defined as follows:

11         Parties may obtain discovery regarding any nonprivileged matter that is relevant
12         to any party's claim or defense and proportional to the needs of the case,
            considering the importance of the issues at stake in the action, the amount in
13         controversy, the parties' relative access to relevant information, the parties'
14         resources, the importance of discovery in resolving issues, and whether the burden
            or expense of the proposed discovery outweighs the likely benefit. Information
15         within this scope of discovery need not be admissible in evidence to be
16         discoverable.
17

18  Fed. R. Civ. P. 26(b)(1). Typically, the relevance standard is broad in scope and "encompass[es]
19  any matter that bears on, or that reasonably could lead to other matters that could bear on, any
20  issue that is or may be in a case." Doherty v. Comenity Capital Bank & Comenity Bank, 2017 WL
21  1885677, at *2 (S.D. Cal. May 9, 2017). Relevance, however, is not without limits. Id. The 2015
22  amendment to Rule 26(b) removed the phrase "reasonably calculated to lead to the discovery
23  of admissible evidence" because it was often misconstrued to define the scope of discovery.
24  Fed. R. Civ. P. 26(b)(1) advisory committee's notes (2015 amendment). Instead, to fall within
25  the scope of discovery, the information must also be "proportional to the needs of the case,"
26  requiring lawyers to "size and shape their discovery requests to the requisites of a case" while
27  "eliminat[ing] unnecessary or wasteful discovery." Fed. Civ. R. P. 26(b)(1); Cancino Castellar v.
28  McAleenan, 2020 WL 1332485, at *4 (S.D. Cal Mar. 23, 2020) (quoting Roberts v. Clark Cty.

1   Sch. Dist., 312 F.R.D. 594, 603 (D. Nev. 2016)).

2       District courts have broad discretion to determine relevancy for discovery purposes. D.M.

3   v. County of Merced, 2022 WL 229865, at * 2 (E.D. Cal. Jan. 26, 2022) (citing Hallett v. Morgan,

4   296 F.3d 732, 751 (9th Cir. 2002) and Surfvivor Media v. Survivor Prods., 406 F.3d 625, 635

5   (9th Cir. 2005)). District courts also have broad discretion to limit discovery to prevent its abuse.

6   See Fed. R. Civ. P. 26(b)(2) (instructing that courts must limit discovery where the party seeking

7   the discovery "has had ample opportunity to obtain the information by discovery in the action"

8   or where the proposed discovery is "unreasonably cumulative or duplicative," "obtain[able] from

9   some other source that is more convenient, less burdensome or less expensive," or where it "is

10  outside the scope permitted by Rule 26(b)(1)"). Further, "[w]hen analyzing the proportionality

11  of a party's discovery requests, a court should consider the importance of the issues at stake in

12  the action, the amount in controversy, the parties' relative access to the information, the parties'

13  resources, the importance of the discovery in resolving the issues, and whether the burden or

14  expense of the proposed discovery outweighs its likely benefit." Cancino, 2020 WL 1332485, at

15  *4 (citing Fed. R. Civ. P. 26(b)(1)).

16      Fed. Civ. R. P. 34 provides that a party may serve on another a request for production of

17  documents, electronically stored information, or tangible things within the scope of Fed. Civ. R.

18  P. 26(b). Fed. R. Civ. P. 34(a). Where a party fails to produce documents requested under Rule

19  34, the party propounding the request for production of documents may move to compel

20  discovery. See Fed. R. Civ. P. 37(a). "The party seeking to compel discovery has the burden of

21  establishing that its requests satisfy the relevancy requirements of Rule 26(b)(1). Thereafter,

22  the party opposing discovery has the burden of showing that the discovery should be prohibited,

23  and the burden of clarifying, explaining, or supporting its objections." Williams v. County of San

24  Diego, 2019 WL 2330227, at *3 (citing Bryant v. Ochoa, 2009 WL 1390794, at *1 (S.D. Cal. May

25  14, 2009)) (internal quotations omitted).

26                                                **PLAINTIFF'S POSITION**

27      Plaintiff's RPDs Nos. 16-19 and 34 request the County to produce "[a]ny and all reports

28

or memoranda of the [CIRB] regarding or related to" Lonnie Rupard, the in-custody jail deaths[2], "[a]ny spreadsheet, chart, log, document, report, or memoranda reflecting the recommendations or conclusions of the CIRB for Lonnie Rupard and the other in-custody jail deaths, and "[a]ll documents, records, materials, power point presentations, audio/visuals and tangible things provided to the [CIRB] or used during CIRB meetings regarding or related to" the in-custody jail deaths." MTC at 5-9; Iredale Decl., Ex. 1.

Plaintiff argues that the CIRB documents are not protected by attorney-client privilege or work product doctrine. Specifically, Plaintiff contends that this position is supported by a number of previous rulings in the Southern District of California where several judges have consistently found that these privileges do not apply to CIRB documents. MTC at 10-14, Iredale Decl. Ex. 5. Multiple judges found that the CIRB's primary purpose is not to seek or provide legal advice but to review incidents and recommend remedial measures, which does not warrant privilege protection. Id.

Plaintiff also argues that the CIRB documents are relevant and discoverable as they relate to Plaintiff's claims arising under 42 U.S.C. § 1983 and Monell v. Dep't of Social Services of New York, 426 U.S. 658 (1978). Specifically, Plaintiff contends these materials are relevant to his Monell claim because in order to prove this claim, "Plaintiff needs to show that the County was on notice that subordinates were ignoring medical needs of seriously ill inmates and were failing to conduct proper cell checks." MTC at 17. Plaintiff also asserts that the information contained in the CIRB reports is not available through any other means and they can be subject to a protective order which would adequately protect any privacy interests of the Sheriff's Department employees.

## **THE COUNTY'S POSITION**

The County contends that the CIRB reports are protected by the attorney-client privilege.

---

[2] Specifically, Plaintiff seek the CIRB reports related to the deaths of Joseph Carroll Horsey, Michael Wilson, Jose Sevilla, Ivan Ortiz, Elisa Serna, Blake Wilson, Anthony Chon, Lazaro Alvarez, Saxon Rodriguez, and Hayden Schuck which are alleged to have occurred while housed in the San Diego County Jails.

Oppo at 11-22. Specifically, the County argues that the reports were prepared primarily for the purpose of seeking legal advice from the Sheriff's Legal Counsel regarding civil liability and exposure from critical incidents that could lead to litigation. Id. at 11-17. They assert that the reports include legal advice on policy and procedural issues, and proposals to prevent future occurrences and liability. Id. The County also argues that the cases from the Southern District cited by Plaintiff in favor of disclosure were wrongly decided and instead, this Court should look to two previous decisions from the Southern District that found the CIRB reports are protected by the attorney-client privilege. Id. at 17-22.

In addition, the County claims that the CIRB reports are protected under attorney-work product doctrine as they were prepared in anticipation of litigation. Id. at 22-23. They maintain that these reports would not have been prepared in the same form if not for the prospect of litigation which "not surprisingly" is likely in the event of an in-custody death. Id. at 22.

The County also asserts that the CIRB reports are protected by the official information privilege "and/or" law enforcement investigatory privilege. Id. at 23-24. They argue that the disclosure would harm law enforcement efforts, chill frank discussions "that occur to render advice and formulate" a legal strategy, and impact governmental or privacy interests. Id. at 24. The County argues that the CIRB reports also contain private, confidential information about non-party deputy sheriffs and nurses, which includes medical and employment information. "If disclosed, this information could lead to potential humiliation, embarrassment, and/or safety issues for these non-parties." Id. at 25.

The County suggests that if the Court finds that the privileges are not applicable that redactions are appropriate to protect privileged information. Id. at 25. If redactions are appropriate, the County argues that the documents should only be produced pursuant to a protective order. Id.

Finally, the County requests that this Court "deny Plaintiff's motion to compel, or alternatively, hold off on ruling until the Ninth Circuit has issued its opinion in Greer," which refers to the appeal from United States District Judge Ohta's ruling in Greer v. Cnty. of San Diego, S.D. Cal. Civil Case No. 19-cv-00378-JO-DEB.

## **PLAINTIFF'S REPLY**

In response to the County's Opposition, the Plaintiff argues that the County forfeited any attorney-client privilege protection by failing to make a particularized showing of its application to the specific CIRB documents at issue.  Reply at 3.  Specifically, the County failed to submit a declaration detailing how the "entirety of CIRB documents sought" fall within the attorney-client privilege doctrine.  Id.  The County did not submit a declaration from legal counsel with personal knowledge and while the counsel for the County declares that they "attached declarations filed in other cases" by the "Sheriff's Department Chief Legal Advisor and Director of Legal Affairs," no such declarations are submitted in support of their Opposition.  Id.

Plaintiff asserts that multiple courts have rejected the County's argument that the CIRB reports are prepared for the purpose of securing legal advice.  Id. at 5.  This argument has, in fact, been rejected by six judges in the Southern District.  Id.   In addition, the attorney work product doctrine does not apply because the County failed to show how the CIRB reports at issue in this matter differ from other CIRB reports found not to be protected from this doctrine by other judges in the Southern District.  Id at 7.

Moreover, the County has not met its burden to show that the official information and law enforcement investigatory privileges apply.  Id. at 9.  First, the County has failed to submit a declaration by anyone that addresses the factors required to make a threshold showing that the official information privilege applies.  Id.  Second, to the extent that the County relies on declarations submitted in other matters, the courts have found those declarations to be deficient.  Id.

To the extent that the County raises privacy concerns, the existing protective order can adequately address those concerns and any other concerns falling under the California Confidentiality of Medical Information Act.  Id. at 10.  In addition, targeted redactions will also protect the privacy interests of non-parties.  Id.

Finally, the Plaintiff disputes the characterization made by the County of the issues that are currently on appeal before the Ninth Circuit.  Id. at 10-11.  Even if the Ninth Circuit is currently considering the issue of whether CIRB documents are protected by attorney-client

3:23CV1357 CAB (BLM)

1   privilege, Plaintiff argues this Court still may compel their production under the existing

2   protective order.  Id. at 12.

3   **ANALYSIS**

4       A.    CIRB Reports

5          Plaintiff seeks the disclosure of Lonnie Rupard's CIRB report, along with seven other CIRB

6   reports relating to in-custody deaths at the San Diego County Jail from December 24, 2017 to

7   March 16, 2022.  The County asserts these documents should not be produced because they

8   are protected by attorney-client privilege, work product doctrine, official information privilege,

9   law enforcement privilege, and third party privacy concerns.

10      1.  Attorney Client Privilege

11         The County has objected to the RPDs in part because the requests to produce the CIRB

12  reports seeks information that they claim is protected from disclosure by attorney-client

13  privilege.  Oppo. at 11-17.

14         The attorney-client privilege "protects confidential communications between attorneys

15  and clients, which are made for the purpose of giving legal advice." In re Grand Jury, 23 F.4th

16  1088, 1091 (9th Cir. 2021) (citation omitted).  The party asserting the attorney-client privilege

17  has the burden of establishing the relationship and privileged nature of the communication. The

18  attorney-client privilege exists where: (1) legal advice of any kind is sought (2) from a

19  professional legal adviser in his capacity as such, (3) the communications relating to that

20  purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected

21  (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.  See

22  United States v. Richey, 632 F.3d 559, 566 (9th Cir. 2011) (internal citations and quotation

23  marks omitted). "Because it impedes full and free discovery of the truth, the attorney-client

24  privilege is strictly construed." United States v. Martin, 278 F.3d 988, 999 (9th Cir. 2002).  Here,

25  the County bears the ultimate burden of proving the privilege applies. United States v. Ruehle,

26  583 F.3d 600, 608 (9th Cir. 2009) (citing United States v. Munoz, 233 F.3d 1117, 1128 (9th Cir.

27  2000)).

28  ///

9

a. Primary Purpose Test

In determining whether a communication between an attorney and a client is protected by attorney-client privilege, the Ninth Circuit has applied the "primary purpose" test which assesses whether the main purpose of the communication is to give or receive legal advice, as opposed to, for example, business advice. In re Grand Jury, 23 F.4th at 1091. In adopting the "primary purpose" test, the Ninth Circuit rejected the "because of" test which considers whether a communication was made "because of" anticipated litigation, regardless of whether the primary purpose was legal advice. Id. The Ninth Circuit found that unlike the attorney work-product doctrine, the attorney-client privilege is not necessarily tied to any adversarial process. Id. at 1093. The County argues that the Court should not rely on the Ninth Circuit's decision in In re Grand Jury and instead, this Court should adopt the reasoning found In re Kellogg Brown & Root, Inc., 756 F.3d 754 (D.C. Cir. 2014). Oppo at 6. The D.C. Circuit in Kellogg also adopted a "primary purpose" test but they articulated a test that allowed for a communication to have more than one "primary purpose." In re Kellogg, 756 F.3d at 760. However, the Ninth Circuit expressly declined to adopt the reasoning of In re Kellogg and therefore, the Court will adopt the "primary purpose" test set forth in In re Grand Jury.

b. Prior Court Decisions regarding CIRB Reports

As stated in both the moving papers and the opposition, the issue of whether the County's CIRB Reports are protected by attorney-client privilege has been litigated many times in the Southern District of California. There have been rulings on this specific issue in Greer v. County of San Diego, 634 F.Supp.3d 911 (S.D. Cal. 2022); Morton v. County of San Diego, 2023 WL 4243239 (S.D. Cal. June 20, 2023, as amended June 27, 2023); Estate of Elisa Serna v. County of San Diego, 689 F.Supp.3d 848 (S.D. Cal. Aug. 30, 2023); Dunsmore v. San Diego Cnty. Sheriff's Dep't, 2023 WL 8631663 (S.D. Cal. Dec. 13, 2023); Estate of Moreno Arroyo v. County of San Diego, S.D. Cal. Civil Case No. 21-cv-1956-RBM-SBC (Mar. 26, 2024); Marroquin de Portillo v. County of San Diego, S.D. Cal. Civil Case No. 23-cv-0978-WQH-VET (Dec. 9, 2024).

In each of these cases, the courts found that the CIRB served multiple non-legal purposes and that often its primary purpose is investigative, as well as remedial, and not necessarily to

provide or obtain legal advice.  As a result, these courts all found that the County did not meet its burden to show that these reports were privileged and the CIRB reports were not protected from disclosure by the attorney-client privilege.

The County argues that these above referenced cases were decided incorrectly and this Court should look to other decisions from the Southern District that they maintain were decided correctly.  Oppo. at 18.  Specifically, in <u>Bush v. Cnty. of San Diego</u>, S.D. Cal. Civil Case No. 15-cv-686-L-JMA (Nov. 24, 2015) and <u>Estate of Ruben Nunez v. Cnty. of San Diego</u>, S.D. Cal. Civil Case No. 16-cv-1412-BEN-MDD (Sept. 11, 2017), the courts declined to compel the production of CIRB Reports solely based upon declarations from the Sheriff's Department Chief Legal Advisor finding that the reports were prepared for the purpose of obtaining legal advice.  <u>See generally</u> <u>id</u>.  Notably, these cases were decided before the "primary purpose" test was adopted by the Ninth Circuit in <u>In re Grand Jury</u> in 2021, whereas the previously cited cases were decided after <u>In re Grand Jury</u> used the "primary purpose" test. In applying the "primary purpose" test, the courts found that the "primary purpose" of the CIRB documents was not to give or receive legal advice and therefore, not protected by attorney-client privilege.  These courts also conducted <u>in</u> <u>camera</u> review of the CIRB documents in making these findings and this Court also has elected to conduct an <u>in</u> <u>camera</u> review of the documents at issue.  This Court finds the reasoning in the cases decided after <u>In re Grand Jury</u> to be persuasive and well-reasoned, and therefore, does not find the earlier cases of <u>Bush</u> and <u>Estate of Nunez</u> to be persuasive.

The County also argues that the prior decisions from this District "result from a flawed premise that the CIRB serves 'multiple purposes unrelated to obtaining legal advice,' which the <u>Greer</u> court terms 'investigative and remedial' as opposed to legal advice."  Oppo at 20.  The County asserts that this "identification of 'legal advice' is too narrow" and all of the "alleged purposes [of CIRB] fall under the rubric of legal advice."  <u>Id</u>. citing <u>In re Grand Jury</u>, 23 F.4th at 1092.

However, in <u>Greer</u>, the court found that the primary purpose of the CIRB was not to obtain legal advice by relying primarily on to the statements made by the Sheriff for San Diego County in which he expressly stated that the focus of the CIRB review was to identify deficiencies

and to make changes to "minimize the risk of recurrence" of deaths of individuals in the County's custody.  Greer, 634 F.Supp.3d at 920.  The court also looked to the "primary architect" of the CIRB policy and procedure, the legal counsel for the Sheriff's Department, who "recommend[ed] installing legal counsel as a CIRB member to cloak the CIRB's investigation, findings and recommendations in privilege."  Id.  The court was critical of "attempt[ing] to immunize documents from disclosure by simply involving an attorney in the investigation" Id. (citations omitted).   For these reasons, the court found that the primary purpose of the CIRB was not to provide legal advice and this Court agrees with this finding.

In addition, pursuant to the Sheriff's Department policy and procedure § 4.23, the voting members of the CIRB must vote to determine whether a policy violation exists and nothing in this policy requires  the voting members of the CIRB to obtain legal advice from the Chief Legal Advisor who serves as a non-voting CIRB member.  "Stated another way, the CIRB could fulfill its duties under Section 4.23 to vote on policy violations and address training or policy issues absent any legal advice form the Chief Legal Advisor."  Estate of Elisa Serna, 689 F.Supp.3d at 862.

This Court also reviewed the reports submitted in camera and finds that there is very little legal advice given in these reports.  In some reports, there is a complete absence of legal advice or any reference to any potential legal liability.  Accordingly, for these reasons and for the reasons set forth below, the Court is persuaded by the reasoning of the cases that were decided in this District after In re Grand Jury which found that the CIRB reports are not protected by attorney-client privilege.

c.  The Rupard CIRB Report

The Court will now address the CIRB reports at issue in this case and reviewed in camera. The Rupard CIRB Report was prepared following the death of Mr. Rupard.  The report is labelled "Pre-CIRB Review" and consists of a two-page memorandum marked "Privileged Attorney-Client" and addressed to Michael Baranic, Legal Affairs Director, Office of the Sheriff, which summarizes the CIRB's meeting on April 20, 2022 to review Mr. Rupard's death while in custody at the San Diego Central Jail.  The attached roster indicates that there were twenty-seven (27) individuals

present during this meeting and two individuals, Robert Faigin and Michael Baranic, are identified as "legal."  This report makes no reference to any legal advice given by attorneys during the meeting and it does not make any remedial recommendations.  Instead, the report consists of an "incident synopsis" and includes the medical examiner's determination of Mr. Rupard's manner of death.

The County maintains that these reports are protected by the attorney-client privilege they include the "necessary ambit of legal advice or legal assistance discussing policy/procedure issues potentially contributing to the incident, as well as proposals to prevent future occurrences and exposure to liability."  Oppo at 6.  However, Mr. Rupard's report makes no reference to liability, legal claims, or any legal advice sought or given.  In addition, unlike all the other reports submitted for in camera review, there is no summary of any discussion among the CIRB board members nor is there a section entitled "final conclusions, recommendations, and/or actions" which is found in all of the other reports.  This report also is labelled "Pre-CIRB review" while all the other reports have a label of "Critical Incident Review Board."

According to the County, after the presentation session, "all invited attendees leave" and the "Sheriff's Legal and the rest of the CIRB meet for the confidential Closed session."  Oppo at 9. During this closed session, the County states that an "authorized DIS Lieutenant representative attends in the capacity of CIRB liaison and to transcribe and memorialize the discussion for Sheriff's Legal."  Id. There is no transcription or memorialization of any discussions contained in Mr. Lupard's CIRB report.

The County argues that  the "purpose of CIRB – and at a minimum, its primary purpose – is providing a forum for requesting and receiving legal advice."  Oppo at 21.  However, a review of Mr. Rupard's Pre-CIRB Report shows that it is completely devoid of any legal advice, any discussion of potential legal liability or any requests for legal advice.  There is no mention of any pending litigation arising from Mr. Rupard's death in his report.  In fact, there is no discussion attributable to any individual present at the CIRB meeting. The Court directed the County to propose redactions, if necessary, to each of the CIRB Reports at issue in this matter but notably, the County proposed no redactions to Mr. Rupard's CIRB Report.  The County has

3:23CV1357 CAB (BLM)

the burden to establish that each document was prepared for "purpose of giving legal advice." In re Grand Jury, 23 F.4th at 1091. After reviewing the report, the Court finds that the primary purpose of the CIRB Report pertaining to the death of Mr. Rupard was not to seek or provide legal advice and therefore is not protected from disclosure by attorney-client privilege.

### d. Remaining CIRB Reports[3]

Plaintiff seeks the production of the additional CIRB Reports because he argues that these reports are relevant to his Monell claim. MTC at 17. Plaintiff also argues that the request is proportional to the needs of the case. Id. The County does not dispute that these reports may be relevant to Plaintiff's Monell claim or that the requests are proportional to the needs of this case. The Court therefore finds that the requested reports are relevant because identifying similar incidents involving allegations of ignoring the medical needs and failing to conduct wellness checks on detainees while in the custody of the San Diego Sheriff's Department, can demonstrate an improper custom, policy, or practice which could lead to liability under Monell. See Monell, 436 U.S. at 658, 691.

Rather than addressing the relevancy of these reports, the County once again argues that the cases decided in this District that found CIRB Reports were not entitled to attorney-client privilege protections were wrongly decided. Oppo at 21-22. Because the Court finds that Plaintiff has established these these reports are relevant, the Court conducted an in camera review to determine whether the reports were prepared for the primary purpose of giving or seeking legal advice. See United States v. Chevron Corp., 1996 WL 444597, at *2 (N.D. Cal. May 30, 1996) ("The court may conduct an in camera review of withheld documents to allow the client to demonstrate to the court that the attorney-client privilege applies to segregable

---

[3] The County has only submitted seven (7) CIRB reports for this Court's in camera review. Attached as Exhibit 1 to Plaintiff Counsel Yoo's Declaration is the County's "Response to [Plaintiff's] Revised and Narrowed Request for Production of Documents (Set Two)." ECF No. 163-2, Ex. 1. In these discovery responses, the County responds to Plaintiff's request for CIRB Reports for Joseph Carroll Horsey, Michael Wilson, and Anthony Chon by stating as to this RFP "no responsive documents exist." Id. at 6-7. Plaintiff "accepts Defendants' representation and withdraws his motion to compel as it relates to those individuals only." Reply at 2, fn. 2.

1  portions of the withheld documents.").

2      A review of all of the reports clearly demonstrates that the primary purpose of the CIRB

3  meetings, and the reports that were produced from those meetings, was to conduct a review of

4  the critical incidents and make remedial recommendations for improving future practices in the

5  County's jails.  The County asserts that the "Second Circuit's decision in [In re Cnty. of Erie, 473

6  F.3d 413 (2d. Cir. 2007)] is instructive in this case."  Oppo at 14.  The Court agrees.  In Erie,

7  the Second Circuit found that "[t]he predominant purpose of a communication cannot be

8  ascertained by quantification or classification of one passage or another," but "should be

9  assessed dynamically and in light of the advice being sought or rendered, as well as the

10  relationship between advice that can be rendered only by consulting the legal authorities and

11  advice that can be given by a non-lawyer."  Id. at 420-21.  While in some of the reports there

12  are comments and questions by former Chief of Legal Affairs Robert Faigin about facts that were

13  presented during the CIRB meeting, as well as some basic information provided by the Office of

14  County Counsel, there are little to no statements from counsel that could be construed as legal

15  advice.  After reviewing these reports, the Court finds that the "primary purpose" of the reports

16  was to make recommendations to improve policies and practices rather than to provide legal

17  advice.

18      As part of the Court's Order regarding the in camera review, the County was instructed

19  to provide proposed redactions of the CIRB reports in case the Court ordered them to be

20  produced.  See  ECF No. 172.  When these reports were submitted directly to this Court, the

21  County informed the Court that they had no proposed redactions for two of the reports, failed

22  to identify whether they were seeking any redactions of Hayden Schuck's CIRB report, and had

23  no proposed redactions for the PowerPoint presentations that were given during the CIRB

24  meetings.   They offer no argument as to why the PowerPoint presentations specifically would

25  be protected by attorney-client privilege.  These PowerPoint presentations are not marked

26  "privileged" and appear to be a summary of facts involving the different incidents prepared by

27  non-legal Sheriff's Department personnel.  The presentations do not contain any reference to

28  any attorney or set forth any statement that could be even liberally construed as legal advice.

Based on the review of the record, the Court finds that the County has not met its burden to establish that the primary purpose of the communications at the CIRB meetings was to seek or provide legal advice. Therefore, because the Court finds that the primary purpose of the CIRB reports was to make findings and recommendations to improve their practices, the attorney-client privilege does not protect the entirety of the CIRB reports, and the related PowerPoint presentations, at issue in this matter.

2. <u>Attorney Work Product</u>

The County argues that the CIRB Reports are protect by the attorney-work product doctrine because they were prepared in anticipation of litigation and assert "CIRB incidents, i.e. an inmate's death, not surprisingly necessarily triggers the prospect of anticipated litigation." Oppo. at 22-23.

"The work-product doctrine is a qualified privilege that protects from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." <u>United States v. Sanmina Corp.</u>, 968 F.3d 1107, 1119 (9th Cir. 2020). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case, and protects both material prepared by agents for the attorney as well as those prepared by the attorney himself." <u>Id.</u> The doctrine "upholds the fairness of the adversarial process by allowing litigators to creatively develop legal theories and strategies – without their adversaries invoking the discovery process to pry into the litigators' minds and free-ride off them." <u>In re Grand Jury</u>, 23 F.4th at 1093; <u>see also</u> Fed. R. Civ. P. 26(b)(3)(A) ("Ordinarily, a party may not discover documents *864 and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative ...").

"In circumstances where a document serves a dual purpose, that is, where it was not prepared exclusively for litigation, then the 'because of' test is used." <u>United States v. Richey</u>, 632 F.3d 559, 567–68 (9th Cir. 2011). "In applying the 'because of' standard, courts must consider the totality of the circumstances and determine whether the document was created because of anticipated litigation, and would not have been created in substantially similar form

but for the prospect of litigation." Id. "The party asserting work product protection has the burden to demonstrate it applies to the information in question." Greer, 634 F. Supp. 3d at 918.

Again, the relevant cases from this District have applied similar reasoning in finding that the attorney work product doctrine does not apply to CIRB Reports. As the court found in Estate of Serna, the work product doctrine only "applies if the County establishes that each of the [] CIRB Reports 'would not have been created in substantially similar form but for the prospect of litigation.'" Estate of Serna, 689 F.Supp.3d at 864 (citing Richey, 632 F.3d at 568). The court went on to find that because the Sheriff's policy, § 4.23, requires the "CIRB to review all "critical incidents," which include "[i]n custody deaths, other than natural causes" supports a finding that these reports are not attorney work product because policy mandates they undergo this process "for all critical incidents whether or not litigation is anticipated." Id. (citing Kelly v. City of San Jose, 114 F.R.D. 653, 659 (N.D. Cal. 1987) ("Since police departments are under an affirmative duty, in the normal course of serving their public function, to generate the kind of information at issue here, the policies that inspire the work product doctrine are wholly inapplicable."); Martin v. Evans, No. C 08-4067 JW MEJ, 2012 WL 1894219, at *5 (N.D. Cal. May 23, 2012) (overruling work-product objection to production of prison internal affairs reports where prison "fails to demonstrate how the reports were generated primarily for use in litigation or collected outside the regular course of business"); Greer, 634 F. Supp. 3d at 921-22 (finding County did not establish work product doctrine applied to CIRB reports)).

This Court finds the reasoning of Estate of Serna to be persuasive and finds that the CIRB Reports, in general, are not protected by the attorney work product doctrine. However, the Court does find that the portions of the CIRB report memorializing questions and responses prompted by the Chief Legal Advisor are protected work product because they reflect the Chief Legal Advisor's mental processes and potential thinking concerning impending litigation.

3. Official Information and/or Law Enforcement Privilege

The County argues that the CIRB Reports are also protected by "official information privilege and/or law enforcement investigatory privilege." Oppo. at 23.

a. Official Information Privilege

"Federal common law recognizes a qualified privilege for official information." <u>Sanchez v. City of Santa Ana</u>, 936 F.2d 1027, 1033 (9th Cir. 1990). "In determining what level of protection should be afforded by this privilege, courts conduct a case by case balancing analysis, in which the interests of the party seeking discovery are weighed against the interests of the governmental entity asserting the privilege." <u>Soto v. City of Concord</u>, 162 F.R.D. 603, 613 (N.D. Cal. 1995). This balancing approach is "moderately pre-weighted in favor of disclosure." <u>Id</u>. The County bears the burden of establishing the official information privilege applies. <u>Shiflett by and through Davenport v. City of San Leandro</u>, 2023 WL 4551077, at *2 (N. D. Cal. July 13, 2023).

The party asserting the privilege must make a "substantial threshold showing." <u>Soto</u>, 162 F.R.D. at 613. "[T]o fulfill the threshold requirement, the party asserting the privilege must submit a declaration or affidavit from a responsible official with personal knowledge of the matters to be attested to in the affidavit." Id. The affidavit must include:

> (1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if disclosure were made.

<u>Id</u>.

The County argues that the "CIRB reports and related materials are protected by the official information privilege as set forth in the declarations of Michael Baranic, which provides that governmental or privacy interests would be threated by disclosure of the CIRB reports to Plaintiffs and/or their lawyers." Oppo. at 24.

In response, Plaintiff argues that the declarations of Michael Baranic, which the County initially failed to submit, are "not specific to this case and do not concern the same documents as sought here." Reply at 9. The Court has reviewed the declarations referenced by the County in its opposition which were not provided to the Court until the Court ordered the County to do

so.  ECF No. 172.  The County provided three declarations by Michael Baranic, Chief Legal Advisor and Director of Sheriff's Legal Affairs that were prepared for and filed in the <u>Morton</u>, <u>Dunsmore</u>, and <u>Moreno Arroyo</u> cases.  <u>See</u> ECF No. 173, Exs. 2, 3, and 4.  The County did not explain why Mr. Baranic did not submit a declaration specific to this matter.  Plaintiff argues that the courts in <u>Morton</u> and <u>Dunsmore</u> rejected these declarations as insufficient because they did not "address the third, fourth, or fifth factors of <u>Soto</u> and because [Mr. Baranic] failed to address how disclosure of the CIRB reports subject to the protective order would create a substantial risk of harm to significant government or privacy interests and that the declaration was 'insufficient to satisfy the County's burden to make a substantial threshold showing that the official information privilege applies."  Reply at 9 (citing <u>Morton</u>, 2023 WL 6150402,at *8.).  The Court agrees with the <u>Morton</u> court's finding that these declarations are deficient.  In addition, the Court reiterates that the County failed to make the required showing by providing a declaration specific to the facts and issues before this Court.

> ### b.  Law Enforcement Investigatory Privilege

"Although the Ninth Circuit has not expressly recognized the law enforcement privilege, several courts within this Circuit have acknowledged and applied it." <u>Lien v. City of San Diego</u>, No. 21-cv-224-MMA-WVG, 2022 WL 134896, at *2 (S.D. Cal. Jan. 14, 2022). The privilege "is based on the harm to law enforcement efforts that might arise from public disclosure of investigatory files." <u>Id</u>.

A party asserting the privilege must meet the following requirements:

> (1) there must be a formal claim of privilege by the head of the department having control over the requested information, (2) assertion of the privilege must be based on actual personal consideration by that official, and (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege.

<u>Roman v. Wolf</u>, 2020 WL 6588399, at *2 (C.D. Cal. July 16, 2020). In <u>Lien</u>, the district court found the privilege applied to internal documents maintained by the San Diego Police Department relating to "an ongoing, pending criminal prosecution" and "ongoing active criminal

investigations" and affirmed the production of those documents to the civil action plaintiffs with redactions to information identifying those individuals. <u>Lien</u>, 2022 WL 134896, at **3-4.

Again, the County is relying on the declarations submitted by Mr. Baranic in other matters to support its assertion of this privilege.   The failure to submit a declaration specific to the documents at issue in this case is fatal to this claim because the County fails to comply with the first element of this privilege which requires the "formal claim of privilege by the head of the department having control over the requested information." <u>Roman</u>, 2020 WL 6588399, at *2. Mr. Baranic, as the Chief Legal Advisor and Director of Sheriff's Legal Affairs, has not made a showing that he has submitted a formal claim of privilege[4] in this matter. The Court also finds that the County has not satisfied the remaining two requirements as Mr. Baranic has not provided a declaration in this case and therefore, has not "personally considered" the privilege as it applies to this case nor addressed the specific information at issue in this case.

For all these reasons, the Court finds that the County has not met its burden to establish either official information or law enforcement investigatory privileges.

4.  Privacy

The County argues that the CIRB Reports relating to other individuals who died while in custody contain discussions of the "actions and potential inactions of other officers, nurses and employees that have nothing whatsoever to do with decedent or this case." Oppo. at 25.  The County expresses the concern that "if a CIRB report concerning an in-custody death was disclosed and was somehow leaked to other employees, to the family members of the decedent, or to the news media, the report could  have a detrimental impact on the employee, professionally and/or personally, even if it was determined the employee caused no harm." <u>Id</u>. Plaintiff responds by again pointing to the other cases in this district, specifically <u>Estate of Serna</u>, in which the court found that the existing protective order in the case was sufficient to adequately protect these concerns.  Reply at 163.  Here, the parties have entered into a joint

---

[4] The County's responses to Plaintiff's RFPs show that they did assert official information privilege but there is no formal assertion of law enforcement investigatory privilege.

Protective Order and the County has not explained why the Protective Order is insufficient to protect the information.  <u>See</u> ECF No. 46.  Accordingly, the privacy concerns raised are adequately addressed by this Protective Order.

    5.  Redactions

For the reasons set forth above, the Court finds that these CIRB reports must be produced with appropriate redactions.  For the reasons set forth in detail below, at this time the Court cannot determine the appropriate redactions due to the faulty submission by the County.  The County is ordered to resubmit the CIRB reports for <u>in camera</u> review after correcting the errors identified by the Court.  The County is ordered to thoroughly review the submission to ensure there are no other errors not already identified in this Order and to provide the basis for each proposed redaction.

**Order to Show Cause**

The Court finds that Defendant, County of San Diego, has submitted pleadings that were deficient and failed to include referenced attachments, made misleading or potentially false representations to the Court, and lodged documents in a disorganized state which prevents the Court from ordering the production of the documents with the required redactions at this time.

First, the County' Opposition in this matter included lengthy fact recitations with no citation.  Specifically, the entire section found in the County's Opposition with respect to the CIRB, see Oppo. at 8-9, contains no citation to the source of the factual allegations.  Second, the County represents that the CIRB reports in the <u>Greer</u> matter "were not produced."  Oppo. at 19.  However, Julia Yoo, Counsel for Plaintiff in this matter and Counsel for the plaintiff in the <u>Greer</u> matter, declares under penalty of perjury that she did receive the CIRB Reports, she referenced them in open court during the oral argument on summary judgment in <u>Greer</u> and the district judge distributed copies of the reports to all parties.  Yoo Decl. at ¶¶ 3-9.  Third, the initial declaration submitted by Adam Ainslie claimed that there were five exhibits attached to the declaration.  ECF No. 161-1.  There were no exhibits attached.  This failure was actually raised by Plaintiff in his Reply and despite this notice, the County did not correct its error and provide the missing exhibits.  Instead, the Court was required to issue an Order requiring the

21

Defendants to submit these exhibits.  ECF No. 172.

Finally, the lodgment by the County of the CIRB reports at issue for the Court's in camera review is disorganized, contains markings that have no bearing on the redactions, and includes documents  that were photocopied in a way that significant portions of the documents were obscured.  The lodgment submitted by the County states in part:

> (1) "Lodged as Attachment "A" are the at-issue CIRB Reports and CIRB-related PowerPoint documents for *in-camera* review," (2) "Lodged as "Attachment "B" are the at-issue CIRB Reports that are the subject of Plaintiff's Motion to Compel with proposed redactions.  County has indicated its proposed redactions by applying highlights to the lines and paragraphs it proposed to be redacted," (3) "Lodged as Attachment "C" are the at-issue CIRB Reports that are the subject of Plaintiff's Motion to Compel with proposed redactions applied to the document."

First, "Attachment A" does not contain the PowerPoint Documents.  Second, the CIRB Reports for Jose Sevilla, Ivan Ortiz, Elisa Serna, and Lazaro Alvarez in "Attachment A" contain the proposed highlighted redactions instead of providing those proposed redactions in "Attachment B."  The CIRB Report for Saxon Rodriguez is unreadable.

In "Attachment B," the PowerPoints have illegible markings and scrambled words that make many of them unreadable.  Some of the PowerPoints will have a heading but a mostly blank page indicating that there is information missing from the slide.  The County has represented that they have no proposed redactions for the PowerPoint presentations.  Nearly all the CIRB reports contain markings that are not highlights that make some of the documents unreadable and appear to obscure portions of the documents that are not proposed redactions. In addition, many of the documents appear to have been photocopied with post-it notes or some other form of paper that covers non-privileged information.

In "Attachment C," the County indicated that these documents should show the actual redaction mirroring the highlighted redactions in "Attachment B."  However, for example, Attachment C, Item No. 2 -0004 shows an extensive amount of redactions but there are no corresponding highlighted redactions in Attachment B, Item No. 2-0004.  The PowerPoint presentations for William Schuck and Blake Wilson are missing from Attachment C.  Attachment

B, Item No. 6-00003 contains wording that is missing from the corresponding document in Attachment C, Item No. 6-0003.  As a result of the County's filing, the Court is unable to order the proper redactions at this time.

The County's failure to provide a full and accurate record before the Court has caused unreasonable delays in discovery and wasted judicial resources.  Therefore, the Court **ORDERS** Adam Ainslie, Kristina Aghazaryan, Rada Feldman, Sofia Torrez, Andrei-Vladimir Dumitrescu, and John Normanly to file declarations addressing: (1) the errors identified by the Court and any additional errors found by counsel after reviewing the faulty submission; (2) explaining how the errors occurred and why there were not corrected before submitting the documents to the Court; and (3) the possible imposition of monetary sanctions.  The declarations must be filed **February 19, 2025**.  In addition, as set forth above, the County must submit a corrected production of the CIRB reports as previously set forth in the Court's order requiring in camera review directly to Chambers no later than **February 14, 2025.**  Plaintiff may file a response to the declarations and additional submissions on or before **February 28, 2025**.

Finally, all of the named attorneys are required to personally appear before the Honorable Barbara L. Major on **March 13, 2025** at **9:30 a.m.** in **Courtroom 3D**, U.S. District Court, 940 Front Street, San Diego, California 92101 to show cause why monetary sanctions should not be issued.

## CONCLUSION

For the reasons set for the above, the Court **GRANTS** Plaintiff's Motion to Compel.  The Court **ORDERS** that all eight CIRB Reports and PowerPoint presentations shall be produced to Plaintiff after the Court is able to make the appropriate redactions following the resubmission of the filings submitted for in camera review.

**IT IS SO ORDERED**.

Dated:  2/5/2025

Hon. Barbara L. Major
United States Magistrate Judge

3:23CV1357 CAB (BLM)