**EXHIBIT F**

CERTIFIED
COPY

Q. And that you likely did so here based on your practice?

A. Correct.

Q. And you don't remember to whom you informed the sheriff's personnel about those observations you have shared with us?

A. I don't know who accompanied me that day, or the several potentially individuals that accompanied me that day.

Q. Did you speak to Cruz?

A. No. I don't recall.

Q. Did you speak to anyone in mental health?

A. Well, there was a communication from Ms. Alonso.

MR. KRUEGER: Vague as to time. Belated.

BY MR. IREDALE:

Q. After you saw on the 14th of March, after you saw Mr. Rupard in the cell that you describe in your report, did you speak to Ms. Alonso and tell her "This is unacceptable," or anything to that effect?

A. It's possible, but not that I recall.

Q. Do you recall speaking to anybody in mental health to draw their attention to the state that you witnessed?

A. Not that I recall. It's certainly possible.

Q. Let me ask you specifically -- why don't we mark this as Exhibit No. 6.

MR. KRUEGER: Gene, I have one of the photos as 6. Wouldn't this be 7?

MR. IREDALE: Thank you for letting me know that. You are exactly right. This will be 7. Let me give you a moment to look at that, and after you have reviewed it, would you let me know, please.

THE WITNESS: Okay.

(Exhibit 7 marked)

BY MR. IREDALE:

Q. Now, this is a document that is headed [redacted]

Did I accurately quote the title of the document?

A. Yes.

Q. And did you fill out a portion of the document in response to the questions that are set forth in it?

A. The parts in red.

Q. May I ask how it came to be that you filled out the document? Were you contacted by someone?

A. I don't recall.

Q. You were asked some questions about this visit at the jail on the 14th of March 2022.

Is that fair to say?

A. Yes.

Q. [redacted]

A. [redacted]

Q. [redacted]

A. [redacted]

Q. You explained to them, as you have explained here today, that the interview was conducted from outside the cell?

A. Yes.

Q. [redacted]

A. Yes.

Q. [redacted]

You said:

[redacted]

A. Yes.

Q. Forgive me. I don't mean to quibble and some

time has passed. [redacted]

A. [redacted]

At the time with COVID, it was quite complicated to do a cell-side evaluation.

Q. [redacted]

A. [redacted]

Q. [redacted]

A. [redacted]

[redacted]

A. [redacted]

Q. Do you know what that represents?

A. The date -- the court date. The court hearing date.

Q. Do you know as you sit here today when your report was completed?

A. So we complete our report shortly prior to the court -- court dates. And then I submitted my report to Carmel Vines on March 21st.

Q. Thank you. That's what I was looking for. So March 21 would have been the date that you sent the report to staff in your office and then they further disseminated the report, correct?

A. Exactly.

Q. I'm sorry. The date of death here was the 17th, correct?

MR. IREDALE: St. Patrick's Day.

BY MR. KRUEGER:

Q. As far as you know, is it true to say that your report was not complete as of the time that Mr. Rupard passed?

A. The date is after -- yes. That is correct.

Q. I understand that at the time, you didn't know he had passed. But based on the dates you can see here

now, your report was completed after he had already passed, correct?

A. Yes.

Q. You evaluated Mr. Rupard for his competency to stand trial, correct?

A. Correct.

Q. Is that standard that you were evaluating against the same standard as whether or not someone is; for example, gravely disabled under the LPS?

A. No. It's a different evaluation.

Q. How do those two standards differ?

A. One is much more clinical in nature, but they are just asking different questions to the court. Generally, in the LPS we're looking at grave disability.

Q. Let me ask the question a different way. I think maybe I asked a poor question.

If you find, as you did with Mr. Rupard, that a particular inmate is not competent to stand trial, is that -- is it necessarily true that that person is also gravely disabled within the meaning of the LPS?

MR. IREDALE: You'll forgive me. I have to object as calling for an opinion conclusion of a legal nature. But go ahead and answer, if you can.

THE WITNESS: It's a different question.

BY MR. KRUEGER: