EUGENE G. IREDALE: SBN 75292
JULIA YOO: SBN 231163
SARAH MUSUMECI: SBN 328306
IREDALE & YOO, APC
105 West F Street, Fourth Floor
San Diego, CA 92101-6036
Telephone: (619) 233-1525
Fax: (619) 233-3221

Jeremiah A. Lowe (CA SBN 239166)
*jeremiah@lowelawapc.com*
Lowe Law, APC
402 W. Broadway, Suite 1720
San Diego, CA 92101
Telephone: (619) 878-2725
Facsimile: (619) 878-2737

**Attorneys for Plaintiff**
**ESTATE OF LONNIE RUPARD**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

ESTATE OF LONNIE RUPARD,

Plaintiff,

vs.

COUNTY OF SAN DIEGO, *et al.*,

Defendants,

Case No: 23-CV1357-CAB-JAC

**PLAINTIFF'S OPPOSITION TO COUNTY DEFENDANTS' APPLICATION TO FILE DOCUMENTS UNDER SEAL IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT (ECF NO. 308)**

## I. INTRODUCTION

Decedent Lonnie Rupard died in the San Diego Central Jail on March 17, 2022. He was 46 years old. Though he had been classified for general population housing, Mr. Rupard was held in Administrative Segregation on the Seventh Floor, Module D. Mr. Rupard suffered from schizophrenia. Courts had twice previously found him incompetent to stand trial under Penal Code § 1368 and had twice ordered the administration of anti-psychotic medication after he had refused to take his prescribed medication in custody. Jail records reflect that Mr. Rupard weighed 165 pounds when he was booked into the jail on December 19, 2021. At the time of death, he weighed 105 pounds. The San Diego County Medical Examiner's Office determined that Mr. Rupard's cause of death was pneumonia, malnutrition, and dehydration in the context of neglected schizophrenia. The manner of death was homicide, due to the failure to render medical and mental health care.

Over several weeks, Mr. Rupard was confined alone in a cell for 23 hours a day and deteriorated without proper psychiatric or medical care. During this period, a County Licensed Marriage and Family Therapist serving as a Qualified Mental Health Professional saw Mr. Rupard. Despite his obvious decline, she failed to take any steps to have Mr. Rupard referred to the Psychiatric Stabilization Unit ("PSU"). The deputies assigned to Module D saw the condition of Mr. Rupard's cell and chose to do nothing. Deputies were required to observe him every hour. Each time they did, they looked into a cell strewn with trash, uneaten food and smeared with feces, occupied by a man they knew to be severely mentally ill. These conditions were open, obvious and worsening by the day. Yet the deputies never removed Mr. Rupard from the cell, never had it cleaned, and never summoned medical or psychiatric help. Had they taken even the most basic step of addressing the abhorrent conditions of his cell, such as removing him so it could be cleaned, they would have been alerted to his dire condition and referred him for medical care that could have saved his life. Instead, they deliberately ignored the conditions in front of them.

The day before Mr. Rupard, another inmate, Mr. Schuck, died in the same module also as a result of deliberate indifference and absence of medical care. In the wake of Mr. Schuck's death, a jail lieutenant ordered the cleaning of several cells on the floor, but Mr. Rupard's cell was never cleaned. There, amid trash and filth, Lonnie Rupard became the second person to die in that module in two days. On February 3, 2022, exactly six weeks before Mr. Rupard's death, the California State Auditor issued a report on the deaths in San Diego County jails. The report identified many failures of jail policy and practice, including (1) insufficient mental health evaluations at intake; (2) inconsistent follow up care; (3) inadequate safety checks; and (4) unnecessary delays in performing life-saving measures. Six weeks later, Lonnie Rupard was dead, largely as a result of the failure of the SDSO to remedy these failures in any way.

After years of litigation, the County desires to file motions for summary judgment. The County Defendants will move for summary judgment and ask the Court to seal 80 exhibits it says it will file in support of those motions. These exhibits document the extent of Mr. Rupard's neglect and how he died. Because the exhibits will be offered in support of a dispositive motion, the County Defendants must articulate compelling reasons, supported by specific factual findings, that outweigh the strong presumption in favor of public access. They have not met that burden. The death of a mentally ill man due to malnutrition, dehydration and neglect inside a county jail is a matter of great public concern. The public has a right to know how and why Lonnie Rupard was allowed to die in such horrendous conditions, particularly in a jail system who had been warned of its failures by the State Auditor six weeks earlier. Generalized assertions of confidentiality or embarrassment to the County Defendants do not constitute compelling reasons.

Moreover, many of the documents the County Defendants seek to seal implicate the privacy interests or privileges of Mr. Rupard and his Estate, not those of the County Defendants. The Estate waives those interests for purposes of this action. The County Defendants cannot invoke privacy interests that are not theirs to assert to hide their own conduct from public scrutiny. The County Defendants have not shown compelling

reasons to seal any of the 80 exhibits, the majority of which document the conditions of Mr. Rupard's confinement and the circumstances of his death. Accordingly, the County Defendants' motion to seal should be denied.

## II. LEGAL STANDARD

As this Court has expressly provided in its Chamber Rules, "Court records should be sealed to keep confidential only what must be kept secret, temporarily or permanently, as the situation requires." See S.D. Cal. Chambers Rules of Hon. Cathy Ann Bencivengo, § V (current). There is a strong presumption of the public access to dispositive pleadings, including the motions for summary judgment and related attachments. If a court decides to seal a judicial record, "it must 'base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture.'" *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (internal citations omitted). Compelling reasons sufficient to seal court records "exists when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* at 1179. As the Ninth Circuit has noted, the "mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." (*Id.*)

## III. ARGUMENT

### A. The Requested Relief Is Not Narrowly Tailored. It Is a Wholesale Sealing of the Summary Judgment Record.

The County Defendants describe their request as "narrowly tailored" and claim that their motion will remain publicly accessible (ECF No. 308, p. 9) yet ask the Court to seal **80 exhibits, 60 of them in their entirety.** These exhibits include Lonnie Rupard's medical records, cell check and sanitation check logs, incident reports reflecting Mr. Rupard's placement into segregation, the homicide investigation, the Medical Examiner's Report and the jail's own mortality review of Mr. Rupard's death. Together, these exhibits form the core evidence of what care Mr. Rupard did or did not receive in Defendants' custody. County Defendants claim that public access is preserved because

they will redact only "discrete confidential information quoted from the sealed exhibits" and will otherwise describe the evidence in their brief. (*Id.*) That proposal defeats itself. If the information is genuinely confidential, Defendants cannot avoid sealing it by paraphrasing rather than quoting. The resulting public filing will be heavily redacted, with its legal arguments intact but its factual basis largely concealed. Paired with hundreds of pages of fully sealed exhibits, the filing will tell the public nothing about what happened to Mr. Rupard. The public would be asked to accept the outcome of a dispositive motion without ever seeing the evidence on which it turns in a case about how a mentally ill man was treated while in the County's custody. If, on the other hand, Defendants can publicly describe what these records contain, the information is not confidential and there is no reason to seal the underlying records. Any legitimate privacy concerns, such as Social Security numbers or sensitive information about non-parties and personal identifying information, can be addressed through targeted redactions. The County cannot justify placing the facts of Mr. Rupard's case beyond public view.

### B. The Estate Waives Any Privacy Interest in Mr. Rupard's Medical, Mental Health and Psychiatric Records.

The privacy interest and any claim to privilege in Mr. Rupard's medical, psychiatric and competency records does not belong to the County Defendants. It survived Mr. Rupard and now rests with those who stand in his place. As the Ninth Circuit has explained, the privacy interests surrounding a deceased person "belongs, not to the deceased, but to the survivors," and "exists for the benefit of the living, to protect their feelings, and to prevent a violation of their own rights in the character and memory of the deceased." *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1153 n.1 (9th Cir. 2012).

In *Estate of Esche v. Renown Regional Medical Center,* defendants moved to seal a deceased plaintiff's heath records filed with their summary judgment motions, arguing that the decedent retained a strong privacy interest in the records. No. 3:21-cv-00520-MMD-CLB, 2024 WL 4168618 at *3 (D. Nev. Sept. 12, 2024). The district court disagreed and, relying on *Marsh*, held that the rights at issue belonged to the decedent, that the special administrator of decedent's estate could waive them, and that because

the administrator had done so, nothing justified sealing. (*Id.*) The court denied the motions and ordered the records unsealed. (*Id.*)

The same result follows here. The interest the County invokes is the Estate's alone to assert or waive. The Estate waives it for purposes of this action. Mr. Rupard's medical and psychiatric condition, and the care he received for it, are the subject of the lawsuit and the Estate wants the records documenting them be filed publicly. Defendants cannot assert a privacy interest that is not theirs. Once the party who holds it has waived it, there is no cognizable privacy interest left for the Court to protect.[1]

Defendant's insistence on sealing these records suggests that their concern lies elsewhere. Read candidly, the request appears less aimed at protecting Mr. Rupard, who died of neglect at the hands of the Sheriff's Office, than in protecting the County from what these records reveal about the abysmal lack of care he received while in its custody. A desire to avoid embarrassment, however, is not a compelling reason to seal. Records that may reflect unfavorably on the party seeking to seal them do not constitute a reason for secrecy. The Court should deny Defendants' request to seal Mr. Rupard's medical, mental health, psychiatric and competency records.

### C. The Estate's Waiver and the Public Status of Investigative Records Under California Law Defeat Any Basis for Sealing the Medical Examiner, Autopsy Report and Autopsy Photos, Jail and Investigative Records.

Defendants acknowledge that the privacy interest in death and autopsy information belongs to Mr. Rupard's surviving family members. (ECF No. 308, p. 7.) As with his medical and psychiatric records, Plaintiff holds that interest and waives it for purposes of this action. The same is true of JIMS records and classification documents concerning Mr. Rupard. Any privacy interest in these records belongs to those who stand in Mr. Rupard's place, not to the Defendants, and once waived, it cannot supply a compelling reason to seal.

---

[1] The overwhelming majority of the records cited by the County Defendants concern Mr. Rupard's own treatment and medical history. To the extent certain documents reference other inmates, for example COSD006417-6422, any privacy interest of those third parties can be protected through limited redaction of identifying information, not wholesale sealing of the entire document.

Defendants fold into this category the homicide investigation file and the Internal Affairs file relating to Mr. Rupard's death. To the extent they rely on Mr. Rupard's privacy as a basis for sealing, that interest is waived. These records further stand on an independent footing because California law makes them presumptively public. Under Penal Code § 832.10, "any record relating to an investigation conduct by the local detention facility involving a death incident maintained by a local detention facility shall not be confidential and shall be made available for public inspection pursuant to the California Public Records Act." Cal. Penal Code § 832.10(b). "Death incident" is defined as "an event where a person has died in the custody or supervision of the local detention facility." Cal. Penal Code § 832.10(a)(1). These records made public by state law should not be suddenly concealed from the public because Defendants chose to label them as "confidential" to avoid exposure of their conduct on this case.

Disclosable records "shall include all investigative reports, photographic, audio, and video evidence, transcripts or recordings of interviews; autopsy reports; all materials compiled and presented for review to the district attorney or to any person or body charged with determining whether to file criminal charges against a person, whether the person's action was consistent with law and agency policy for purposes of discipline or administrative action, or what discipline to impose or corrective action to take; documents setting forth findings or recommended findings; and copies of disciplinary records relating to the death incident. . . and letters indicating final imposition of discipline or other documentation reflecting implementation of corrective action. Cal. Penal Code § 832.10(c)(1).

The Sheriff's Office has already posted redacted versions of the homicide investigation file and autopsy report on its public website: https://sb519-sdsheriff.govqa.us/WEBAPP/_rs/(S(zcyjuf4rrbr2kcivuter5chw))/RequestArchiveDetails.aspx?rid=40949&view=38, as required by Penal Code Section 832.10.

While Plaintiff objects to the extent of those redactions, the County cannot credibly claim compelling reasons require sealing, in their entirety, documents it has

already been forced by state law to make available to anyone with an internet connection.

**D. The County Defendants Fail to Demonstrate Compelling Reasons to Seal Training Records or Jail Operational Materials.**

The County fails to offer compelling reasons to seal the staffing and deployment sheets, area activity logs, safety check green sheets, and mental health master staffing plan. Instead, it offers only a generic, one line invocation of "safety and security" that could be attached to virtually any document generated inside a jail. It fails to identify what information in which document is sensitive, how it could be misused, and offers no explanation, let alone any compelling reason, of why historical staffing logs and documents reflecting counts and safety checks would pose any safety and security risk today.

The County's argument refutes its claim these documents should be confidential. It concedes that facts drawn from these records will appear in its publicly filed motion. (ECF No. 308, p. 8.) Either that information is too dangerous to disclose, in which case the County could not put it in its public brief, or it is not, in which case there is nothing left to protect. The County cannot publicly summarize evidence in the light most favorable to itself while shielding the underlying documents from scrutiny.

Moreover, the Sheriff's Department has already published substantially similar area activity logs on the public records section of its website in response to a Public Records Act request: https://sb519-sdsheriff.govqa.us/WEBAPP/_rs/(S(zcyjuf4rrbr2kcivuter5chw))/RequestArchiveDetails.aspx?rid=40949&view=38

## IV. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court deny the County Defendants' motion to seal. The County has designated documents as confidential in blanket fashion, including Superior Court records, which are open to the public, the decedent's medical records in which the County has no privacy interest, training records which show the courses Defendants and County employees have taken as law enforcement officials, exhibits to depositions as to which the County makes no

showing whatsoever of a reason to seal, and an autopsy report which is largely publicly available on the Sheriff's own website. Defendants have not even attempted to make a showing as to most exhibits they list to justify sealing. They have made no showing of a factually based compelling reason to justify sealing any exhibit. The motion should be denied in its entirety.

Respectfully submitted,

**IREDALE & YOO, APC**

Dated: November 10, 2026

/s/ Eugene Iredale
Eugene Iredale
Julia Yoo
Sarah Musumeci
Attorneys for Plaintiff Estate of Lonnie Rupard