Corey E. Krueger, Esq. (SBN 244989)
ckrueger@burgermeyer.com
**BURGER, MEYER & D'ANGELO, LLP**
999 Corporate Drive, Suite 225
Ladera Ranch, California 92694
Telephone: (949) 427-1888
Fax: (949) 427-1889

Attorneys for Defendants, Anthony Cruz, D.O. and Liberty Healthcare of California, Inc.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ESTATE OF LONNIE RUPARD, THROUGH ITS COURT-APPOINTED ADMINISTRATOR TERRI LOPEZ;<br><br>Plaintiffs.<br><br>v.<br><br>COUNTY OF SAN DIEGO; et al.<br><br>Defendants. | Case No. 3:23-cv-01357-CAB-JAC<br>Assigned for All Purposes:<br>Judge: Hon. Cathy Ann Bencivengo<br>Magistrate Judge: Janet A. Cabral<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE OR LIMIT CERTAIN EXPERT OPINIONS (FED. R. EVID. 702; *DAUBERT*)**<br><br>Hearing Date: None set; to be set by the Court if needed (Doc. No. 305)<br><br>Action filed: July 26, 2023<br>Trial Date: March 8, 2027 |

# TABLE OF CONTENTS

I. INTRODUCTION .......... 4
II. LEGAL STANDARD .......... 4
III. ARGUMENT .......... 5
A. Dr. Beckson's Causation and Life-Expectancy Opinions Should Be Excluded. 5
B. Mr. Cappitelli's Opinions Allocating Psychiatric Responsibility Should Be Excluded. .......... 7
C. Nurse Wild's Opinions Regarding Dr. Cruz (Opinion Nos. 3 and 4) Should Be Excluded. .......... 8
D. Dr. Tyler's Opinions Criticizing Dr. Cruz Should Be Excluded. .......... 9
E. Dr. Venters's Psychiatric Standard-of-Care Opinions Should Be Excluded. .......... 9
F. Dr. Glindmeyer's Causation Opinions Should Be Excluded. .......... 10
IV. CONCLUSION .......... 11

# TABLE OF AUTHORITIES

## Cases

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ........................ 3

*Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) ............. 5

*Engilis v. Monsanto Co.*, 151 F.4th 1040, 1053 (9th Cir. 2025) ................................ 5

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) .................................................... 5

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) ......................................... 5

*Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996) ........................ 5

*Murray v. S. Route Mar. SA*, 870 F.3d 915, 924 (9th Cir. 2017) ................................ 5

*United States v. Valencia-Lopez*, 971 F.3d 891, 897–901 (9th Cir. 2020) ................. 5

## Rules

Fed. R. Evid. 403 ......................................................................................................... 5

Federal Rule of Evidence 702 ........................................................................................ 4

## I. INTRODUCTION

Defendants Anthony Cruz, D.O. ("Dr. Cruz") and Liberty Healthcare of California, Inc. ("Liberty") move under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), to exclude or limit discrete opinions offered by six experts. The challenged opinions share a common defect: each strays beyond the witness' qualifications, the facts the witness reviewed, or what a reliable methodology can support.

Four of the challenged witnesses are the County's experts. To defend County personnel, each re-directs responsibility for Mr. Rupard's psychiatric care to Dr. Cruz—while simultaneously disclaiming, under oath, any qualification or intention to opine on the psychiatric standard of care. The County's psychiatrist (Dr. Beckson) offers a causation opinion he admits lies outside his expertise and a life expectancy opinion his own report says cannot be made. The County's custody expert (Mr. Cappitelli), nursing expert (Nurse Wild), and psychologist (Dr. Tyler) each opine on physician-level psychiatric decisions they concede are outside their fields.

The two remaining witnesses are Plaintiff's experts. Dr. Venters, an internist who has never practiced psychiatry and professes no knowledge of California involuntary treatment law, nonetheless opines that Dr. Cruz's psychiatric care fell below the standard of care. Dr. Glindmeyer, a psychiatrist, offers a causation opinion that rests on speculation and concededly cannot bridge the gap between Dr. Cruz's February treatment decisions and Mr. Rupard's March death.

Each challenged opinion fails Rule 702(a), (b), and/or (d), and each should independently be excluded under Rule 403. Defendants do not seek to exclude these witnesses entirely—only the specific, unsupported opinions identified below.

## II. LEGAL STANDARD

Rule 702 permits expert opinion testimony only where "the proponent demonstrates to the court that it is more likely than not" that:

(a) the expert's scientific, technical, or other specialized knowledge will

> help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent bears the burden of establishing admissibility. *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996); *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) (*Daubert II*). The trial court serves as a gatekeeper to ensure expert testimony "is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. That role applies to all expert testimony, *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999), and exists to ensure the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

The reliability inquiry is flexible, *Murray v. S. Route Mar. SA*, 870 F.3d 915, 924 (9th Cir. 2017), but flexibility does not excuse a proponent from showing a reliable basis for the specific opinion offered; an expert may not simply assert a conclusion the record does not support. *See United States v. Valencia-Lopez*, 971 F.3d 891, 897–901 (9th Cir. 2020) (abuse of discretion to admit expert testimony where the witness did not explain his methodology beyond reciting his qualifications); *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1053 (9th Cir. 2025). A court need not credit an opinion "connected to existing data only by the *ipse dixit* of the expert," and "may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Even relevant expert testimony may be excluded under Rule 403 where its probative value is substantially outweighed by the danger of unfair prejudice or confusion. Fed. R. Evid. 403.

## III. ARGUMENT

### *A. Dr. Beckson's Causation and Life-Expectancy Opinions Should Be*

***Excluded.***

Dr. Beckson, the County's psychiatric expert, offers five opinions; Defendants move to exclude two: that Dr. Cruz's alleged breach "substantially contributed" to Mr. Rupard's death, and that Mr. Rupard "likely would have had a substantially reduced life expectancy." (Krueger Decl. Ex. 1 at 3–4.)

The causation opinion lies outside Dr. Beckson's expertise. His report states, "As a psychiatry expert, I defer to the medical and pathology experts regarding cause of death." (Ex. 1 at 15.) He confirmed this at deposition, agreeing he is not a forensic pathologist and did not participate in the autopsy (Ex. 2 at 72:17–25), and that he defers "entirely to the pathologist's findings, not [his] own" (id. at 73:1–5). He conceded there is "at least one other cause" of death beyond anything attributed to Dr. Cruz. (Id. at 73:12–16.)

Dr. Beckson also cannot reconcile his opinion with the other medical experts. The County's own forensic pathologist, Dr. Hiserodt, disputes at least three of the medical examiner's four contributing conditions, and Dr. Beckson admitted he lacks the pathology training to reconcile that dispute. (Ex. 2 at 78:23–81:2.) He likewise had no basis to dispute the findings of Liberty and Cruz's retained gastroenterologist, Dr. Bedford (id. at 81:3–85:7, never reviewed Dr. Bedford's report (id. at 85:8–15), and has no gastroenterology, nutrition, or malnutrition expertise (id. at 81:17–23; 84:11–15).

Finally, the mechanism Dr. Beckson offers is untethered to the facts. Asked for the "medical mechanism by which" antipsychotic medication would have prevented aspiration pneumonia, he speculated that Mr. Rupard "would have become progressively more functional" (Ex. 2 at 87:1–14), citing only his general experience and records rather than any methodology connecting antipsychotic treatment to the prevention of pneumonia (id. at 87:15–18). That is the "analytical gap" *Joiner* forbids. The causation opinion fails Rule 702(a), (b), and (d).

The life expectancy opinion fails for a related reason. Dr. Beckson is neither a

forensic pathologist nor an actuary (Ex. 2 at 103:9–11), and his report concedes that "an average life expectancy for a large group or populations is not a prediction how long an individual will live" (Ex. 1 at 19). He identified no study addressing Mr. Rupard's particular combination of disorders (Ex. 2 at 103:20–24) and performed no individualized actuarial assessment, drawing his opinion "entirely from group statistics" (id. at 103:25–104:5). Population-level averages cannot support an individualized prediction; the opinion fails Rule 702(b) and (d) and should be excluded under Rule 403 as inviting the jury to treat a statistical artifact as a measure of Mr. Rupard's lost years.

***B. Mr. Cappitelli's Opinions Allocating Psychiatric Responsibility Should Be Excluded.***

Mr. Cappitelli is the County's custody expert, and his report confines his opinions to "the standards of care for jail custodial officers/administrators, not mental health clinicians or medical staff." (Ex. 3 at 4.) Yet he opines that "continued monitoring of medical and mental health is the responsibility of the psychiatric and medical staff, not the custody security staff" (id. at 7), and that the "focus…must be directed towards psychiatric care staff," branding contrary suggestions "obfuscated deflection" (id. at 9).

At deposition, Mr. Cappitelli disclaimed exactly these opinions. He is not a medical expert and testified the subject is "outside of my expertise" (Ex. 4 at 37:16–24); he is not a psychiatrist (id. at 94:10–13); he did not review the medical aspects of the case because they were "not within my…scope and/or expertise" (id. at 92:4–10); the oversight role of "the medical director or the chief psychiatrist" was "outside of my scope…I really don't want to go too far into this" (id. at 93:22–94:9); he did not review medical documents concerning Dr. Cruz and has "no opinion about his testimony because I'm not a medical expert" (id. at 94:23–95:6); and "as I stated repeatedly, I'm not offering any opinions with respect to Dr. Cruz" (id. at 101:22–102:2).

An opinion allocating responsibility for psychiatric care is, by definition, an opinion on the psychiatric standard of care. Mr. Cappitelli lacks the qualifications to offer it (Rule 702(a)), reviewed no facts specific to Dr. Cruz (Rule 702(b)), and disavowed it under oath—so the County cannot carry its burden. *See Lust*, 89 F.3d at 598. Rule 403 independently bars a custody expert from telling the jury that the defense is "obfuscated deflection" on a subject he concedes is beyond his expertise.

***C. Nurse Wild's Opinions Regarding Dr. Cruz (Opinion Nos. 3 and 4) Should Be Excluded.***

Nurse Wild is the County's correctional-nursing expert. Her report is "limited to the conduct of the Sheriff's Department nursing staff and County QMHPs," and she "ha[s] not been retained to render opinions regarding the psychiatric standard of care applicable to Dr. Anthony Cruz or Liberty Healthcare psychiatrists." (Ex. 5 at 9.) Despite that limitation, Opinion No. 4 states that Dr. Cruz was "responsible for developing Mr. Rupard's psychiatric treatment plan," "determined whether Mr. Rupard met criteria for Psychiatric Stabilization Unit placement," and "remained responsible for determining whether involuntary psychiatric treatment…was indicated." (Ex. 5 at 12.) Opinion No. 3 similarly assigns "physician-level psychiatric decisions" to Dr. Cruz (id. at 12) and opines that they "require physician-level psychiatric judgment" (id. at 10).

Nurse Wild is not qualified to render these opinions. She has never been a QMHP, holds no mental-health license or certification, has never been LPS-designated or 5150-certified, and is not a physician or psychiatrist. (Ex. 6 at 7:16–25; 113:10–11.) She testified that Dr. Cruz's "clinical decision-making…[is] outside my scope" and that she did not intend to offer opinions as to Dr. Cruz. (Id. at 112:4–9; 113:25–114:5.) Assessing PSU and involuntary-treatment criteria is the very "physician-level psychiatric judgment" she disclaims.

Nor can Nurse Wild rely on Dr. Cruz's conduct while disclaiming any ability to assess it. She excused the absence of County QMHP contact by counting Dr. Cruz's

February 22 visit as a satisfied QMHP check because he "is a QMHP" (Ex. 5 at 8; Ex. 6 at 64:13–17; 72:11–17)—necessarily opining that his visit was clinically sufficient. These opinions fail Rule 702(a), (b), and (d) and should be excluded under Rule 403.

***D. Dr. Tyler's Opinions Criticizing Dr. Cruz Should Be Excluded.***

Dr. Tyler is the County's psychologist, retained to defend the County QMHP. She is not a physician or psychiatrist; her practice is family law and workers' compensation evaluation; and she has never worked in a jail. (Ex. 8 at 64:19–20.) She testified that the psychiatric standard of care is outside her expertise and that she did not assess whether Dr. Cruz met the standard of care. (Id. at 68:13–16; 83:8–12.)

Nonetheless, Dr. Tyler's report—which expressly defers the standard of care "to psychiatry experts"—opines in the very next sentence that Dr. Cruz "may have improperly applied criteria for PSU admission and involuntary commitment," and she refused to withdraw that criticism at deposition. (Ex. 7 at 10; Ex. 8 at 68:25–70:10; 86:4–18.) She also opines on Mr. Rupard's capacity—a physician-level judgment—asserting he "was unlikely to understand the consequences of refusing his medication." (Id. at 74:8–18.) A psychologist who disclaims the psychiatric standard of care may not opine on physician-level psychiatric decisions. *See Kumho*, 526 U.S. at 152.

Dr. Tyler's remaining criticism—that Dr. Cruz allowed an office assistant to prioritize his daily patient list (Ex. 8 at 70:16–71:10)—should be excluded under Rules 702 and 403 because she conceded it has no connection to the outcome. Asked whether that criticism "connect[s] to any different outcome for Mr. Rupard," she answered "Correct," it does not. (Id. at 91:5–13.) An opinion that cannot be tied to any issue in the case is irrelevant and unfairly prejudicial.

***E. Dr. Venters's Psychiatric Standard-of-Care Opinions Should Be Excluded.***

Dr. Venters is Plaintiff's correctional medicine expert. He is an internist, not a psychiatrist; he has never practiced psychiatry; and he is licensed only in New York

and has never been employed in a California jail. (Ex. 10 at 23:17–24:12; 72:7–20.) He is unfamiliar with California's involuntary-treatment framework—the LPS Act, sections 5150 and 5250, and *Riese*—and has never initiated a hold. (Id. at 81:20–83:5.) He acknowledged that his "criticisms are based on correctional standards of care, not any California laws." (Id. at 83:15–17; 84:3–6.)

Despite these disclaimers, Dr. Venters opines that Dr. Cruz's psychiatric care fell below the standard of care (Ex. 9)—adopting Dr. Beckson's conclusion (Ex. 10 at 65:19–22; 67:22–68:2), faulting Dr. Cruz's "long trajectory" of care (id. at 54:6–11), deeming his psychiatric assessments inadequate (id. at 106:18–107:2), and opining that he should have escalated Mr. Rupard to a higher level of psychiatric care (id. at 79:1–9). A witness who is not a psychiatrist and professes no knowledge of the governing law is not qualified to opine on the psychiatric standard of care. Fed. R. Evid. 702(a); *Kumho*, 526 U.S. at 152. Defendants do not seek to exclude Dr. Venters's correctional-systems opinions—only his opinions on the psychiatric standard of care applicable to Dr. Cruz.

***F. Dr. Glindmeyer's Causation Opinions Should Be Excluded.***

Dr. Glindmeyer, Plaintiff's psychiatrist, opines that Dr. Cruz's treatment caused or substantially contributed to Mr. Rupard's death. (Ex. 11.) That opinion is not the product of a reliable methodology and cannot bridge the analytical gap *Joiner* forbids. She offers no independent cause-of-death opinion and defers to the Medical Examiner (Ex. 12 at 182:19–23; 254:10–21), and she has no opinion on the relative contribution of the pneumonia, malnutrition, dehydration, COVID-19, emphysema, or ulcer identified at autopsy (id. at 257:4–19).

Her counterfactual—that earlier intervention would have changed the outcome—is admittedly speculative. She could not say a *Riese* petition would have been granted (Ex. 12 at 210:17–20), did not know how long the section 5150-to-involuntary-medication process takes (id. at 210:23–211:3; 213:3–5), and—asked whether a section 5150 hold on February 22 would have changed the outcome—

testified only: "Again, I think we don't know…. My hope would be…. But I don't know." (Id. at 214:8–17.) Elsewhere she testified only that she "would have…hoped" for, or did "not know," what a different course would have produced. (Id. at 87:21–88:3; 113:19–24; 153:16–154:2.) An opinion resting on "hope" is "connected to existing data only by the *ipse dixit* of the expert." *Joiner*, 522 U.S. at 146.

Dr. Glindmeyer's standard of care premises compound the problem. Although she opines that Dr. Cruz should have pursued a section 5150 hold, a *Riese* petition, and PSU placement, she has never been licensed in California, has never written a section 5150 hold, and has never filed a *Riese* petition. (Ex. 12 at 24:10–11; 241:13–23.) And she treats every deviation from NCCHC standards as a per se breach of the standard of care, while conceding that accreditation requires less than full compliance. (Id. at 192:19–196:6.) At a minimum, her causation opinions should be excluded under Rules 702 and 403.

## IV. CONCLUSION

For the foregoing reasons, Defendants Anthony Cruz, D.O. and Liberty Healthcare of California, Inc. respectfully request that the Court exclude or limit the challenged opinions of Dr. Beckson, Mr. Cappitelli, Nurse Wild, Dr. Tyler, Dr. Venters, and Dr. Glindmeyer, as set forth above.

Date: November 13, 2026

**BURGER, MEYER & D'ANGELO, LLP**

Corey E. Krueger
Attorneys for Defendants,
Anthony Cruz, D.O. and Liberty
Healthcare of California, Inc.