# EXHIBIT 5

**Kathryn J. Wild, RN, MPA, CCHP-RN**
**36374 N La Moneda Ln, Queen Creek, AZ 85140**
**Phone: 909-720-0961**

---

# Expert Report

## I. INTRODUCTION

My name is Kathryn J. Wild. My business address is 36374 N La Moneda Ln, Queen Creek, AZ 85140. I was retained on behalf of the County of San Diego to consult in the case of *Estate of Lonnie Rupard, Through its Court-Appointed Administrator Terri Lopez; Justino Rupard Individually; and Ronnie Rupard Individually v County of San Diego; Bill Gore, in his Official Capacity; Kelly Martinez, in her Individual Capacity; Jon Montgomery, DO, in his Individual Capacity; Liberty Healthcare of California, Inc.; Christina Anosike, in her Individual Capacity; Anthony Cruz, MD, in his Individual Capacity; Aguilera M. Viladiu, J. Martinez, G. Amado, J. Mace, T. Aguirre, E. James, T. Romero, B. Johnson, M. Torres, A. Treyvonne, J. Wereski, A. Romans, B. Gutierrez, L. in their Individual Capacities, Defendant Deputies, Does 15-20, Defendant Medical Providers Does 1-10. Case# 3:23-cv-01357-CAB-BLM.*

I have been retained to evaluate the care and treatment provided to Lonnie Rupard by San Diego Sheriff's nursing personnel and QMHP staff while incarcerated at the San Diego Central Jail (SDCJ). My analysis focuses on the reasonableness of the care delivered, adherence to the correctional healthcare standard of care, the policies and procedures followed, and the potential for any indifference to Mr. Rupard's healthcare needs.

I am a licensed registered nurse with a master's degree in public administration and Certified as a Corrections Healthcare Professional - RN by the National Commission on Correctional Healthcare (NCCHC) concerning the delivery of specialized nursing care in correctional facilities. I have worked in the field of Corrections Healthcare for over 40 years as a Registered Nurse, and Health Services Administrator responsible for the administration of healthcare, training and supervision of healthcare employees, as well as the formation and implementation of policy applicable to staff who provide healthcare to persons housed in corrections facilities. My Curriculum Vitae, testimony history, and fee schedule are attached.

I am retained as an expert witness who is knowledgeable and experienced in the provision, training, supervision and monitoring of healthcare administered to prisoners housed in the setting of a correctional facility, including but not limited to the areas of providing direct nursing care in a correctional setting, corrections nursing care, corrections healthcare, corrections healthcare administration, corrections healthcare policy formation and implementation, and the implementation and maintenance of policies and procedures that comply with national corrections standards, including but not limited to those by the NCCHC, the American Corrections Association (ACA), and the Prison Rape Elimination Act (PREA). I have served as an accreditation surveyor for the Institute for Medical Quality (IMQ) providing accreditation surveys in Local Detention Facilities and Juvenile Halls. In addition, I have provided many Local Detention Facilities with on-site preparation for NCCHC and ACA accreditation surveys and am very familiar with the standards for the delivery of healthcare in correctional settings.

| | | |
|---|---|---|
| | | Due to patient's presentation, psychiatric history, legal status, PC1368, and potential for decompensation, will continue to monitor and offer treatment.<br><br>Return to clinic 6-7 weeks, or sooner if needed. |
| | Anthony Cruz, MD<br>Deposition | When asked if he did anything to check on the welfare of Mr. Rupard from January 20th until February 22nd, Dr. Cruz testified (**page 164**) that he relied on the clinicians and deputies to tell him if there had been any decompensation or knowing that he already had a follow up appointment, so he did not feel that he needed to see him sooner, because he had not heard any type of report from the clinicians or deputies saying that Mr. Rupard needed to be seen sooner.<br><br>Dr. Cruz also testified (**page 171**) that the two evaluations he had with Mr. Rupard (12/29/21 & 2/22/22) he did not meet the criteria for a 5150 placement in the PSU. |
| @ 2146 | RN Note<br>Lauren Kreiss, RN<br>COSD 59 | Psych SC noted, no new orders. |
| **Wednesday, February 23, 2022** | | |
| | Sick Calls - QMHP<br>COSD 152 | A QMHP wellness check was scheduled for this date. Mr. Rupard was seen the day prior by Dr. Cruz who is a QMHP. |
| | NCCHC Definitions | A QMHP (qualified mental health professional) is defined to include psychiatrists, psychologists, psychiatric social workers, psychiatric nurses, and other who by their education, credentials, and experience are permitted by law to evaluate and care for the mental health needs of patients. |
| **Friday, March 11, 2022** | | |
| | PCMS Contact<br>Report | The offender's case will be dismissed when he goes to court on 3/18/22. The undersigned reached out to the CTC to make arrangements for his release so he can be linked to MH treatment. |
| **Monday, Monday, March 14, 2022** | | |
| @ 0812 | CLERB Interview<br>Dr. Nicolas Badre<br>COSD 343 | Dr. Badre visited Mr. Rupard in his role as a forensic evaluator. He visited Mr. Rupard to conduct a court-ordered Penal Code 1370 evaluation. The visit occurred while the inmate was in his cell and it was malodorous and unhygienic. Dr. Badre was outside the cell. There was feces outside of the toilet. |
| | Court-Ordered<br>Evaluation for<br>Competency<br>Dr. Nicolas Badre<br>COSD 136-141 | **Findings**: In Dr. Badre's opinion, the defendant suffers from severe mental illness. The defendant lacks the capacity to make decisions regarding antipsychotic medication. The mental disorder requires medical treatment with antipsychotic medication at this time. If the defendant's mental disorder is not treated with antipsychotic medication, it is possible that serious harm to the physical and mental health of the defendant will result. |

| | | |
|---|---|---|
| | This was not received until 3/24/22 after Mr. Rupard's death. | Dr. Badre recommended that the defendant be referred to a state hospital or JBCT program for restoration to competency. |
| **Thursday, March 17, 2022** | | |
| @ 0753 | RN Note<br>L. Mendoza, RN<br>COSD 59 | Medical Coordinator – Pharmacy Liaison Notes: Per email notification by CRP, patient is scheduled to release on 3/19/22 but is pending the outcome from his court hearing on 3/18/22 to Probation/CTC – 3880 Rosecrans St. San Diego, CA 92110 – Has no psych/critical meds. |
| @ 2253 | Mandown Assessment<br>Anil Kumar, RN<br>COSD 67 | Patient found lying on the floor in the supine position, unresponsive to verbal and tactile stimuli. When medical arrived at scene deputies were providing CPR and already called 911. Blood Sugar = 75. Patient moved outside of cell and CPR continued. |
| @ 2309 | ER Referral<br>D. Phelps, RN<br>COSD 65-66 | Mandown, unresponsive, non-breathing, applied AED, no shock advised. Continue CPR. 911 called and referred to UCSD. |
| @ 2351 | UCSD Medical Center<br>Time of Death | Mr. Rupard was pronounced dead by Dr. Allen at UCSD Hospital. |
| **Saturday, March 19, 2022** | | |
| | Autopsy | **Cause of Death**: Pneumonia, Malnutrition, and Dehydration in the setting of neglected Schizophrenia<br>**Contributing**: SARS-COV-2 (COVID-19) Viral Infection; pulmonary emphysema; Duodenal Ulcer |

## IV. DISCUSSION AND OPINIONS

It is my opinion, to a reasonable degree of nursing certainty, that the nursing care and mental health services provided by the San Diego County Sheriff's Department nursing staff and County Qualified Mental Health Providers (QMHPs) to Mr. Lonnie Rupard met the applicable correctional healthcare standard of care. My opinions are based upon my education, training, more than forty years of correctional healthcare experience, and my review of the materials identified in this report.

The opinions expressed herein are limited to the conduct of the Sheriff's Department nursing staff and County QMHPs. I have not been retained to render opinions regarding the psychiatric standard of care applicable to Dr. Anthony Cruz or Liberty Healthcare psychiatrists.

Correctional nurses are responsible for performing nursing assessments, identifying medical and mental health concerns, initiating appropriate referrals, implementing provider orders, administering prescribed medications, documenting refusals, monitoring patients during nursing encounters, communicating significant clinical findings, and documenting their observations. Similarly, County QMHPs are responsible for conducting mental health assessments within their professional scope, documenting clinical observations, obtaining collateral information, assessing for acute safety concerns, making appropriate referrals, and communicating significant mental health findings through the established correctional healthcare system.

Neither correctional nurses nor County QMHPs possess independent authority to diagnose psychiatric illness, prescribe or discontinue psychotropic medications, determine whether an inmate meets the legal criteria for involuntary psychiatric treatment, admit an inmate to the Psychiatric Stabilization Unit (PSU), or independently establish the inmate's psychiatric treatment plan. Those responsibilities require physician-level psychiatric judgment and remained the responsibility of the treating psychiatrist.

The correctional healthcare standard of care requires that the conduct of nurses and County QMHPs be evaluated based upon the information reasonably available to them during the encounters for which they were responsible. It does not require nurses or QMHPs to independently create medical encounters, psychiatric evaluations, housing classifications, or other clinical contacts outside of the established correctional healthcare system. Likewise, the standard of care does not impose responsibility upon nurses or QMHPs for physician-level psychiatric decisions or institutional processes that were outside their authority or control.

## *Opinion No. 1 – Nursing Intake Assessment and Initial Referral*

**The National Commission on Correctional Health Care (NCCHC), Standards for Health Services in Jails, Section J-E-02** – **"Receiving Screening"** states that receiving screening be performed on all inmates on arrival at the intake facility to ensure that emergent and urgent health needs are met. This standard is intended to fulfill four purposes; 1) to identify and meet any urgent health needs of those admitted, 2) to identify and meet any known or easily identifiable health needs that require medical intervention before the health assessment, 3) to identify and isolate any inmates who appear potentially contagious, and (4) to appropriately obtain a medical clearance when necessary.

The **California Administrative Code, Title 15 – Minimum Standards for Local Detention Facilities, Division 1, Chapter 1, Subchapter 4, § 1207. "Medical Receiving Screening"** states that a screening shall be completed in accordance with written procedures and shall include but not be limited to medical and mental health problems, developmental disabilities, and communicable diseases, including, but not limited to, tuberculosis and other airborne diseases. The screening shall be performed by licensed health personnel or trained facility staff.

The nursing care provided at intake met the applicable correctional nursing standard of care.

Upon booking on **Sunday, December 19, 2021**, Registered Nurse Ben Samonte completed the receiving screening, obtained baseline vital signs and weight, documented Mr. Rupard's psychiatric history, completed an appropriate suicide screening, documented the absence of acute medical illness requiring emergency intervention, and appropriately initiated referral for further psychiatric evaluation together with a second-stage nursing evaluation.

Although Mr. Rupard was verbally abusive and uncooperative, the nursing documentation demonstrates that staff appropriately recognized his psychiatric history and initiated the proper referral process. Nurses are not expected to independently diagnose schizophrenia or formulate psychiatric treatment plans during an intake screening. Their responsibility is to recognize

The inability to complete a comprehensive mental health assessment was caused by Mr. Rupard's refusal and inability to cooperate rather than any failure by the County QMHP to perform the assessment. A QMHP cannot manufacture a meaningful psychiatric interview when an inmate refuses to communicate despite repeated reasonable efforts to engage him. Importantly, the County QMHP did not possess independent authority to prescribe psychotropic medications, order involuntary psychiatric treatment, admit Mr. Rupard to the Psychiatric Stabilization Unit, or modify the psychiatrist's treatment plan. Those physician-level psychiatric decisions remained the responsibility of Dr. Cruz.

## ***Opinion No. 4 – Psychiatric Treatment Decisions***

Many of the allegations contained within the Complaint concern psychiatric treatment decisions that were outside the scope of both nursing and County QMHP practice.

The records and Dr. Cruz's deposition establish that he was responsible for developing Mr. Rupard's psychiatric treatment plan. Dr. Cruz independently evaluated Mr. Rupard, prescribed psychotropic medications, later discontinued those medications after reviewing the medication refusals, determined whether Mr. Rupard met criteria for Psychiatric Stabilization Unit placement, and remained responsible for determining whether involuntary psychiatric treatment or additional psychiatric intervention was indicated.

Accordingly, criticisms regarding psychiatric diagnosis, psychotropic medication management, determination of grave disability, involuntary psychiatric treatment, or Psychiatric Stabilization Unit admission should not be attributed to the Sheriff's Department nursing staff or County QMHPs. Nothing in the nursing or QMHP records demonstrates that either discipline possessed authority to override Dr. Cruz's psychiatric treatment decisions.

This allocation of responsibility is consistent with the testimony of Chief Medical Officer Dr. Jon Montgomery, who testified that mental health services operated under separate mental health leadership and that psychiatric treatment decisions remained the responsibility of the treating psychiatrist rather than Sheriff's Department nursing staff.

## ***Opinion No. 5 – January 29, 2022, Nursing Assessment***

Registered Nurse Carrie Romero appropriately responded following the reported use-of-force incident and attempted to assess Mr. Rupard's condition.

Her documentation reflects observable facial injuries while also documenting that Mr. Rupard repeatedly threatened to kill her if she attempted further assessment. Under those circumstances, termination of the examination for personal safety was both reasonable and consistent with accepted correctional nursing practice.

Correctional nurses are not required to place themselves at unreasonable risk of physical harm in order to complete an assessment when an inmate refuses care and threatens violence.

**Kathryn J. Wild, R.N., M.P.A., C.C.H.P.-R.N.**
36374 N La Moneda, Queen Creek, AZ 85140
(909) 720-0961
kwild@usa.net (e-mail)

---

## PROFESSIONAL EXPERIENCE

Kathryn J. Wild — 1993 – Present
*Consultant*

Orange County Health Care Agency — 2010 – 2013
Correctional Health Services, Santa Ana, CA
*Deputy Agency Director*

San Bernardino County Sheriff's Department, San Bernardino, CA — 1995 – 2010
*Health Services Administrator*

Orange County Health Care Agency — 1985 – 1993
Correctional Medical Services, Santa Ana, CA
*Senior Comprehensive Care Nurse*

Saint Joseph Hospital, Orange, CA — 1980 – 1985
*LVN/Registered Nurse – Medical Surgical Unit*

---

## EDUCATION

**Fellow** – California Healthcare Foundation (CHCF) Leadership Fellowship – 2007/2009
**Masters in Public Administration –** National University, San Diego, CA (2005)
**Management Leadership Academy (MLA),** San Bernardino County (1998)
**Bachelor of Science – Health Services Management,** University of La Verne, La Verne, CA (1998)
**Associates Degree in Nursing –** Rancho Santiago College, Santa Ana (1984)

---

## PROFESSIONAL CERTIFICATIONS, AWARDS AND COMMITTEES

- Co-Chair – Medical/Mental Health Workgroup Adult Titles 15 Regulation Revision (Minimum Jail Standards), California Board of State and Community Corrections (January 2016)
- California Healthcare Foundation (CHCF) – Health Care Leadership Program, Cohort VII – 2007/2009 Fellowship
- 2008 Woman of Distinction – Assemblyman Bill Emerson's 4th Annual 63rd District's - Women of Distinction Awards
- 2007 Distinguished Service Award – American Correctional Health Services Association (ACHSA)
- Certified Correctional Healthcare Professional (CCHP) since 1991
- Certified Correctional Healthcare Professional – RN (CCHP-RN) since 2014
- Institute for Medical Quality (IMQ) – Correctional Accreditation Surveyor
- Outstanding Mental Health Advocate Award – The California Coalition for Mental Health - 2003

Revised: June 1, 2026

## PROFESSIONAL AFFILIATIONS

- American Correctional Health Services Association (ACHSA) – Director 2002 - 2004
- California/Nevada Chapter ACHSA – Past President 2003/2004
- Forensic Mental Health Association (FMHA)
- American Correctional Association (ACA)
- American Jail Association (AJA)
- National Commission on Correctional Health Care (NCCHC)
- Academy of Correctional Health Professionals
- Visiting Nurse Association of Inland Counties (VNAIC) – Director 1999 – 2003
- American Correctional Nurses Association (ACNA)

## PRESENTATIONS

| | |
|---|---|
| September 2017 | *"Clinical Management for High Risk Patients in this Litigious Setting"*<br>- California/Nevada Chapter of ACHSA – San Jose, CA |
| January 2015 | *"Correctional Health Care News Round Up"*<br>- Correctional Nurse.net - Podcast |
| October 2013 | *"Managing Nursing Sick Call to Reduce Risk"*<br>- National Commission on Correctional Health Care – Nashville, TN |
| April 2013 | *"10 Ways Correctional Nurses Can End Up in Court"*<br>- National Commission on Correctional Health Care – Denver, CO |
| April 2013 | *"Managing Nursing Sick Call to Reduce Risk"*<br>- Correctional Health Care Webinar – OmniSure Consulting Group |
| October 2012 | *"How to Create and Implement Safe and Effective Nursing Protocols"*<br>- National Commission on Correctional Health Care – Las Vegas |
| March 2009 | *"Nursing Forum – Administrative Issues"*<br>- American Correctional Health Services Association – Orlando, FL |
| April 2008 | *"Medical Issues – Custody and Medical: Working Together"*<br>- American Jail Association – Denver, CO |
| May 2007 | *"Forming a Partnership – Mental Health Courts"*<br>- American Jail Association – Nashville, TN |
| April 2005 | *"Case Management in a Large County Jail"*<br>- National Commission on Correctional Health Care – Las Vegas |
| November 2003 | *"Contemporary Health Care Issues in Corrections"*<br>- California State Sheriff's Association – Sacramento, CA |

---

## PUBLICATIONS/PUBLICATION REVIEW

Enchanted Mountain Press Publications – Textbook Chapter Review: **"Correctional Healthcare Patient Safety Handbook: Reduce Clinical Error, Manage Risk, and Improve Quality",** "Recipient of Care", December 2013

Smith, Sue and Wild, Kathy. **"Best Practices in Nursing Sick Call Management (Part 2)"** CorrectCare, The Magazine of the National Commission on Correctional Health Care. Fall 2013: 12-13, 25.

Smith, Sue and Wild, Kathy. **"Understanding Legal Risk with Sick Call Administration."** A Risk Management Bulletin: Omnisure Risk Management Consulting. Fall 2013

Smith, Sue and Wild, Kathy. **"Best Practices in Nursing Sick Call Management (Part 1)"** CorrectCare, The Magazine of the National Commission on Correctional Health Care. Summer 2013: 12-14.

Hurst, Norm and Wild, Kathy. **"Forming a Partnership for Successful Mental Health Courts."** American Jails. November/December 2007: 23-27.

Hurst, Norm and Wild, Kathy. "**Working Together: Health and Security Side by Side**." The State of Corrections: ACA Annual Conference Proceedings. 2006: 189 – 195.

# Kathryn J. Wild, RN, MPA, CCHP-RN
## Legal Cases – Depositions/Trials
### 2023 - 2026

Trials:

1. May 2025 **John Scalia, individually and as successor-in-interest of Decedent Kimberly Morrissey-Scalia v County of Kern, et al.,** US District Court Eastern District of California, Case # 1:17-CV-01097-LJO-SKO – Attorney Sanjay Schmidt - Plaintiff

2. April 2025 **Javier Tapia v NaphCare, Inc**., United States District Court Western District of Washington at Seattle, Case #2:22-cv-01141-KKE – Attorney Jake Dean – Defense

3. February 2025 **Georgia Eugenia Thomas v Southern Health Partners (SHP)**, United States District Court for the Eastern District of Kentucky Northern Division at Covington, Case # 2:21-cv-012 (WOB-CJS) – Attorney Bradley Fyffe - Defense

4. December 2024 **Shawn R. Porio v City of Tustin, Orange County Fire Authority, County of Orange, et al.** United States District Court Central District of California, Case #8:22-cv-812-CJC-ADS – Attorney Craig Smith - Defense

Depositions:

1. June 2026 **Tony Rogers v Renata Lowery and Wexford Health Sources, INC and Latoya Hughes.** United States District Court Southern District of Illinois, Case #3:23-cv-001936-MAB – Attorney Nick Childress – Defense

2. June 2026 **Babin v John Montgomery (Baxter County),** U.S. District Court Western District of Arkansas Harrison Division, Case #3:24-cv-03057-TLB – Attorney Chris Stevens – Defense

3. March 2026 **Brian Newman, as Independent Administrator of the Estate of Torry Lamont Newman v Smith County, Texas (Turn Key Health Clinics), et al.,** U.S. District Court for the Eastern District of Texas, Tyler Division, Case # 6:24-cv-00144 JCB-JDL – Attorney Sean Snider, Defense

4. October 2025 **I'Esha Shelton Short, spouse of Timothy Short, deceased v St. Charles County, Missouri, et al.,** U.S. District Court for the Eastern District of Missouri Eastern Division, Case #4:22-cv-001117-SEP – Attorney Wes Smith, Defense

5. September 2025 **Eric Bernard, A/K/A Terrell King v Illinois Department of Corrections, and Wexford Health Sources, Inc**., U.S. District Court Northern District of Illinois, Case #20-cv-5368 – Attorney Joe Lombardo – Defense

6. September 2025 **Eric Bernard, A/K/A Terrell King v Illinois Department of Corrections, and Wexford Health Sources, Inc**., U.S. District Court Northern District of Illinois, Case #20-cv-50413 – Attorney Stephen Gorski – Defense

7. August 2025 **Amy Hernandez, as Administrator of the Estate of Alex Alvarez, deceased v Wexford Health Sources, Inc., et al**., U.S. District Court Southern District of Illinois, Case #3:22-cv-566 NJE – Attorney Rodney Sharp – Defense

8. August 2025 **Kizzie Simms, as Special Administrator of the Estate of Gregory Neil Davis, deceased v Board of County Commissioners for Oklahoma County, et al.,** U.S District Court for the Western District of Oklahoma, Case #CIV-23-780-R – Attorney Tate Roush – Defense

9. May 2025 **Susan Ann Smith, as successor in interest to Decedent Sean Conroy v County of Orange, et al.,** U.S. District Court for the Central District of California, Case #: 8:23-cv-02426-DOC-KES – Attorney Nicholas Colletti – Defense

10. March 2025 **Schomer v Elko County, et al**., U.S. District Court District of Nevada, Case #2:23-cv-00390-ART-CSD, Attorney William Schuller – Plaintiff

11. January 2025 **The Estate of Jane Carhuff v City of Puyallup, et al**., Superior Court of the State of Washington in and for the County of Pierce, Case #: 23-2-04148-3, Attorney Thomas Balerud – Plaintiff

12. October 4, 2024 **Mikeco Desir, O/B/O Kevin Desir, Deceased v Sheriff Gregory Tony, et al.** United States District Court – Southern District of Florida, Case #0:23-cv-60499-AHS – Attorney Jeffrey Lawley – Defense

13. May 2024 **Javier Tapia v NaphCare, Inc**., United States District Court Western District of Washington at Seattle, Case #2:22-cv-01141-KKE – Attorney Jake Dean – Defense

14. March 2024 **Ashley Myers, individually and as Co-Personal Representative of the Estate of Lorri Gayle Tedder, Courtney Vaughn, individually and as Co-Personal Representative of the Estate of Lorri Gayle Tedder v Board of County Commissioners of Rogers County, et. al.,** United States District Court for the Northern District of Oklahoma, Case #22-cv-00119-TCK-JFJ – Attorney Anthony Winter - Defense

15. March 2024 **Cassandra Oliver v South Central Correctional Center (SCCC), et al.,** United States District Court Western District of Missouri Southern Division, Case #6:21-cv-03226-MDH - Attorney Tad Eckenrode – Defense

16. September 2023 **James Bingham v Jefferson County, Iowa, and Jefferson County Health Center, Iowa District Court for Jefferson County**, Case #LALA004446, James Palmer – Defense

17. September 2023 **Dontel Deon Crowder v McLean County, et al.** In the Eleventh Judicial Circuit of Illinois McLean County, Illinois, Case #: 2020L0000173, Carrie Haas – Defense

18. June 2023 **Gaven Picciano v Clark County, et al.** U.S. District Court Western District of Washington at Tacoma, # 3:20-cv-06106-DGE – Mason Ji - Defense

19. February 2023 **Georgia Eugenia Thomas v Southern Health Partners, INC,** U.S. District Court Eastern District of Kentucky Northern Division at Covington, # 2:21-cv-00012-WOB-CJS – Bradley Fyffe - Defense

20. January 2023 **Michelle L. Puki, as Personal Representative of the Estate of Lori Langton v Okanogan County, et al.**, U.S. District Court Eastern District of Washington at Spokane, # 2:20-cv-00411-SMJ - Alexander Dietz - Plaintiff

**Kathryn J. Wild, RN, MPA, CCHP-RN**
**36374 N La Moneda, Queen Creek, AZ 85140**
**Phone: 909-720-0961**
**kwild@usa.net**

---

# Fee Schedule 2026

## Professional Services – Kathryn J. Wild, RN, MPA, CCHP-RN

| Service | Fee | |
|---|---|---|
| Retainer – Initial Review of Discovery | $ 4,500.00 | Non-Refundable |
| Conference calls, meetings, site visits, report development, document review | $ 450.00 | Per hour |
| Deposition | $ 500.00 | Per hour (Minimum of 2 hours) |
| Trial Daily Rate | $ 3,500.00 | Daily Rate |
| Travel Time | $ 200.00 | Per hour of travel |
| Travel Expenses (airfare, transportation, lodging, meals) | | Actual cost |
| Travel Expenses (mileage) | $.56 per mile | As applicable |
| Incidental Expenses (postage, etc.) | | Actual cost |