# EXHIBIT 8

# Deposition Transcript

Case Number: 23CV1357 CAB BLM
Date: September 28, 2026

In the matter of:

## ESTATE OF LONNIE RUPARD, et al. v COUNTY OF SAN DIEGO, et al.

# KRISTINA L. TYLER, Ph.D.

CERTIFIED COPY

Reported by:
Binnie Denise Purser

Steno
Agency, Inc.

315 West 9th Street
Suite 807
Los Angeles, CA 90015
concierge@steno.com
(888) 707-8366
NV: Firm #108F

at "Clinic Reason," and you see that there it is checked, "Wellness Check"?

A. I do see that.

Q. "Encounter Setting," it is checked "Semi-Confidential," which I believe you referred to in your report as well?

A. Yes.

Q. You see where it says "Housing Confinement"?

A. I do.

Q. There are five separate things that can be checked to show the housing assignment of the incarcerated person who is being treated.

One is "Mainline." Do you know what mainline is?

A. They're in main -- main housing.

Q. Yes.

A. General housing.

Q. Have you ever worked in a jail?

A. I have not worked in a jail, no.

Q. Have you ever treated anybody at the jail?

A. Yes.

Q. How many times?

A. Treated and evaluated, 10 to 15 times.

she saw him on the 9th of February would have been the 23rd --

A. The 23rd.

Q. -- of February?

A. Um-hum.

Q. And from your review of the medical records, after that encounter on the 22nd of February with Dr. Cruz, was there any assessment or treatment by any psychiatrist or psychologist preceding the death of Mr. Rupard on the date of the 17th of March, St. Patrick's Day?

A. Treatment, no.

Q. Now, did you assess the conduct of Dr. Cruz and whether it met the standard of care as part of your evaluation in this case?

A. No.

Q. Let me, if I could, refer you to your report, and it is going to be under "Other Opinions," the sixth bullet point, beginning "February 22nd, 2022 was the last time Mr. Rupard was evaluated by psychiatry staff."

Let me give you a moment and ask if you can locate that in your report.

A. I have it.

Q. You write, "February 22nd, 2022 was the

last time Mr. Rupard was evaluated by psychiatry staff. Dr. Cruz was aware of the competency evaluation, as he noted it. However, he did not place Mr. Rupard in the PSU at that time. Whether or not Dr. Cruz followed procedures or was within the standard of care will be deferred to psychiatry experts. However, given his deposition, he may have improperly applied criteria for PSU admission and involuntary commitment criteria." And then you have the reference in parenthesis, "(Cruz deposition)."

Is that your opinion today?

A. Yes.

MR. MURPHY: Object to the foundation.

BY MR. IREDALE:

Q. Well, this is what you wrote, correct?

A. Yes.

Q. And you wrote it after you reviewed the materials that you specifically noted, which included the deposition of Dr. Cruz, yes?

A. Yes.

Q. And that was your opinion as stated in the report; is that true?

A. It is.

Q. And you wrote this report yourself?
A. Correct.
Q. Nobody broke in and fiddled with your computer and inserted that? I just want to make sure we have the foundation here. Nobody inserted that against your will, right?
A. That's correct.
Q. And you told me that this remains your opinion today; is that true?
A. Yes.
Q. Let me, if I could, go to the bullet point that is beginning "Dr. Cruz testified in deposition," which is on the same page.
Tell me if you have it, please.
A. Yes.
Q. This says, "Dr. Cruz testified in deposition that he allowed his office assistant to choose the priority of his daily list. A priority list is the responsibility of the trained and licensed person, not an untrained and unlicensed office assistant."
That is what you wrote and that was your opinion as stated in the report. Does it remain your opinion today?
A. It does.

Q. "In this case, it would be the psychiatrist who is responsible for making the decisions about priority cases. Based on the responsibility of any licensed person, deferring the decision of patient priority and triage of necessity to an unlicensed individual is below the standard of care."

That is what you wrote. That was your opinion then. Does it remain your opinion today?

A. It does.

Q. By the way, is a marriage and family counselor, marriage and family therapist, a licensed person, licensed to practice in California?

A. Yes.

Q. And so for any licensed person, the decision about priority -- about patient priority and triage of necessity to an unlicensed individual, you would say, is below the standard of care; is that fair?

A. It is.

MR. IREDALE: All right. Why don't we take a five-minute break now and resume at noon. And I think I can complete my part by 12:30.

THE WITNESS: All right.

Q. Yes. It is under "Opinions," the sub is "History," and then there is a set of bullet points, and the particular bullet point begins, "From December 29, 2021 to January 20, 2022."
A. I have that.
Q. Let me read what you wrote and then I have a question.
It says Mr. -- during that time, quote, "Mr. Rupard refused his medications that had been prescribed to treat his schizophrenia and psychosis. The medications were refused 33 times. He also refused to sign the Medication Refusal form which states that he understands the consequences. Based on the above, Mr. Rupard was unlikely to understand the consequences of refusing his medication." Let me stop right there.
That remains your opinion today?
A. It does.
Q. Then the next bullet point continues. It says, quote, "Medication was discontinued by Dr. Cruz on January 20, 2022 (after two separate staff requested a chart review) without a face-to-face appointment with Mr. Rupard. Mr. Rupard had not been seen by Dr. Cruz or any other psychiatrist between the time of Dr. Cruz's

A. Aggregate.

Q. Okay. Your report states, and I am going to quote it exactly, "Whether or not Dr. Cruz followed procedures or was within the standard of care will be deferred to psychiatry experts."

Did I read that correctly at page 11?

A. You did.

Q. Whether Dr. Cruz met the psychiatric standard of care is outside your expertise on what you are offering opinions on in this case; is that true?

A. It is.

Q. And the very next sentence of your report states, again, I am quoting it, "However, given his deposition, he may have improperly applied criteria for PSU admission and involuntary commitment criteria."

Did I read that correctly?

A. You did.

Q. Applying criteria for a PSU admission and involuntary commitment is a clinical psychiatric judgment call, isn't it?

A. It is a clinical judgment call, not just for psychiatrists. I worked in doing exactly that, training psychiatrists and making 5150 calls

you are willing to go?

A. "May have" is as far as I am willing to go with the information I have currently.

Q. Okay. Dr. Tyler, would you agree to withdraw that sentence or limit it to say only that you defer the question entirely to the psychiatric experts, consistent with the rest of your report?

MR. IREDALE: I am going to object. I think that is more in the nature of improper negotiation as opposed to inquiry. So I object to the form of the question.

MR. COLLETTI: Join.

THE WITNESS: So the answer is no. I am giving a clinical opinion for a clinical decision, based on the information that I read. Certainly, psychiatry experts may also weigh in. 'But this is an opinion that I am qualified to give.

BY MR. MURPHY:

Q. Okay. And consistent with what standard, Doctor?

A. The 5150 standards in the state and my certification for five years of training and writing 5150s, training others, including psychiatrists, to be able to evaluate for 5150, and

patient list -- and by "his," I mean Dr. Cruz -- would have caused Dr. Cruz to see Mr. Rupard on a different date than February 22nd, 2022, do you?
A. I am not, no.
Q. You likewise don't offer any opinion that it would have changed anything Dr. Cruz observed, documented or decided at that February 22nd visit, do you?
A. I don't. Or that's correct.
Q. So even taking your criticism at face value, you can't connect it to any different outcome for Mr. Rupard in this case; is that true?
A. Correct.
Q. And, Doctor, I think in reading your reports at -- your report at page 9 and 11, your opinion is that the decision to admit an inmate to the PSU is reserved to a psychiatrist. Am I correct in the understanding of your report as to that point?
A. Procedurally, yes.
Q. Okay. And why the qualification as to "procedurally"?
A. Because QMHP staff can assess and note that there may need to be an admission. It is the psychiatrist who has the authority to do that.

CERTIFICATE OF REPORTER
STATE OF SOUTH CAROLINA
COUNTY OF HORRY

I, Binnie Denise Purser, Registered Diplomate Reporter, Certified Realtime Reporter and Notary Public for the State of South Carolina at Large, do hereby certify that the witness in the foregoing deposition was by me duly sworn to testify to the truth, the whole truth and nothing but the truth in the within-entitled cause; that said deposition was taken at the time and location therein stated; that the testimony of the witness and all objections made at the time of the examination were recorded stenographically by me and were thereafter transcribed by computer-aided transcription; that the foregoing is a full, complete and true record of the testimony of the witness and of all objections made at the time of the examination; and that the witness was given an opportunity to read and correct said deposition and to subscribe the same.

Should the signature of the witness not be affixed to the deposition, the witness shall not have availed himself/herself of the opportunity to sign or the signature has been waived.

I further certify that I am neither related to nor counsel for any party to the cause pending or interested in the events thereof.

Witness my hand, I have hereunto affixed my official seal on October 2, 2026 at Myrtle Beach, Horry County, South Carolina.

Binnie Denise Purser

Binnie Denise Purser, RDR, CRR

My Commission expires
May 16, 2034