# EXHIBIT G

# Deposition Transcript

**Case Number: 23CV1357 CAB BLM**
**Date: February 2, 2026**

**In the matter of:**

# ESTATE OF LONNIE RUPARD v COUNTY OF SAN DIEGO, et al.

# Deputy Ernesto Aguirre

CERTIFIED COPY

Reported by:
Maribel Torres

**Steno**
**Agency, Inc.**

**315 West 9th Street**
**Suite 807**
**Los Angeles, CA 90015**
**concierge@steno.com**
**(888) 707-8366**
**NV: Firm #108F**

way to know by this particular log which cells you were responsible for doing safety checks on versus which cells Deputy James was doing cell checks for?
A. No.
Q. Do you have any independent recollection as to whether or not you did any cell checks of Lonnie Rupard's cell on March 16?
A. I don't recall.
Q. When you reviewed the video footage from March 16 before your deposition, did you identify yourself doing any of the safety check walks?
A. Yes.
Q. And did you identify yourself doing any of the safety checks of the cell in which Lonnie Rupard was housed?
MR. COLLETTI: Asked and answered.
A. Yes.
Q. (MR. LOWE) All right. What time -- or let's strike that. How many times did you observe -- let me ask that more clearly. In reviewing the video, how many occasions did you do a safety check of Lonnie Rupard's cell on March 16th?
MR. COLLETTI: Calls for speculation.
A. I don't recall.
Q. (MR. LOWE) Do you have any recollection as

to which times were your -- excuse me, which times were you doing the safety checks of Lonnie Rupard's cell versus which times Deputy James was doing the safety checks of Lonnie Rupard's cell on March 16th?

MR. COLLETTI: Calls for speculation.

A. No.

Q. (MR. LOWE) Do you have any estimation as to how many safety checks you, yourself, performed on Lonnie Rupard on March 16?

MR. COLLETTI: Calls for speculation; asked and answered.

A. I don't recall.

Q. (BY MR. LOWE) Okay. Are you able to estimate if it was more than one safety check that you did of Lonnie Rupard on March 16th?

MR. COLLETTI: Calls for speculation; asked and answered.

A. I would say yes, it was probably more than one.

Q. All right. Other than it probably being more than one, do you have any other way to estimate having reviewed the videos and identifying yourself how many safety checks you did of Lonnie Rupard on March 16th?

MR. COLLETTI: Same objections.

the safety check of Lonnie Rupard at that time?

MR. COLLETTI: Same objections.

A. No.

Q. (MR. LOWE) And then we also have another safety check at 21:45 with both you and Mr. -- Deputy James. Do you have a recollection of doing this particular safety check of Lonnie Rupard?

MR. COLLETTI: Same objections.

A. No.

Q. (MR. LOWE) All right. And now we have another safety check at 23:43, again, with you and Deputy James of the area 7. Do you have a recollection of whether it would be you or Deputy James that would do the safety check of Lonnie Rupard at this time?

MR. COLLETTI: Same objections.

A. No.

Q. (MR. LOWE) Other than the video itself, do you have any way or is there any other documentation that you're aware of that would indicate whether it was you or Deputy James that did the safety check of Lonnie Rupard at that time or any of these times?

MR. COLLETTI: Calls for speculation.

If you know, you can answer.

A. I am unsure, no.

Q. (MR. LOWE) All right. And irrespective of

your not recalling how many safety checks you did of Lonnie Rupard, by virtue of the fact that you did review the surveillance video, you were able to identify that you did at least one and maybe more of the safety checks of Lonnie Rupard on March 16th, 2022, true?

A. Yes.

Q. All right. Now we have another safety check on March 16th, 20- -- at the 20 -- 22 -- excuse me, at the hour 20, 22, and 44 minutes. 10:44 p.m., correct?

A. Yes.

Q. All right. And you are the only one identified for that particular safety check. Does that mean that you, yourself, did the entirety of the safety check of the 7th floor at this time?

MR. COLLETTI: Speculation.

You can answer.

A. Yes.

Q. (MR. LOWE) When earlier you had mentioned that you had seen yourself doing one of the safety checks at least of Lonnie Rupard, the one that you observed on the film, surveillance, were you with another deputy or were you by yourself?

MR. COLLETTI: Objection to the extent that's invading the attorney-client privilege.

being who looks emaciated, in that circumstance, fair to say your job is to report it to medical and mental health, true?

MR. COLLETTI: Same objections.

A. Yes.

Q. (MR. LOWE) All right. Now, did you, as part of your job as a deputy, ever report any inmate appearing emaciated in the entirety of the time that you've been working as a deputy at the San Diego County Jail?

MR. COLLETTI: Forgive me. I -- you did cut out there for me again. I think I caught the tail end of your question there, but if you could just repeat the question, I'd appreciate that.

Q. (MR. LOWE) During the time that you worked as a deputy for the San Diego County Jail, have you ever reported to medical and mental health of an inmate that you observed to be emaciated?

A. I don't recall.

Q. Fair to say you never reported Lonnie Rupard as being emaciated to medical and/or mental health, correct?

A. Correct.

Q. Do you have -- as you sit here, do you have any reason to -- to explain or do you have any

STATE OF TEXAS )
COUNTY OF TARRANT )

REPORTER'S CERTIFICATE

REMOTE VIDEOTAPED/ORAL DEPOSITION OF

DEPUTY ERNESTO AGUIRRE

FEBRUARY 2, 2026

I, the undersigned Certified Shorthand Reporter in and for the State of Texas, certify that the facts stated in the foregoing pages are true and correct.

That the witness did not request to review the transcript and make any changes to the transcript pursuant to Section 30(e) of the Federal Rules of Civil Procedure.

I further certify that I am neither attorney or counsel for, related to, nor employed by any parties to the action in which this testimony is taken and, further, that I am not a relative or employee of any counsel employed by the parties hereto or financially interested in the action.