# EXHIBIT H

# Deposition Transcript

Case Number: 23CV1357 CAB BLM
Date: December 11, 2024

In the matter of:

# JUSTINO RUPARD, et al. v COUNTY OF SAN DIEGO, et al.

# Linda Gutierrez

CERTIFIED
COPY

Reported by:
JESSICA BELL GONZALES

Steno
Official Reporters

315 West 9th Street
Suite 807
Los Angeles, CA 90015
concierge@steno.com
(310) 573-8380
NV: Firm #108F

15:24:43 next in order, which would be Exhibit 13. Exhibit 13 will be the audio Bates Number COSD1790. It's the audio of Deputy Gutierrez, and I am going to play a portion for you, Ms. Gutierrez, and then I have some questions about
15:25:07 it. It might not start exactly at the question that I am going to ask you about so that you can have a little bit of context, so I am going to go ahead and push play. For the record, I'm starting at the 11 minute, 19 second time.

15:25:19 (At which time audio was played and Exhibit 13 was retained by Mr. Lowe to be provided at a later date.)

BY MR. LOWE:

Q. So I'll start there. Is that your voice on
15:26:04 the audio?

A. Yes.

Q. Yeah, you had mentioned that you never had run ins with him in the past, is that still consistent with your recollection as you sit here today that you've
15:26:19 never seen him before?

A. Yes.

Q. And you said I don't get to work on that floor, so typically you would not work on the seventh floor because you would typically be working on a
15:26:36 different floor at that timeframe?

15:26:41 A. I work on the sixth floor.
Q. And so you were working on the seventh floor because this was an overtime shift?
A. The supervisors on that team assigned me on
15:26:54 that floor.
Q. Do you know if this was the first time you had been assigned to that floor between let's say December and March?
A. I can't recall. Yeah, I can't recall.
15:27:04 Q. Okay, but no knowledge of Lonnie Rupard from before this; correct?
A. No.
Q. And nobody gave you any type of report on Lonnie Rupard; correct?
15:27:17 A. No.
Q. I can go back and play a part earlier that I -- and maybe I will, but you were late for your shift and missed the part of the briefing. Do you recall that?
15:27:30 A. Yes. At 6:00 we start briefing in the briefing room and that is where we get like our -- talk about activities or incidents or events that happened during the previous shift and then we get the assignment deployment and then we are dismissed to go to the floor.
15:27:53 Q. When you got there, were you already dismissed

15:37:59
A. No.
Q. To your knowledge, was anyone ever disciplined in regards to this incident?
A. I don't know.
15:38:06
MR. LOWE: Okay. I'll pass along. I may have a couple of follow-up questions based on any other questions that are asked, but I appreciate you being here and I appreciate your time.
MR. KRUEGER: We can still keep going?
15:38:20
MS. FELDMAN: Yes.

EXAMINATION

BY MR. KRUEGER:
Q. Okay. I hope not to have very many. My name is Corey Krueger and off the record, I represent Liberty
15:38:25
Health Care and Dr. Anthony Cruz. When I say the name Dr. Anthony Cruz, do you know who I am referring to?
A. Yes.
Q. Have you had personal interactions before?
A. Yes.
15:38:37
Q. Without giving me any details about other inmates, I'm not interested in details about other inmates, but have you ever had occasion to bring an inmate to Dr. Cruz's personal attention?
A. Yes.
15:38:47
Q. How do you go about doing that?

15:38:48 A. I just go to him and ask him.
Q. You see him around the facility?
A. When I first started Central Jail, I didn't know who the psychiatrist, psychologist, the doctors in
15:38:59 the mental health, so I got to meet him. He is very nice and right away he was helping me take care of patients that needed medical -- need assessments.
Q. He was approachable?
A. Yes.
15:39:13 Q. He was responsive when you asked for assistance?
A. Yes.
Q. Did you ever have occasion where you brought someone to his attention and you felt that he did not
15:39:21 provide what was needed?
A. No.
MS. FELDMAN: Well, objection to the extent it calls for speculation. Calls for expert opinion.
BY MR. KRUEGER:
15:39:28 Q. You can answer.
A. All of the attempts that I've asked for assistance, it's like the same day or the next day he would help me.
Q. Okay. Specifically as to Mr. Rupard, I know
15:39:42 you said you had no prior interactions so I suspect I

15:39:45 know what the answer is, but did you ever have occasion to specifically bring Mr. Rupard to the attention of Mr. Cruz?

A. No.

15:39:56 Q. Did you ever hear that anyone else had brought Mr. Rupard to the attention of Dr. Cruz?

A. No.

MR. KRUEGER: Okay. I think that's all. Do you have anything?

15:40:12 MR. LOWE: Just one question. So not maybe one question, maybe one small line of questioning.

FURTHER EXAMINATION

BY MR. LOWE:

Q. With Dr. Cruz, you understood him to be a
15:40:22 mental health psychiatric; correct?

A. Yes.

Q. What about medical? Who was your point of contact or who would you know to be the person to contact if there was a medical issue?

15:40:34 A. The charge nurse.

Q. The charge nurse and do you recall who that was?

A. I don't know. I think there is like a variety of charge nurses there.

15:40:44 Q. But if you had an issue, you'd go to a charge

I, Jessica Bell Gonzales, the undersigned, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were placed under oath; that a verbatim record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; further, that the foregoing is an accurate transcription thereof.

I further certify that I am neither financially interested in the action nor a relative or employee of any attorney of any of the parties.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated 1/01/2025

Jessica Bell Gonzales

JESSICA BELL GONZALES
CSR No. 12300