**Rada Feldman, Esq. (State Bar No. 285931)**
**Nicholas R. Colletti, Esq. (State Bar No. 283947)**
**Robert S. Kahn, Esq. (State Bar No. 231277)**
**Caroline M. Park, Esq. (State Bar No. 334008)**
**Cristina I. Butoiu, Esq. (State Bar No. 335902)**
**COLLINS + COLLINS LLP**
**2011 Palomar Airport Road, Suite 207**
**Carlsbad, CA 92011**
**(760) 274-2110 - FAX (760) 274-2111**
**Email: rfeldman@ccllp.law**
**Email: ncolletti@ccllp.law**
**Email: rkahn@ccllp.law**
**Email: cpark@ccllp.law**
**Email: cbutoiu@ccllp.law**

Attorneys for Defendants,
COUNTY OF SAN DIEGO, BILL GORE, KELLY MARTINEZ, JON MONTGOMERY, CHRISTINA GOODALL (sued as CHRISTINA ANOSIKE), MIGUEL AGUILERA, JASON VILADIU, GUSTAVO MARTINEZ, JEFF AMADO, ERNESTO AGUIRRE, TREYVONNE JAMES (sued in duplicate J. TREYVONNE), BERNARDO ROMERO, MICHAEL JOHNSON, ANDREW TORRES, ALLEN WERESKI, BLADE ROMANS, LINDA GUTIERREZ, AND THOMAS MACE

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

ESTATE OF LONNIE RUPARD, THROUGH ITS COURT-APPOINTED ADMINISTRATOR TERRI LOPEZ;

Plaintiffs,

vs.

COUNTY OF SAN DIEGO; et al.

Defendants.

CASE NO. 3:23-cv-1357-CAB-JAC
***Assigned to Hon. Cathy Ann Bencivengo***
***Magistrate Hon. Janet A. Cabral in Dept. 15A***

PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT

**NOTICE OF MOTION AND MOTION OF DEFENDANT COUNTY OF SAN DIEGO TO EXCLUDE OR LIMIT THE OPINIONS AND TESTIMONY OF PLAINTIFFS' EXPERT GARY RANEY; MEMORANDUM OF POINTS AND AUTHORITIES**

Date: December 18, 2026

Time:
Dept.: 15A

**Complaint Filed: 7/26/2023**
**Trial Date: 2/22/2027**

**PLEASE TAKE NOTICE** that, at the date and time set forth above, Defendant County of San Diego will and hereby does move the Court, pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), for an order excluding or, in the alternative, limiting the opinions and testimony of Plaintiff's retained jail-practices expert, Gary L. Raney.

The motion is based on this Notice, the following Memorandum of Points and Authorities, the concurrently filed Declaration of Robert S. Kahn and the exhibits thereto, the pleadings and records on file, and any argument the Court may entertain.

DATED: November 13, 2026 COLLINS + COLLINS LLP

By: ______________________
NICHOLAS R. COLLETTI
RADA FELDMAN
ROBERT S. KAHN
CAROLINE M. PARK
CRISTINA I. BUTOIU
Attorneys for Defendants
COUNTY OF SAN DIEGO, BILL GORE, KELLY MARTINEZ, JON MONTGOMERY, CHRISTINA GOODALL (sued as CHRISTINA ANOSIKE), MIGUEL AGUILERA, JASON VILADIU, GUSTAVO MARTINEZ, JEFF AMADO, ERNESTO AGUIRRE, TREYVONNE JAMES (sued in duplicate J. TREYVONNE), BERNARDO ROMERO, MICHAEL JOHNSON, ANDREW TORRES, ALLEN WERESKI, BLADE ROMANS, LINDA GUTIERREZ, AND THOMAS MACE

COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

# TABLE OF CONTENTS


I. INTRODUCTION. 1

II. LEGAL STANDARD. 2

III. ARGUMENT. 4

A. Mr. Raney offers no admissible causation opinion and should be precluded from suggesting that custody conditions caused or contributed to Mr. Rupard's death. 4

B. Mr. Raney's reliance on Title 15, ACA standards, and "generally accepted jail practices" does not supply the governing legal standard and risks confusing the jury. 5

C. Mr. Raney may not offer legal conclusions that County staff "violated" the law, were "culpable," or were deliberately indifferent. 6

D. Mr. Raney is not qualified to offer medical opinions, including on Mr. Rupard's physical deterioration and the cause of his death. 8

E. Mr. Raney may not narrate the record, draw inferences the jury is equally able to draw, or opine on County staff's state of mind. 9

F. Mr. Raney's "organizational failure," training, and individual-culpability opinions are conclusory and rest on supposition and reverse-engineered reasoning, not a reliable methodology. 10

G. Mr. Raney's custody-monitoring and "systemic failure" opinions are needlessly cumulative of Plaintiffs' correctional-health expert and should be limited. 11

H. Mr. Raney should be confined to the opinions disclosed in his reports. 12

I. Mr. Raney should be precluded from opining on the adequacy of Detective Blumenshine's death investigation, a subject outside his expertise. 12

J. Mr. Raney's adoption of the Medical Examiner's "homicide" manner-of-death classification should be excluded under Rule 403. 14

K. In the alternative, the cumulative effect of these defects warrants excluding Mr. Raney's testimony in its entirety. 14

IV. CONCLUSION. 15


COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

# TABLE OF AUTHORITIES

Page(s)

Federal Cases

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
613 F. Supp. 3d 1308 (S.D. Cal. 2020) ... 9

*Barabin v. Scapa Dryer Felts, Inc.*,
No. C07-1454JLR, 2018 WL 1570781 (W.D. Wash. Mar. 30, 2018) ... 11

*Bell v. Wolfish*,
441 U.S. 520 (1979) ... 6

*Cabrera v. Cordis Corp.*,
134 F.3d 1418 (9th Cir. 1998) ... 11

*Cousins v. Lockyer*,
568 F.3d 1063 (9th Cir. 2009) ... 6

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ... 2

*Engilis v. Monsanto Co.*,
151 F.4th 1040 (9th Cir. 2025) ... passim

*Fatai v. Ramos*,
No. 19-CV-603-DKW-WRP, 2023 WL 2390573 (D. Haw. Mar. 7, 2023) ... 9

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) ... 3, 10

*Goodman v. Staples The Off. Superstore, LLC*,
644 F.3d 817 (9th Cir. 2011) ... 12

*Hangarter v. Provident Life & Accident Ins. Co.*,
373 F.3d 998 (9th Cir. 2004) ... 7

*Hanington v. Multnomah Cnty.*,
593 F. Supp. 3d 1022 (D. Or. 2022) ... 6

*Hughes v. Judd*,
108 F. Supp. 3d 1167 (M.D. Fla. 2015) ... 6

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
87 F. Supp. 3d 928 (N.D. Cal. 2015) ... 12

*Jinro Am. Inc. v. Secure Invs., Inc.*,
266 F.3d 993 (9th Cir. 2001) ... 13, 14

*Krause v. County of Mohave*,
459 F. Supp. 3d 1258 (D. Ariz. 2020) ... passim

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) ... 2

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
523 F.3d 1051 (9th Cir. 2008) ... 7, 15

*Neal-Lomax v. Las Vegas Metro. Police Dep't*,
574 F. Supp. 2d 1193 (D. Nev. 2008) .......... 4, 8
*Nelson v. Columbia Cnty.*,
No. 3:20-CV-01906-YY, 2025 WL 5239521 (D. Or. Dec. 29, 2025) .......... 6
*Nyerges v. Hillstone Rest. Grp. Inc.*,
No. CV-19-02376-PHX-DWL, 2021 WL 3290463 *(D. Ariz. Aug. 2, 2021)* .......... 3, 4
*Parsons v. Ryan*,
No. CV-12-00601-PHX-NVW, 2014 WL 3721030 (D. Ariz. July 28, 2014) .......... 12
*Reed v. Lieurance*,
863 F.3d 1196 (9th Cir. 2017) .......... 9
*Rogers v. Raymark Indus., Inc.*,
922 F.2d 1426 (9th Cir. 1991) .......... 11
*United States v. Diaz*,
876 F.3d 1194 (9th Cir. 2017) .......... 7
*United States v. Jefferson*,
No. 2:23-CR-00109-LK, 2025 WL 97378 (W.D. Wash. Jan. 12, 2025) .......... 11, 13
United States v. Valencia-Lopez,
*971 F.3d 891 (9th Cir. 2020)* .......... 3, 8, 10
*United States v. Vera*,
770 F.3d 1232 (9th Cir. 2014) .......... 9
*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
259 F.3d 1101 (9th Cir. 2001) .......... 12

State Statutes

Title 15, ACA .......... 1, 5, 6, 7,15

Federal Rules

Fed. R. Evid. 403 .......... 11, 13, 14, 16
Fed. R. Evid. 702 .......... 2, 3, 10, 15
Fed. R. Evid. 702(b) .......... 3
Fed. R. Evid. 702(d) .......... 2

COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION.

Lonnie Rupard died in the San Diego Central Jail. The County Medical Examiner certified the cause of death as "Pneumonia, Malnutrition and Dehydration in the setting of neglected schizophrenia" and the manner as homicide. [Declaration of Robert S. Kahn ("Kahn Decl.") ¶ 6 & Ex. D.] To connect that death to the County's custody staff, Plaintiffs rely on Gary L. Raney, a retired sheriff retained to opine on jail policies and practices. But Mr. Raney's own report and sworn testimony place several of his opinions outside the bounds Rule 702 permits.

The County does not ask the Court to exclude Mr. Raney because he is a corrections administrator rather than a physician, and it does not contend that custody staff owe detainees a lesser duty. A mere lack of experience in a given area ordinarily goes to the weight, not the admissibility, of an expert's testimony. The County's challenge is narrower and rests on admissibility defects that survive that principle: Mr. Raney offers no causation opinion and concedes he is "not qualified to answer" how the cell's condition contributed to Mr. Rupard's death (Kahn Decl. ¶ 4(a)); he concedes the standards his opinions invoke — California Title 15, ACA accreditation standards, and his own "generally accepted jail practices" — are not the governing legal standard, that ACA accreditation "does not establish a greater constitutional mandate," and that there are "no compulsory national correctional standards" (Kahn Decl. ¶ 4(b) & ¶ 3); his "organizational failure," training, and individual-culpability opinions rest on his own "supposition" and "inference" rather than any articulated methodology (Kahn Decl. ¶ 4(d)–(e)); he offers legal conclusions that County staff "violated" the law and were "culpable," even while conceding that indifference and negligence are "the decision of the finder of fact" (Kahn Decl. ¶ 4(c) & ¶ 5); he narrates the record and characterizes County staff's state of mind on questions the jury can decide for itself (Kahn Decl. ¶ 3); his custody-monitoring and "systemic failure" opinions duplicate

*25163*



COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

those of Plaintiffs' separately retained correctional-health expert; he criticizes a homicide detective's death investigation, a subject outside his retained corrections scope and his expertise (Kahn Decl. ¶ 4(f)); and he should be confined to his report.

Rule 702, as amended effective December 1, 2023, requires Plaintiffs to show by a preponderance that each of Mr. Raney's opinions rests on a reliable methodology reliably applied, and that it will help the jury decide a fact in issue. (*Fed. R. Evid.* 702) The Ninth Circuit has confirmed that there is "no presumption in favor of admission" and that the Court "cannot abdicate its role as gatekeeper." (*Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049–1050 (9th Cir. 2025)) Measured against that standard, Mr. Raney's opinions should be excluded or sharply limited.

## II. LEGAL STANDARD.

Federal Rule of Evidence 702 governs the admissibility of expert testimony. As amended December 1, 2023, the Rule permits a qualified expert to testify only if "the proponent demonstrates to the court that it is more likely than not" that (a) the testimony will help the trier of fact, (b) it is "based on sufficient facts or data," (*Engilis v. Monsanto Co.*, 151 F.4th 1040, 1053 (9th Cir. 2025)) (c) it is "the product of reliable principles and methods," and (*Fed. R. Evid.* 702) (d) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." (*Fed. R. Evid.* 702(d); *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049 (9th Cir. 2025)) The 2023 amendment was adopted precisely because "many courts" had wrongly treated "the sufficiency of an expert's basis, and the application of the expert's methodology, [as] questions of weight and not admissibility" — an incorrect application of Rules 702 and 104(a). (*Fed. R. Evid.* 702 advisory committee's note to 2023 amendment)

The trial court acts as a "gatekeeper" to ensure expert testimony "is not only relevant, but reliable," a function that applies to all expert testimony, scientific or experience-based. (*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Engilis v. Monsanto Co.*,

*25163*



COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

151 F.4th 1040, 1047 (9th Cir. 2025)) The proponent bears the burden of establishing each requirement by a preponderance of the evidence. (*Fed. R. Evid.* 702) An opinion is "relevant if the knowledge underlying it has a valid connection to the pertinent inquiry" and "reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." (*Engilis v. Monsanto Co.*, 151 F.4th 1040, 1047 (9th Cir. 2025)) Post-amendment, there is "no presumption in favor of admission," and the court cannot abdicate its role as gatekeeper, nor delegate that role to the jury. (*Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049–1050 (9th Cir. 2025))

These requirements are commonly described as three distinct inquiries — qualification, reliability, and fit. The gatekeeping inquiry is directed at the reliability and fit of each opinion, not at the length of the witness's corrections career; a mere lack of experience goes to weight, and "[s]haky but admissible evidence is to be attacked by cross examination …not exclusion." (*Nyerges v. Hillstone Rest. Grp. Inc.*, No. CV-19-02376-PHX-DWL, 2021 WL 3290463, at *2 (D. Ariz. Aug. 2, 2021)) For experience-based testimony like Mr. Raney's, reliability "becomes more, not less, important," and the inquiry "cannot simply lead to a 'that goes to weight, not admissibility' default." (*United States v. Valencia-Lopez, *971 F.3d 891, 898 (9th Cir. 2020)) A court need not, however, "admit opinion evidence that is connected to existing data only by the* ipse dixit *of the expert"; it "may conclude that there is simply too great an analytical gap between the data and the opinion proffered."* (*Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)) An expert's "general qualifications" and experience, while "relevant, and indeed necessary," "cannot establish the reliability and thus the admissibility of the expert testimony"; the expert must link that experience to the specific conclusion and explain the methodology. (*United States v. Valencia-Lopez*, 971 F.3d 891, 900 (9th Cir. 2020)) A conclusory opinion offered without a reasoned, articulated basis fails Rule 702(b). (*Engilis v. Monsanto Co.*, 151 F.4th 1040, 1053 (9th Cir. 2025))

*25163*



COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

## III. ARGUMENT.

### A. Mr. Raney offers no admissible causation opinion and should be precluded from suggesting that custody conditions caused or contributed to Mr. Rupard's death.

An opinion is relevant only if it has a "valid connection to the pertinent inquiry." (*Engilis v. Monsanto Co.*, 151 F.4th 1040, 1047 (9th Cir. 2025)) The pertinent inquiry in a wrongful-death-in-custody case includes whether the challenged conduct caused the death. Mr. Raney disclaims any opinion on that question. Asked how the condition of Mr. Rupard's cell contributed to his death, he answered, "I'm not qualified to answer that." (Kahn Decl. ¶ 4(a) & Ex. B at 59.) Asked whether the cell's condition "was related to the cause of his death," he again answered, "I'm not qualified to answer that." (Kahn Decl. ¶ 4(a) & Ex. B at 61.) He conceded he "can't offer that medical opinion" as to Mr. Rupard's final hours and that he relied on the Medical Examiner for the cause of death. (Kahn Decl. ¶ 4(a).)

Yet Mr. Raney's report asserts that the custody failures he describes were "each contributing to Rupard's death," that proper monitoring "may have saved his life," and that the County's "organizational failures, combined with the individual failures of its deputies, enabled such a tragedy." (Kahn Decl. ¶ 3 & Ex. A.) Where a death has multiple potential contributing causes, causation must be established through a qualified expert opinion given to a reasonable degree of medical certainty; a bare "possibility" will not do. (*Neal-Lomax v. Las Vegas Metro. Police Dep't*, 574 F. Supp. 2d 1193, 1198 (D. Nev. 2008)) Mr. Raney supplies neither the qualification nor the methodology. His contribution-to-death opinion "logically flows" from his standard-of-care criticisms rather than from any independent causal analysis, and an opinion that merely flows from a standard-of-care opinion, untethered to a reliable causal methodology, is inadmissible. (*Nyerges v. Hillstone Rest. Grp. Inc.*, No. CV-19-02376-PHX-DWL, 2021 WL 3290463, at *10 (D. Ariz. Aug. 2, 2021)) Plaintiff will likely



COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

respond that Mr. Raney offers only a "corrections" causation opinion — that a failure to monitor allowed Mr. Rupard's decline to go undiscovered — not a medical one. But Mr. Raney twice testified he is "not qualified to answer" whether the cell's condition was related to the death and deferred to the Medical Examiner; a causal opinion he concedes he is not qualified to give, and that rests on his standard-of-care criticisms alone, is not rendered admissible by relabeling it "correctional." The Court should bar Mr. Raney from offering, directly or by implication, any opinion that the County's conduct or the conditions in Mr. Rupard's cell caused or contributed to his death.

**B. Mr. Raney's reliance on Title 15, ACA standards, and "generally accepted jail practices" does not supply the governing legal standard and risks confusing the jury.**

This argument does not turn on Mr. Raney's corrections experience — which the County accepts goes to weight — but on his own concessions about the standards his opinions apply. Mr. Raney's liability opinions rest on California Title 15, ACA accreditation standards, his self-defined "generally accepted jail practices," and internal Sheriff's policies, each of which his report invokes as the measure of the County's conduct. (Kahn Decl. ¶ 3 & Ex. A.) He conceded at deposition, however, that ACA "[a]ccreditation is voluntary," that it "does not establish a greater constitutional mandate," and that membership in the ACA confers no certification. (Kahn Decl. ¶ 4(b) & Ex. B at 16, 37–38.) He acknowledged there are "no compulsory jail standards in the United States" and no "mandatory jail practices in California other than Title 15," and he defined his own "generally accepted correctional practices" as merely those "widely agreed-upon practices that would be used to create standards if it were possible." (Kahn Decl. ¶ 3 & ¶ 4(b).) Asked to identify any statute requiring the cell-cleaning practice he faulted, he could cite none, resting instead on what "is widely accepted." (Kahn Decl. ¶ 4(b) & Ex. B at 54–55.)

*25163*



COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

None of these standards supplies the governing legal measure of the County's conduct. Professional-association standards, "although perhaps instructive in certain cases, …do not establish the constitutional minima." (*Bell v. Wolfish*, 441 U.S. 520, 543 n.27 (1979)) "[S]tate departmental regulations do not establish a federal constitutional violation." (*Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009)) Courts have accordingly held that noncompliance with voluntary correctional-accreditation standards such as the ACA's does not constitute deliberate indifference, and that the violation of an internal policy "or even a provision of state law, does not necessarily equate to a violation of a plaintiff's constitutional rights." (*Hanington v. Multnomah Cnty.*, 593 F. Supp. 3d 1022, 1035–36 (D. Or. 2022); *Nelson v. Columbia Cnty.*, No. 3:20-CV-01906-YY, 2025 WL 5239521, at *12 (D. Or. Dec. 29, 2025); *see also Hughes v. Judd*, 108 F. Supp. 3d 1167, 1250–1251 (M.D. Fla. 2015)) Plaintiff will argue that Title 15 is binding state law and its violation is therefore relevant. Even accepting that Title 15 binds the facility, a Title 15 or policy violation does not establish the federal constitutional standard of care, and recasting these voluntary or regulatory standards as "the standard of care" invites the jury to measure the County's legal duty by the wrong yardstick and risks confusing the issues. (*Engilis v. Monsanto Co.*, 151 F.4th 1040, 1047 (9th Cir. 2025)) Mr. Raney may, consistent with his expertise, describe specific deviations from Title 15, ACA standards, or jail practice as factual matters; he may not present those standards to the jury as the governing legal standard or equate their breach with the County's legal liability. (*Krause v. County of Mohave*, 459 F. Supp. 3d 1258, 1267–68 (D. Ariz. 2020)) The Court should so limit his testimony.

**C. <u>Mr. Raney may not offer legal conclusions that County staff "violated" the law, were "culpable," or were deliberately indifferent.</u>**

Although an expert may embrace an ultimate issue, "an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law,"



COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

and "instructing the jury as to the applicable law is the distinct and exclusive province of the court." (*Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004)) The Ninth Circuit has specifically held inadmissible expert testimony that a party's conduct "violated" a statute, because such testimony "would, in effect, instruct the jury regarding how it should decide the key question" and "merely tells the jury what result to reach." (*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1059–60 (9th Cir. 2008)) Testimony crosses into an impermissible legal conclusion when it uses terms with "a specialized meaning in law" or instructs the jury how "to apply the law to the facts of the case." (*United States v. Diaz*, 876 F.3d 1194, 1197–99 (9th Cir. 2017)) In the §1983 police-practices context, courts exclude expert opinions that officers were "deliberately indifferent" or that the elements of a claim are satisfied. (*Krause v. County of Mohave*, 459 F. Supp. 3d 1258, 1264–68 (D. Ariz. 2020))

Mr. Raney's reports are replete with such conclusions. He opines that the Sheriff's Department "violated California Title 15, [ACA] accreditation standards, generally accepted jail practices, and its own policy"; that each deputy had a "legal and ethical obligation" he breached and was "increasingly culpable"; and that staff "intentionally ignored" the cell's condition. (Kahn Decl. ¶ 3 & Ex. A.) These are legal conclusions dressed as corrections opinion. Tellingly, Mr. Raney himself conceded in his rebuttal report that "the determination of indifference or negligence is the decision of the finder of fact." (Kahn Decl. ¶ 5.) Plaintiff will invoke Rule 704(a), which permits opinion on an ultimate issue. But Rule 704(a) does not permit opinions on ultimate issues of *law*; testimony that staff "violated" Title 15 or were "culpable" uses legal terms and tells the jury what result to reach. (*Hangarter*, 373 F.3d at 1016; *Nationwide*, 523 F.3d at 1059–60; *Diaz*, 876 F.3d at 1197–99) The Court should preclude Mr. Raney from testifying that any County policy, practice, or actor violated the law, was legally culpable, or was deliberately indifferent, while leaving him free to describe

*25163*



COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

factual deviations from jail practice that fall short of a legal conclusion. (*Krause*, 459 F. Supp. 3d at 1264–68)

**D. <u>Mr. Raney is not qualified to offer medical opinions, including on Mr. Rupard's physical deterioration and the cause of his death.</u>**

General law-enforcement experience does not qualify a witness to opine on technical matters outside his field; qualifications "cannot establish the reliability and thus the admissibility" of an opinion the expert is not equipped to give. (*United States v. Valencia-Lopez*, 971 F.3d 891, 900 (9th Cir. 2020)) A police-practices expert has been held unqualified to opine on medical care and other technical subjects outside his field, because "general" law-enforcement experience "simply does not bear on" such expertise. (*Krause v. County of Mohave*, 459 F. Supp. 3d 1258, 1265–67 (D. Ariz. 2020)) And an expert may not opine outside "the specific subject of his expertise." (*Neal-Lomax v. Las Vegas Metro. Police Dep't*, 574 F. Supp. 2d 1193, 1203–1204 (D. Nev. 2008))

Mr. Raney holds Bachelor's and Master's degrees in Criminal Justice Administration and a three-decade sheriff's career; he holds no medical, psychiatric, or forensic-pathology training or license. (Kahn Decl. ¶ 3 & Ex. A.) He conceded he is "not qualified to offer a medical opinion," yet opined that Mr. Rupard "would have had a difficult time walking in the last day or two prior to his death" and that staff should have recognized his "medical distress." (Kahn Decl. ¶ 4(a) & Ex. B at 68.) Plaintiff's own designation assigns the medical and causation issues to its retained medical and nursing experts — Dr. Venters, Dr. Glindmeyer, and nurse-practitioner Dr. Roscoe — and the cause and manner of death to a forensic pathologist, not to Mr. Raney. (Kahn Decl. ¶ 3 & Ex. A.) Plaintiff will respond that Mr. Raney's decades in corrections equip him to recognize a detainee in distress. But recognizing, diagnosing, or opining on the physiology of Mr. Rupard's deterioration and its relationship to his death requires medical expertise Mr. Raney concededly lacks. Opinions requiring



COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

medical or physiological judgment fall outside the "knowledge and experience of the relevant discipline" for which Mr. Raney is qualified and should be excluded. (*Engilis v. Monsanto Co.*, 151 F.4th 1040, 1047 (9th Cir. 2025))

### E. **Mr. Raney may not narrate the record, draw inferences the jury is equally able to draw, or opine on County staff's state of mind.**

Beyond offering legal conclusions, Mr. Raney's report narrates the jail records and investigation at length and then supplies the inferences and intent-characterizations that are the jury's to draw. He opines that staff "intentionally ignored" the cell's condition and were "increasingly culpable" (Kahn Decl. ¶ 3 & Ex. A), while conceding he cannot say whether deputies saw the condition "or whether they never saw it" (Kahn Decl. ¶ 4(c)–(d)). Expert testimony "is inadmissible if it addresses lay matters which a jury is capable of understanding and deciding without the expert's help," and thus "cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence." (*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 613 F. Supp. 3d 1308, 1322 (S.D. Cal. 2020)) Nor may an expert "draw his own inferences from the facts of a case that require no specialized or technical knowledge" — a prohibition that "includes making credibility determinations or opining as to an individual's state of mind." (*Fatai v. Ramos*, No. 19-CV-603-DKW-WRP, 2023 WL 2390573, at *3 (D. Haw. Mar. 7, 2023); *see Reed v. Lieurance*, 863 F.3d 1196, 1209 (9th Cir. 2017) (an expert "is not permitted to testify specifically to a witness' credibility")) A true expert applies specialized knowledge to the facts; he may not serve "as little more than a conduit or transmitter" for the record. (*United States v. Vera*, 770 F.3d 1232, 1237–38 (9th Cir. 2014)) Mr. Raney's recitation of the record and his characterization of staff intent require no correctional expertise and invade the jury's province; they should be excluded. The County does not seek to bar Mr. Raney from explaining the facts on which any genuinely admissible opinion rests. (*See Aya*, 613 F. Supp. 3d at 1322–23.)

*25163*



COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

**F. <u>Mr. Raney's "organizational failure," training, and individual-culpability opinions are conclusory and rest on supposition and reverse-engineered reasoning, not a reliable methodology.</u>**

Rule 702(b)–(d) requires that an opinion rest on sufficient facts and a reliable methodology reliably applied. (*Fed. R. Evid.* 702) A "conclusory assertion of … subjective opinion" with "no explanation" fails that test, and a court may exclude an opinion connected to the data "only by the *ipse dixit* of the expert." (*Engilis v. Monsanto Co.*, 151 F.4th 1040, 1053 (9th Cir. 2025); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)) For experience-based opinion, the court asks whether the reasoning "is circular, speculative, or otherwise flawed" and whether it is "adequately explained." (*United States v. Valencia-Lopez*, 971 F.3d 891, 898 (9th Cir. 2020))

Mr. Raney identified no methodology beyond reviewing "the facts of the case, the reports, the policies, the videos." (Kahn Decl. ¶ 4(d).) On the questions his retention poses, he repeatedly conceded he cannot answer them from the record. Asked who committed the Title 15 safety-check violation he asserts, he admitted "[i]t would only be supposition," because the "poor logging …didn't record …who conducted those safety checks." (Kahn Decl. ¶ 4(d) & Ex. B at 48–49.) He could not say whether deputies saw and ignored the cell's condition "or whether they never saw it," conceding "[t]hat would be up to" the jury. (Kahn Decl. ¶ 4(d) & Ex. B at 60.) His training-failure opinion rests on "inference …regardless of what the training materials may have said," and he did not review the Sheriff's training curriculum. (Kahn Decl. ¶ 4(e) & Ex. B at 56.) He nonetheless labels the conduct an "organizational failure" and a "pattern and practice," and opines that each deputy was "increasingly culpable." An "organizational failure" opinion offered by a witness who concedes he cannot identify who did what, cannot say whether staff saw the condition, and infers a training deficiency from materials he never examined is exactly the "analytical gap" and *ipse dixit* Rule 702 forbids. (*Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Fed. R. Evid.* 702) The



COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

deeper flaw is that Mr. Raney reasoned backward — reaching his conclusion that training was deficient "regardless of what the training materials may have said," without examining the materials that would test it. An expert who reaches his desired conclusion "without testing that hypothesis in any manner" has not employed a reliable methodology. (*United States v. Jefferson*, No. 2:23-CR-00109-LK, 2025 WL 97378, at *13–14 (W.D. Wash. Jan. 12, 2025)) Plaintiff will respond that experience-based corrections testimony need not follow a formal method. True — but experience must still be *reliably applied* to the facts, and conclusions built on admitted "supposition" and unexamined "inference" are not a reliable application. These opinions should be excluded.

**G. <u>Mr. Raney's custody-monitoring and "systemic failure" opinions are needlessly cumulative of Plaintiffs' correctional-health expert and should be limited.</u>**

Even a qualified expert's testimony may be excluded under Rule 403, which authorizes the Court to bar "needlessly presenting cumulative evidence." (*Fed. R. Evid.* 403) Plaintiffs have separately retained Dr. Homer Venters, a correctional-health-systems expert, to opine on the very custody subjects Mr. Raney addresses — inmate monitoring, segregation housing and wellness checks, and "systemic" or organizational jail failure. (Kahn Decl. ¶ 3 & Ex. A.) The Ninth Circuit has affirmed exclusion of expert testimony that "would have been a needless presentation of cumulative evidence" whose probative value was "outweighed by the waste of time." (*Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1421–22 (9th Cir. 1998)) The trial court possesses the "power … to limit the number of expert witnesses." (*Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1430 (9th Cir. 1991)) Plaintiffs cannot avoid that result by noting that Mr. Raney and Dr. Venters come from different fields: a difference in specialty, "standing alone," does not render substantially similar testimony non-cumulative. (*Barabin v. Scapa Dryer Felts, Inc.*, No. C07-1454JLR, 2018 WL

*25163*



COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

1570781, at *3 (W.D. Wash. Mar. 30, 2018)) In a prison-conditions case on point, the court held that "[d]uplicative expert testimony will be excluded, absent leave of the court," and required plaintiffs to "elect which witness will testify on which issue." (*Parsons v. Ryan*, No. CV-12-00601-PHX-NVW, 2014 WL 3721030 (D. Ariz. July 28, 2014)) To the extent Mr. Raney's monitoring and "organizational failure" opinions duplicate Dr. Venters', the Court should preclude the duplication or require Plaintiffs to elect a single expert per issue.

**H. <u>Mr. Raney should be confined to the opinions disclosed in his reports.</u>**

An expert's Rule 26(a)(2)(B) report must contain a complete statement of all opinions and the basis and reasons for them, and Rule 37(c)(1) makes exclusion of an opinion — or a basis — not disclosed in the report automatic and self-executing, absent substantial justification or harmlessness. (*Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)) That bar reaches not only ultimate opinions but their bases, so an expert may not rely at trial on a standard, record, or theory first surfaced at deposition. (*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 87 F. Supp. 3d 928, 948–49 (N.D. Cal. 2015)) Mr. Raney confirmed he has served only his July 14, 2026 report and his August 5, 2026 rebuttal report, that he plans no additional or supplemental reports, that his remaining work in the case is "[o]nly testimony," and that nothing further is needed "for the current opinions." (Kahn Decl. ¶ 4(g).) The County requests that Mr. Raney be held to his disclosed opinions and precluded from offering new or expanded opinions at trial, including any attempt to supply the causation, qualification, or methodological foundations absent from his reports and testimony.

**I. <u>Mr. Raney should be precluded from opining on the adequacy of Detective Blumenshine's death investigation, a subject outside his expertise.</u>**

25163



COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

Mr. Raney's third summary opinion faults "Detective Blumenshine" for "fail[ing] to follow generally accepted law enforcement practices and conduct a thorough investigation." He opines that the detective failed to "secure video recording evidence, interview key witnesses, and take other steps that a competent death investigator would have taken," that evidence was "lost forever," and that the detective "was either an incompetent investigator or intentionally avoided answering the key question." (Kahn Decl. ¶ 3 & Ex. A.) This testimony should be excluded on three independent grounds.

First, it is outside Mr. Raney's field. He is a jail-operations expert, not a homicide investigator, and his stated basis for the criticism was that it is "self-evident" and "beyond belief." (Kahn Decl. ¶ 4(f) & Ex. B at 39, 71–72.) General law-enforcement experience "simply does not bear on" expertise in a specialized subject, and a police-practices expert may not opine outside his field. (*Krause v. County of Mohave*, 459 F. Supp. 3d 1258, 1265–67 (D. Ariz. 2020)) Second, the opinion is unhelpful and invades the jury's role. A jury is fully capable of assessing the quality of a law-enforcement investigation itself; an expert's opinion that an investigation was inadequate — measured against unspecified "generally accepted law enforcement practices" — is unreliable *ipse dixit* that "risks misleading the jury and confusing the issues." (*United States v. Jefferson*, No. 2:23-CR-00109-LK, 2025 WL 97378, at *7, *13 (W.D. Wash. Jan. 12, 2025)) Mr. Raney's speculation that omissions left evidence "lost forever" and that the detective "intentionally avoided" the key question is the kind of argumentative, editorializing commentary courts hold "outside the scope of proper expert testimony." (*Id.* at *8) Third, the probative value of this commentary — on the adequacy of a criminal investigation, a matter collateral to whether custody staff provided constitutionally adequate care — is substantially outweighed by the danger of unfair prejudice and jury confusion under Rule 403. (*Jinro Am. Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1006–07 (9th Cir. 2001)) Plaintiff may argue the investigation's

*25163*





COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

asserted deficiencies bear on spoliation or the County's candor. Even if certain facts about the investigation are admissible through percipient witnesses, Mr. Raney's expert characterization of the detective as "incompetent" or deceitful is not; the jury can weigh those facts without an expert's imprimatur. The Court should preclude Mr. Raney from opining on the adequacy, competence, or good faith of the death investigation.

**J. <u>Mr. Raney's adoption of the Medical Examiner's "homicide" manner-of-death classification should be excluded under Rule 403.</u>**

Mr. Raney's reports reproduce and adopt the Medical Examiner's determination that "[t]he manner of death was homicide," even though he concedes he is "not qualified to answer" questions of causation and defers to the Medical Examiner on the cause of death. (Kahn Decl. ¶ 4(a), ¶ 6 & Ex. A.) To the extent Mr. Raney would repeat or sponsor the "homicide" manner-of-death classification, that testimony should be excluded under Rule 403. Presenting the charged term "homicide" through a jail-operations expert who disclaims cause-of-death expertise has little probative value on the questions within his discipline and a high risk of unfair prejudice and of misleading the jury into treating a coroner's classification as a finding of culpability. (Kahn Decl. ¶ 6.) Expert testimony may be excluded where its probative value is substantially outweighed by the danger of unfair prejudice or jury confusion. (*Jinro Am. Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1006–07 (9th Cir. 2001)) Plaintiff may argue Mr. Raney is entitled to rely on the Medical Examiner's findings as a basis for his opinions; he may do so without broadcasting the inflammatory "homicide" label to the jury. The Court should preclude Mr. Raney from presenting the "homicide" manner-of-death classification to the jury.

**K. <u>In the alternative, the cumulative effect of these defects warrants excluding Mr. Raney's testimony in its entirety.</u>**

*25163*



COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

Finally, and in the alternative, once the defective categories addressed above are removed, little admissible opinion remains, and what remains is unhelpful. Expert testimony must "help the trier of fact," and testimony that "merely tells the jury what result to reach is not sufficiently helpful to the trier of fact to be admissible." (*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1059–60 (9th Cir. 2008); *Fed. R. Evid.* 702) Mr. Raney disclaims causation, concedes the standards he applies are not the legal measure, rests individual fault on "supposition," and repeatedly defers the ultimate reasonableness question to the jury — "up to [the jury], not up to me." (Kahn Decl. ¶ 4(a)–(d).) Weighing the evidence and "resolving factual matters is not outside the common ability and knowledge of a layperson." (*Krause v. County of Mohave*, 459 F. Supp. 3d 1258, 1264–65 (D. Ariz. 2020)) Should the Court grant the limitations sought above, the County respectfully submits that the testimony left to Mr. Raney would be cumulative of Plaintiffs' other experts and unhelpful to the jury, and should be excluded in its entirety. The County offers this as an alternative to, not a substitute for, the targeted limitations set forth above.

## IV. CONCLUSION.

For the foregoing reasons, the County respectfully requests that the Court limit Mr. Raney's testimony to preclude: (1) any opinion that the County's conduct or the conditions in Mr. Rupard's cell caused or contributed to his death; (2) any characterization of California Title 15, ACA accreditation standards, "generally accepted jail practices," or internal policy as the governing legal standard of care; (3) any legal conclusion, including that any defendant violated the law, was legally culpable, or was deliberately indifferent; (4) any opinion requiring medical, psychiatric, or forensic-pathology expertise, including on Mr. Rupard's physical deterioration or the cause of his death; (5) any narration of the record, inference the jury is equally able to draw, or characterization of County staff's state of mind; (6) conclusory "organizational failure," training, or individual-culpability opinions



COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

lacking a reliable methodology; (7) any custody-monitoring or "systemic failure" opinion that is needlessly cumulative of Plaintiffs' correctional-health expert, or an order requiring Plaintiffs to elect a single expert per issue; (8) any opinion or basis not disclosed in his reports; (9) any opinion on the adequacy, competence, or good faith of Detective Blumenshine's death investigation; and (10) the Medical Examiner's "homicide" manner-of-death classification, under Rule 403. In the alternative, the County requests that the Court exclude Mr. Raney's testimony in its entirety as cumulative and unhelpful.

DATED: November 13, 2026

COLLINS + COLLINS LLP

By: ______________________________
NICHOLAS R. COLLETTI
RADA FELDMAN
ROBERT S. KAHN
CAROLINE M. PARK
CRISTINA I. BUTOIU
Attorneys for Defendants
COUNTY OF SAN DIEGO, BILL GORE, KELLY MARTINEZ, JON MONTGOMERY, CHRISTINA GOODALL (sued as CHRISTINA ANOSIKE), MIGUEL AGUILERA, JASON VILADIU, GUSTAVO MARTINEZ, JEFF AMADO, ERNESTO AGUIRRE, TREYVONNE JAMES (sued in duplicate J. TREYVONNE), BERNARDO ROMERO, MICHAEL JOHNSON, ANDREW TORRES, ALLEN WERESKI, BLADE ROMANS, LINDA GUTIERREZ, AND THOMAS MACE

*25163*



COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

**PROOF OF SERVICE**
**(CCP §§ 1013(a) and 2015.5; FRCP 5)**

State of California, )
) ss.
County of Los Angeles. )

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action. My business address is 790 E. Colorado Boulevard, Suite 600, Pasadena, CA 91101.

On this date, I served the foregoing document described as **NOTICE OF MOTION AND MOTION OF DEFENDANT COUNTY OF SAN DIEGO TO EXCLUDE OR LIMIT THE OPINIONS AND TESTIMONY OF PLAINTIFFS' EXPERT GARY RANEY; MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action by placing same in a sealed envelope, addressed as follows:

**SEE ATTACHED SERVICE LIST**

☐ **(BY MAIL)** - I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail in Pasadena, California to be served on the parties as indicated on the attached service list. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **(BY CERTIFIED MAIL)** – I caused such envelope(s) with postage thereon fully prepaid via Certified Mail Return Receipt Requested to be placed in the United States Mail in Pasadena, California.

☐ **FEDERAL EXPRESS** - I caused the envelope to be delivered to an authorized courier or driver authorized to receive documents with delivery fees provided for.

☒ **(BY ELECTRONIC FILING AND/OR SERVICE)** – I served a true copy, with all exhibits, electronically on designated recipients listed on the attached service list.

☐ **(ELECTRONIC SERVICE PER CODE CIV. PROC., § 1010.6)** – By prior consent or request or as required by rules of court (Code Civ. Proc., § 1010.6 (amended Jan. 1, 2021); Code Civ. Proc., § 1013(g); Cal. Rules of Court, rule 2.251(a)).

☐ **(BY PERSONAL SERVICE)** - I caused such envelope(s) to be delivered by hand to the office(s) of the addressee(s).

---

Executed on November 13, 2026 at Pasadena, California.

☐ **(STATE)** - I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ **(FEDERAL)** - I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

---------------------------------------------------------------
NATALIE URBINO
nurbino@ccllp.law

*25163*





COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

**ESTATE OF LONNIE RUPARD ET AL. V. COUNTY OF SAN DIEGO ET AL.**
**Case Number: 3:23-cv-1357-CAB-JAC**
**CCLLP File Number: 25163**

**SERVICE LIST**

Jeremiah A. Lowe
LOWE LAW, LLP
402 W. Broadway, Suite 1720
San Diego, CA 92101
T: (619) 878-2725 - F: (619) 878-2737
jeremiah@lowelawapc.com
laura@lowelawapc.com
**ATTORNEYS FOR PLAINTIFF JUSTINO RUPARD and the Estate of Lonnie Rupard**

Eugene G. Iredale
Julia Yoo
Sarah Musumeci
Peter Bibring
IREDALE & YOO, APC
105 West F Street, Fourth Floor
San Diego, CA 92101-6036
T: (619) 233-1525 - F: (619) 233-3221
egiredale@iredalelaw.com
jyoo@iredalelaw.com
smusumeci@iredalelaw.com
admin@iredalelaw.com
creherman@iredalelaw.com
gjun@iredalelaw.com
sbrockett@iredalelaw.com
pbibring@iredalelaw.com
**ATTORNEYS FOR PLAINTIFF JUSTINO RUPARD**

Alexandra Sennet
Kimberly B. Pinkerton
TRESSLER LLP
909 North Pacific Coast Highway, Suite 840
El Segundo, CA 90245
T: (310) 203-4800 - F: (323) 486-2704
asennet@tresslerllp.com
kpinkerton@tresslerllp.com
**ATTORNEYS FOR DEFENDANTS ANTHONY CRUZ, M.D. and LIBERTY HEALTHCARE OF CALIFORNIA, INC.**

Jerome Murphy
TRESSLER LLP
233 S. Wacker Drive, 61st Floor
Chicago, IL 60606
jmurphy@tresslerllp.com
**ATTORNEY FOR DEFENDANTS ANTHONY CRUZ, M.D. and LIBERTY HEALTHCARE OF CALIFORNIA, INC.**

Corey E. Krueger
BURGER, MEYER & D'ANGELO, LLP
999 Corporate Dr., Suite 225
Ladera Ranch, CA 92694
T: (949) 427-1888 - F: (949) 427-1889
ckrueger@burgermeyer.com
vcuevas-carey@burgermeyer.com
**ATTORNEYS FOR DEFENDANTS ANTHONY CRUZ, M.D. and LIBERTY HEALTHCARE OF CALIFORNIA, INC.**