**Rada Feldman, Esq. (State Bar No. 285931)**
**Nicholas R. Colletti, Esq. (State Bar No. 283947)**
**Robert S. Kahn, Esq. (State Bar No. 231277)**
**Caroline M. Park, Esq. (State Bar No. 334008)**
**Cristina I. Butoiu, Esq. (State Bar No. 335902)**
**COLLINS + COLLINS LLP**
**2011 Palomar Airport Road, Suite 207**
**Carlsbad, CA 92011**
**(760) 274-2110 - FAX (760) 274-2111**
**Email: rfeldman@ccllp.law**
**Email: ncolletti@ccllp.law**
**Email: rkahn@ccllp.law**
**Email: cpark@ccllp.law**
**Email: cbutoiu@ccllp.law**

Attorneys for Defendants,
COUNTY OF SAN DIEGO, BILL GORE, KELLY MARTINEZ, JON MONTGOMERY, CHRISTINA GOODALL (sued as CHRISTINA ANOSIKE), MIGUEL AGUILERA, JASON VILADIU, GUSTAVO MARTINEZ, JEFF AMADO, ERNESTO AGUIRRE, TREYVONNE JAMES (sued in duplicate J. TREYVONNE), BERNARDO ROMERO, MICHAEL JOHNSON, ANDREW TORRES, ALLEN WERESKI, BLADE ROMANS, LINDA GUTIERREZ, AND THOMAS MACE

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ESTATE OF LONNIE RUPARD, THROUGH ITS COURT-APPOINTED ADMINISTRATOR TERRI LOPEZ;<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF SAN DIEGO; et al.<br><br>Defendants. | CASE NO. 3:23-cv-1357-CAB-JAC<br>***Assigned to Hon. Cathy Ann Bencivengo***<br>***Magistrate Hon. Janet A. Cabral in Dept. 15A***<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT COUNTY OF SAN DIEGO TO EXCLUDE OR LIMIT THE OPINIONS AND TESTIMONY OF PLAINTIFFS' EXPERT HOMER VENTERS, M.D.; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: December 18, 2026 |

Time: ________
Dept.: 15A

**Complaint Filed: 7/26/2023**
**Trial Date: 2/22/2027**

**PLEASE TAKE NOTICE** that, at the date and time set forth above, Defendant County of San Diego will and hereby does move the Court, pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), for an order excluding or, in the alternative, limiting the opinions and testimony of Plaintiff's retained correctional-health expert, Homer Venters, M.D.

The motion is based on this Notice, the following Memorandum of Points and Authorities, the concurrently filed Declaration of Robert S. Kahn and the exhibits thereto, the pleadings and records on file, and any argument the Court may entertain.

DATED: November 13, 2026 COLLINS + COLLINS LLP

By: ______________________
NICHOLAS R. COLLETTI
RADA FELDMAN
ROBERT S. KAHN
CAROLINE M. PARK
CRISTINA I. BUTOIU
Attorneys for Defendants
COUNTY OF SAN DIEGO, BILL GORE, KELLY MARTINEZ, JON MONTGOMERY, CHRISTINA GOODALL (sued as CHRISTINA ANOSIKE), MIGUEL AGUILERA, JASON VILADIU, GUSTAVO MARTINEZ, JEFF AMADO, ERNESTO AGUIRRE, TREYVONNE JAMES (sued in duplicate J. TREYVONNE), BERNARDO ROMERO, MICHAEL JOHNSON, ANDREW TORRES, ALLEN WERESKI, BLADE ROMANS, LINDA GUTIERREZ, AND THOMAS MACE

COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

**TABLE OF CONTENTS**


I. INTRODUCTION. 1

II. LEGAL STANDARD. 2

III. ARGUMENT. 3

A. Dr. Venters offers no admissible causation opinion and should be precluded from suggesting the County caused Mr. Rupard's death. 3

B. Dr. Venters' reliance on voluntary accreditation guidelines does not supply a reliable standard of care and risks confusing the jury about the governing legal standard. 4

C. Dr. Venters may not offer legal conclusions, including that any defendant was deliberately indifferent. 5

D. Dr. Venters is not qualified to opine on psychiatric decision-making, California involuntary-treatment law, or forensic pathology. 6

E. Dr. Venters may not narrate the record or serve as a conduit for the jail and medical records. 7

F. Dr. Venters' "systemic failure" opinions are conclusory and rest on supposition and reverse-engineered reasoning, not a reliable methodology. 7

G. Dr. Venters' custody-monitoring and "systemic failure" opinions are needlessly cumulative of Plaintiffs' other experts. 8

H. Dr. Venters should be confined to the opinions disclosed in his report. 9

I. Dr. Venters should be precluded from opining on the actions of specific individual County defendants and on the nursing standard of care, which his report does not support. 10

J. Dr. Venters' deference to the Medical Examiner's "homicide" manner-of-death classification should be excluded under Rule 403. 11

K. In the alternative, the cumulative effect of these defects warrants excluding Dr. Venters' testimony in its entirety. 11

IV. CONCLUSION. 12


COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

# TABLE OF AUTHORITIES

Page(s)

Federal Cases

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
613 F. Supp. 3d 1308 (S.D. Cal. 2020)........ 7
*Barabin v. Scapa Dryer Felts, Inc.*,
No. C07-1454JLR, 2018 WL 1570781 (W.D. Wash. Mar. 30, 2018)........ 9
*Cabrera v. Cordis Corp.*,
134 F.3d 1418 (9th Cir. 1998)........ 9
*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)........ 2
*Engilis v. Monsanto Co.*,
151 F.4th 1040 (9th Cir. 2025)........ passim
*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997)........ 3, 7, 8
*Goodman v. Staples The Off. Superstore, LLC*,
644 F.3d 817 (9th Cir. 2011)........ 9
*Hughes v. Judd*,
108 F. Supp. 3d 1167 (M.D. Fla. 2015)........ 5
*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
87 F. Supp. 3d 928 (N.D. Cal. 2015)........ 9
*Jinro Am. Inc. v. Secure Invs., Inc.*,
266 F.3d 993 (9th Cir. 2001)........ 11
*Krause v. County of Mohave*,
459 F. Supp. 3d 1258 (D. Ariz. 2020)........ 12
*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999)........ 2
*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
523 F.3d 1051 (9th Cir. 2008)........ 11
*Neal-Lomax v. Las Vegas Metro. Police Dep't*,
574 F. Supp. 2d 1193 (D. Nev. 2008)........ 4, 6
*Nyerges v. Hillstone Rest. Grp. Inc.*,
No. CV-19-02376-PHX-DWL, 2021 WL 3290463 *(D. Ariz. Aug. 2, 2021)*........ 3, 4
*Parsons v. Ryan*,
No. CV-12-00601-PHX-NVW, 2014 WL 3721030 (D. Ariz. July 28, 2014)........ 9
*United States v. Jefferson*,
No. 2:23-CR-00109-LK, 2025 WL 97378 (W.D. Wash. Jan. 12, 2025)........ 8
*United States v. Valencia-Lopez*,
971 F.3d 891 (9th Cir. 2020)........ 3, 6

COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

*United States v. Vera*,
770 F.3d 1232 (9th Cir. 2014) ........................................................................ 7
*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
259 F.3d 1101 (9th Cir. 2001) ........................................................................ 9

Federal Rules

Fed. R. Evid. 403........................................................................ 7, 8, 11, 12
Fed. R. Evid. 702........................................................................ passim
Fed. R. Evid. 702(b)........................................................................ 3
Fed. R. Evid. 702(d)........................................................................ 2

COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION.

Lonnie Rupard died in the San Diego Central Jail. The County Medical Examiner certified the cause of death as "Pneumonia, Malnutrition and Dehydration in the setting of neglected schizophrenia" and the manner as homicide. [Declaration of Robert S. Kahn ("Kahn Decl.") ¶ 6 & Ex. D.] To connect that death to the County, Plaintiffs rely on Dr. Homer Venters. But Dr. Venters' own report and sworn testimony place several of his opinions outside the bounds Rule 702 permits.

The County does not ask the Court to exclude Dr. Venters because he is a correctional-health physician rather than a specialist in some other field, and it does not contend that incarcerated patients are owed a lesser standard of care. A mere lack of experience in the correctional setting ordinarily goes to the weight, not the admissibility, of an expert's testimony. The County's challenge is narrower and rests on admissibility defects that survive that holding: Dr. Venters offers no causation opinion (Kahn Decl. ¶ 4(a)); he concedes he cannot tie his guideline-based criticisms to any governing legal standard (Kahn Decl. ¶ 4(c)); he is not qualified in the specialties several of his opinions require (Kahn Decl. ¶ 4(e)–(g)); his "systemic failure" opinions rest on no articulated methodology (Kahn Decl. ¶ 4(h)–(i)); he disclaims any legal opinion (Kahn Decl. ¶ 4(b)); he narrates the jail and medical records as a factual narrative the jury can read for itself; his custody-monitoring and "systemic failure" opinions duplicate those of Plaintiffs' separately retained jail-practices, psychiatric, and nursing experts; and he should be confined to his report and precluded from opining on specific individuals or a nursing standard of care his report does not support.

Rule 702, as amended effective December 1, 2023, requires Plaintiffs to show by a preponderance that each of Dr. Venters' opinions rests on a reliable methodology reliably applied, and that it will help the jury decide a fact in issue. (*Fed. R. Evid.* 702) The Ninth Circuit has confirmed that there is "no presumption in favor of admission" and that the Court "cannot abdicate its role as gatekeeper." (*Engilis v. Monsanto Co.*,

COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

151 F.4th 1040, 1049–1050 (9th Cir. 2025)) Measured against that standard, Dr. Venters' opinions should be excluded or sharply limited.

## II. LEGAL STANDARD.

Federal Rule of Evidence 702 governs the admissibility of expert testimony. As amended December 1, 2023, the Rule permits a qualified expert to testify only if "the proponent demonstrates to the court that it is more likely than not" that (a) the testimony will help the trier of fact, (b) it is "based on sufficient facts or data," (*Engilis v. Monsanto Co.*, 151 F.4th 1040, 1053 (9th Cir. 2025)) (c) it is "the product of reliable principles and methods," and (*Fed. R. Evid.* 702) (d) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." (*Fed. R. Evid.* 702(d); *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049 (9th Cir. 2025)) The 2023 amendment was adopted precisely because "many courts" had wrongly treated "the sufficiency of an expert's basis, and the application of the expert's methodology, [as] questions of weight and not admissibility" — an incorrect application of Rules 702 and 104(a). (*Fed. R. Evid.* 702 advisory committee's note to 2023 amendment)

The trial court acts as a "gatekeeper" to ensure expert testimony "is not only relevant, but reliable," a function that applies to all expert testimony, scientific or experience-based. (*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1047 (9th Cir. 2025)) The proponent bears the burden of establishing each requirement by a preponderance of the evidence. (*Fed. R. Evid.* 702) An opinion is "relevant if the knowledge underlying it has a valid connection to the pertinent inquiry" and "reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." (*Engilis v. Monsanto Co.*, 151 F.4th 1040, 1047 (9th Cir. 2025)) Post-amendment, there is "no presumption in favor of admission," and the court cannot abdicate its role as gatekeeper, nor delegate that role to the jury. (*Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049–1050 (9th Cir. 2025))

///

COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

These requirements are commonly described as three distinct inquiries — qualification, reliability, and fit. The gatekeeping inquiry is directed at the reliability and fit of each opinion, not at whether the witness practices in a correctional setting; a mere lack of correctional-medicine experience goes to weight, and "[s]haky but admissible evidence is to be attacked by cross examination …not exclusion." (*Nyerges v. Hillstone Rest. Grp. Inc.*, No. CV-19-02376-PHX-DWL, 2021 WL 3290463, at *2 (D. Ariz. Aug. 2, 2021)) A court need not, however, "admit opinion evidence that is connected to existing data only by the* ipse dixit *of the expert"; it "may conclude that there is simply too great an analytical gap between the data and the opinion proffered."* (*Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)) An expert's "general qualifications" and experience, while "relevant, and indeed necessary," "cannot establish the reliability and thus the admissibility of the expert testimony"; the expert must link that experience to the specific conclusion and explain the methodology. (*United States v. Valencia-Lopez*, 971 F.3d 891, 900 (9th Cir. 2020)) A conclusory opinion offered without a reasoned, articulated basis fails Rule 702(b). (*Engilis v. Monsanto Co.*, 151 F.4th 1040, 1053 (9th Cir. 2025))

## III. ARGUMENT.

### A. <u>Dr. Venters offers no admissible causation opinion and should be precluded from suggesting the County caused Mr. Rupard's death.</u>

An opinion is relevant only if it has a "valid connection to the pertinent inquiry." (*Engilis v. Monsanto Co.*, 151 F.4th 1040, 1047 (9th Cir. 2025)) The pertinent inquiry in a wrongful-death-in-custody case includes whether the challenged conduct caused the death. Dr. Venters disclaims any opinion on that question. He testified that, as to cause of death, "I don't have any independent opinion" and "I haven't offered a separate opinion from what the medical examiner offered," and that he "take[s] it at [the Medical Examiner's] word about the three causes of Mr. Rupard's death." (Kahn Decl. ¶ 4(a) & Ex. B at 62–64.) Asked directly, he agreed he is "not offering any independent causation" opinion and "defer[s] to the medical examiner" on cause of



COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

death. (Kahn Decl. ¶ 4(a).) His report contains no opinion stated to a reasonable degree of medical certainty. (Kahn Decl. ¶ 3 & Ex. A.)

Where a death has multiple potential contributing causes, causation must be established through a qualified expert opinion given to a reasonable degree of medical certainty; a bare "possibility" will not do. (*Neal-Lomax v. Las Vegas Metro. Police Dep't*, 574 F. Supp. 2d 1193, 1198 (D. Nev. 2008)) Dr. Venters supplies neither. To the extent he will nonetheless testify that the County's claimed failures rendered the death "preventable" and "caused" Mr. Rupard's decline, that testimony "logically flows" from his standard-of-care criticisms rather than from any independent causation analysis — and an opinion that merely flows from a standard-of-care opinion, untethered to a reliable causal methodology, is inadmissible. (*Nyerges v. Hillstone Rest. Grp. Inc.*, No. CV-19-02376-PHX-DWL, 2021 WL 3290463, at *10 (D. Ariz. Aug. 2, 2021)) The Court should bar Dr. Venters from offering, directly or by implication, any opinion that the County's conduct caused or contributed to Mr. Rupard's death.

### B. Dr. Venters' reliance on voluntary accreditation guidelines does not supply a reliable standard of care and risks confusing the jury about the governing legal standard.

This argument does not turn on Dr. Venters' correctional-medicine experience — which the County accepts goes to weight — but on his own concession that his guideline-based criticisms cannot be tied to any governing legal standard. Dr. Venters' liability opinions rest on NCCHC and ACA guidelines, which his report repeatedly invokes as the "standard of care." (Kahn Decl. ¶ 3 & Ex. A.) He conceded at deposition, however, that NCCHC accreditation is a voluntary thing and the County was "not legally required to be accredited," and that ACA is a "pseudo-accrediting body" whose standards are likewise voluntary and, absent facility adoption, "general standards of care" whose application to a specific facility "might not be clear." Most tellingly, he testified: "My expertise is purely on the kind of adequacy of care from the clinical

COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

standpoint, so I don't think I would ever be in a position to say that a level of care, even if I thought it was inadequate, met or didn't meet some sort of legal standard." (Kahn Decl. ¶ 4(c).) He agreed that his criticisms are based on correctional standards of care, not any California laws. (Kahn Decl. ¶ 4(d).)

An expert may not convert a private organization's aspirational "best practices" into the legal standard governing the County's conduct. A federal court confronting this very issue found "unconvincing[]" the contention that NCCHC standards are "sort of the floor" and credited testimony that the standards are "best practices" sought by only about twenty percent of facilities and "not constitutionally required." (*Hughes v. Judd*, 108 F. Supp. 3d 1167, 1250–1251 (M.D. Fla. 2015)) Because Dr. Venters himself disclaims the ability to tie his guideline-based criticisms to any governing legal standard, those opinions lack a "valid connection to the pertinent inquiry" and threaten to mislead the jury into treating voluntary guidelines as the measure of the County's legal duty. (*Engilis v. Monsanto Co.*, 151 F.4th 1040, 1047 (9th Cir. 2025)) The Court should preclude Dr. Venters from characterizing NCCHC or ACA guidelines as "the standard of care" or as a measure of the County's legal obligations.

**C. <u>Dr. Venters may not offer legal conclusions, including that any defendant was deliberately indifferent.</u>**

Dr. Venters testified he is "not offering any type of legal opinions," that he has no "expertise on what is a constitutional standard because [he is] not an attorney," and that he is not offering any opinion that any defendant was deliberately indifferent in the constitutional sense. (Kahn Decl. ¶ 4(b).) The Court should hold him to those concessions and preclude testimony that any County policy, practice, or actor was deliberately indifferent, constitutionally inadequate, or legally liable — opinions that would not help the jury and that invade the province of the Court and jury. (*Engilis v. Monsanto Co.*, 151 F.4th 1040, 1047 (9th Cir. 2025))

///

///

COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

**D. Dr. Venters is not qualified to opine on psychiatric decision-making, California involuntary-treatment law, or forensic pathology.**

This argument does not depend on Dr. Venters' correctional-medicine experience; it challenges opinions that fall outside *any* field in which Dr. Venters is qualified. General medical credentials do not qualify a physician to opine in every specialty; qualifications "cannot establish the reliability and thus the admissibility" of an opinion the expert is not equipped to give. (*United States v. Valencia-Lopez*, 971 F.3d 891, 900 (9th Cir. 2020)) A board-certified forensic pathologist has been held unqualified to opine outside the specific subject of his expertise. (*Neal-Lomax v. Las Vegas Metro. Police Dep't*, 574 F. Supp. 2d 1193, 1203–1204 (D. Nev. 2008))

Dr. Venters admits he is "not a board-certified psychiatrist," did not complete a psychiatry residency, and has never personally practiced clinical psychiatry or prescribed or managed psychiatric medications for patients as their treating psychiatrist at any point in his career. (Kahn Decl. ¶ 4(e).) Yet his report faults the treating psychiatrist's clinical judgment — medication discontinuation, the decision not to transfer, follow-up intervals. (Kahn Decl. ¶ 3 & Ex. A.) He also admits he is "not an expert …in the specific 5150 hold," is "not familiar" with California's Lanterman-Petris-Short Act, has never initiated a 5150 or 5250 hold, and does not know how a Riese petition "takes place." (Kahn Decl. ¶ 4(g).) He is licensed only in New York, not California, and his sole time inside a San Diego County jail was part of a day for a best-practices walk-through — further confirming he lacks the California-specific grounding his involuntary-treatment opinions would require. (Kahn Decl. ¶ 4(g).) And he concedes he is "not a forensic pathologist" and performed no autopsy. (Kahn Decl. ¶ 4(f).) Opinions that depend on psychiatric prescribing judgment, California involuntary-treatment mechanisms, or the physiology of death fall outside the "knowledge and experience of the relevant discipline" for which Dr. Venters is qualified and should be excluded. (*Engilis v. Monsanto Co.*, 151 F.4th 1040, 1047 (9th Cir. 2025))

COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

**E. Dr. Venters may not narrate the record or serve as a conduit for the jail and medical records.**

Beyond the specific opinions addressed above, a substantial portion of Dr. Venters' report is a document-by-document recitation of the medical and custodial records, and his stated method was, by his own account, "primarily a records review." (Kahn Decl. ¶ 4(h) & Ex. A.) An expert may not be "presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence," and "to the extent an expert simply rehashes otherwise admissible evidence about which [s]he has no personal knowledge, such evidence — taken on its own — is inadmissible." (*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 613 F. Supp. 3d 1308, 1322–23 (S.D. Cal. 2020)) An expert who merely relays what the records say functions "as little more than a conduit or transmitter" for that evidence rather than applying his own expertise. (*United States v. Vera*, 770 F.3d 1232, 1237–38 (9th Cir. 2014)) Jurors are capable of reviewing the jail and medical records and drawing their own inferences, and a narrative delivered through an expert risks unduly influencing them. (*Fed. R. Evid.* 403) Dr. Venters may explain the facts underlying any genuinely admissible correctional-health opinion, but he may not narrate the record for the jury; the Court should preclude the record-summary portions of his report and testimony.

**F. Dr. Venters' "systemic failure" opinions are conclusory and rest on supposition and reverse-engineered reasoning, not a reliable methodology.**

Rule 702(b)–(d) requires that an opinion rest on sufficient facts and a reliable methodology reliably applied. (*Fed. R. Evid.* 702) A "conclusory assertion of his subjective opinion" with "no explanation" fails that test, and a court may exclude an opinion connected to the data "only by the *ipse dixit* of the expert." (*Engilis v. Monsanto Co.*, 151 F.4th 1040, 1053 (9th Cir. 2025); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997))

COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

Dr. Venters identified no methodology beyond "primarily a records review." Asked whether he used "a specific methodology," he described only reviewing records and assessing "the adequacy and the timeliness of the response." (Kahn Decl. ¶ 4(h).) His report's "Role and Methods" section is a list of documents reviewed, not a method. (Kahn Decl. ¶ 3 & Ex. A.) Critically, on the central question his retention poses — whether deficiencies were "individual or systemic" — he repeatedly conceded he cannot say: "it's not evident to me whether these errors are always individual or systemic," and "[i]t's unclear to me …if these reflect deficiencies in the training that the staff or oversight that they received or whether they even had knowledge that their care wasn't meeting the standard of care." He likewise conceded that he just does not know the why, the underlying reason behind every one of those failures. (Kahn Decl. ¶ 4(i).) An opinion that the County's conduct was "systemic" — offered by a witness who admits he cannot identify a reliable basis to distinguish systemic failure from individual error — is exactly the "analytical gap" Rule 702 forbids. (*Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); Fed. R. Evid. 702) The deeper flaw is that Dr. Venters labels the conduct "systemic" as a conclusion while conceding he cannot test it — he does not know "the why" behind the failures and cannot distinguish systemic from individual error. An expert who reaches his conclusion "without testing that hypothesis in any manner" has not employed a reliable methodology. (*United States v. Jefferson*, No. 2:23-CR-00109-LK, 2025 WL 97378, at *13–14 (W.D. Wash. Jan. 12, 2025)) These opinions should be excluded.

**G. Dr. Venters' custody-monitoring and "systemic failure" opinions are needlessly cumulative of Plaintiffs' other experts.**

Even a qualified expert's testimony may be excluded under Rule 403, which authorizes the Court to bar "needlessly presenting cumulative evidence." (*Fed. R. Evid.* 403) Dr. Venters' custody-monitoring and "systemic failure" opinions overlap the opinions of Plaintiffs' separately retained jail-practices expert, Gary Raney, who addresses the same monitoring, segregation, and organizational-failure subjects; his

COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

criticisms of the treating psychiatrist's clinical judgment overlap those of Plaintiffs' forensic-psychiatry expert, Dr. Daphne Glindmeyer; and Plaintiffs have separately retained a nursing expert, Lori Roscoe, to address nursing care. (Kahn Decl. ¶ 3 & Ex. A.) The Ninth Circuit has affirmed exclusion of expert testimony that "would have been a needless presentation of cumulative evidence" whose probative value was "outweighed by the waste of time." (*Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1421–22 (9th Cir. 1998)) A difference in specialty, "standing alone," does not render substantially similar testimony non-cumulative. (*Barabin v. Scapa Dryer Felts, Inc.*, No. C07-1454JLR, 2018 WL 1570781, at *3 (W.D. Wash. Mar. 30, 2018)) In a prison-conditions case on point, the court held that "[d]uplicative expert testimony will be excluded, absent leave of the court," and required plaintiffs to "elect which witness will testify on which issue." (*Parsons v. Ryan*, No. CV-12-00601-PHX-NVW, 2014 WL 3721030 (D. Ariz. July 28, 2014)) To the extent Dr. Venters' monitoring and organizational-failure opinions duplicate those of Mr. Raney, Dr. Glindmeyer, or Ms. Roscoe, the Court should preclude the duplication or require Plaintiffs to elect a single expert per issue.

**H. <u>Dr. Venters should be confined to the opinions disclosed in his report.</u>**

An expert's Rule 26(a)(2)(B) report must contain a complete statement of all opinions and the basis and reasons for them, and Rule 37(c)(1) makes exclusion of an opinion — or a basis — not disclosed in the report automatic and self-executing, absent substantial justification or harmlessness. (*Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)) That bar reaches not only ultimate opinions but their bases, so an expert may not rely at trial on a standard, study, or record first surfaced at deposition. (*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 87 F. Supp. 3d 928, 948–49 (N.D. Cal. 2015)) Dr. Venters confirmed he has "no other opinions that [he] plan[s] to offer" beyond his reports and deposition. (Kahn Decl. ¶ 4(k).) The County requests that Dr. Venters be held to his disclosed opinions and

COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

precluded from offering new or expanded opinions at trial, including any attempt to supply the causation, qualification, or methodological foundations absent from his report and testimony.

**I. Dr. Venters should be precluded from opining on the actions of specific individual County defendants and on the nursing standard of care, which his report does not support.**

An expert may describe deficiencies in the care a decedent received, but he may not opine on the actions of specific individuals his report does not address, or offer a standard-of-care opinion in a field for which he is not qualified and that his report does not support. The same limits apply here. Dr. Venters is a correctional-health physician, not a nurse, and Plaintiffs have separately retained a nursing expert, Lori Roscoe, to address nursing care. (See Kahn Decl. ¶ 3 & Ex. A (Pls.' Expert Disclosures).) To the extent Dr. Venters would offer a nursing standard-of-care opinion, he is not qualified to give it and his report does not establish a reliable basis for it, and he should be precluded from doing so.

Dr. Venters' own concessions confirm he cannot attribute the deficiencies he describes to the conduct of any specific County actor. He testified that key decisions were "not within Dr. Cruz's control" and "would not have been exclusively Dr. Cruz's," and that he could not say whether the failures he identified were "individual or systemic." (Kahn Decl. ¶ 4(i)–(j).) He further testified that medication choice "is very much a matter of clinical decision making" by the treating psychiatrist, and that he had "no basis" to say Dr. Cruz caused the jail's lack of a peer-review process or clinical mortality review. (Kahn Decl. ¶ 4(j).) Dr. Venters may describe deficiencies in the correctional-health care Mr. Rupard received, but he should be precluded from opining on the actions of any specific individual County defendant, and on any nursing standard of care, that his report does not specifically address.

///

///

COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

**J. Dr. Venters' deference to the Medical Examiner's "homicide" manner-of-death classification should be excluded under Rule 403.**

To the extent Dr. Venters would repeat or sponsor the Medical Examiner's "homicide" manner-of-death classification — which he adopts only by deference, having disclaimed any independent causation opinion (Kahn Decl. ¶ 4(a)) — that testimony should be excluded under Rule 403. Presenting the charged term "homicide" through a correctional-health expert who concedes cause and manner of death are outside his expertise has little probative value on the questions within his discipline and a high risk of unfair prejudice and of misleading the jury into treating a coroner's classification as a finding of culpability. (Kahn Decl. ¶ 6.) Expert testimony may be excluded where its probative value is substantially outweighed by the danger of unfair prejudice or jury confusion. (*Jinro Am. Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1006–07 (9th Cir. 2001)) The County identifies the specific testimony (the "homicide" label), the specific prejudice (a lay inference of culpability from a coroner's term), and the reason its probative value is minimal (the witness disclaims causation expertise). The Court should preclude Dr. Venters from presenting the "homicide" manner-of-death classification to the jury.

**K. In the alternative, the cumulative effect of these defects warrants excluding Dr. Venters' testimony in its entirety.**

Finally, and in the alternative, once the defective categories addressed above are removed, little admissible opinion remains, and what remains is unhelpful. Expert testimony must "help the trier of fact," and testimony that "merely tells the jury what result to reach is not sufficiently helpful to the trier of fact to be admissible." (*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1059–60 (9th Cir. 2008); *Fed. R. Evid.* 702) Dr. Venters disclaims causation, concedes his guideline criticisms are not the governing legal standard, disclaims any legal opinion, and admits he cannot say whether the failures he describes were individual or systemic. (Kahn Decl. ¶ 4(a)–(c), (h)–(i).) Weighing the evidence and resolving such factual matters "is

COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

not outside the common ability and knowledge of a layperson." (*Krause v. County of Mohave*, 459 F. Supp. 3d 1258, 1264–65 (D. Ariz. 2020)) Should the Court grant the limitations sought above, the County respectfully submits that the testimony left to Dr. Venters would be cumulative of Plaintiffs' other experts and unhelpful to the jury, and should be excluded in its entirety. The County offers this as an alternative to, not a substitute for, the targeted limitations set forth above.

## IV. CONCLUSION.

For the foregoing reasons, the County respectfully requests that the Court exclude Dr. Venters' testimony or, in the alternative, limit it to preclude: (1) any opinion on the cause of or contribution to Mr. Rupard's death; (2) any characterization of NCCHC or ACA guidelines as the governing legal standard of care; (3) any legal conclusion, including deliberate indifference; (4) any opinion requiring psychiatric, California involuntary-treatment, or forensic-pathology expertise; (5) any narration or recitation of the records offered as expert testimony; (6) conclusory "systemic failure" opinions lacking a reliable methodology; (7) any custody-monitoring or "systemic failure" opinion that is needlessly cumulative of Plaintiffs' jail-practices, psychiatric, or nursing experts, or an order requiring Plaintiffs to elect a single expert per issue; (8) any opinion or basis not disclosed in his report; (9) any opinion on the actions of specific individual County defendants, or on the nursing standard of care, that his report does not support; and (10) the Medical Examiner's "homicide" manner-of-death classification, under Rule 403. In the alternative, the County requests that the Court exclude Dr. Venters' testimony in its entirety as cumulative and unhelpful.

///

///

///

///

///

///

COLLINS + COLLINS LLP
2011 Palomar Airport Rd., Suite 207, Carlsbad, CA 92011
T: (760) 274-2100
F: (760) 274-2111

DATED: November 13, 2026 COLLINS + COLLINS LLP

By: ______________________________
NICHOLAS R. COLLETTI
RADA FELDMAN
ROBERT S. KAHN
CAROLINE M. PARK
CRISTINA I. BUTOIU
Attorneys for Defendants
COUNTY OF SAN DIEGO, BILL GORE, KELLY MARTINEZ, JON MONTGOMERY, CHRISTINA GOODALL (sued as CHRISTINA ANOSIKE), MIGUEL AGUILERA, JASON VILADIU, GUSTAVO MARTINEZ, JEFF AMADO, ERNESTO AGUIRRE, TREYVONNE JAMES (sued in duplicate J. TREYVONNE), BERNARDO ROMERO, MICHAEL JOHNSON, ANDREW TORRES, ALLEN WERESKI, BLADE ROMANS, LINDA GUTIERREZ, AND THOMAS MACE

**PROOF OF SERVICE**
**(CCP §§ 1013(a) and 2015.5; FRCP 5)**

State of California, )
) ss.
County of Los Angeles. )

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action. My business address is 790 E. Colorado Boulevard, Suite 600, Pasadena, CA 91101.

On this date, I served the foregoing document described as **NOTICE OF MOTION AND MOTION OF DEFENDANT COUNTY OF SAN DIEGO TO EXCLUDE OR LIMIT THE OPINIONS AND TESTIMONY OF PLAINTIFFS' EXPERT HOMER VENTERS, M.D.; MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action by placing same in a sealed envelope, addressed as follows:

**SEE ATTACHED SERVICE LIST**

☐ **(BY MAIL)** - I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail in Pasadena, California to be served on the parties as indicated on the attached service list. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **(BY CERTIFIED MAIL)** – I caused such envelope(s) with postage thereon fully prepaid via Certified Mail Return Receipt Requested to be placed in the United States Mail in Pasadena, California.

☐ **FEDERAL EXPRESS** - I caused the envelope to be delivered to an authorized courier or driver authorized to receive documents with delivery fees provided for.

☒ **(BY ELECTRONIC FILING AND/OR SERVICE)** – I served a true copy, with all exhibits, electronically on designated recipients listed on the attached service list.

☐ **(ELECTRONIC SERVICE PER CODE CIV. PROC., § 1010.6)** – By prior consent or request or as required by rules of court (Code Civ. Proc., § 1010.6 (amended Jan. 1, 2021); Code Civ. Proc., § 1013(g); Cal. Rules of Court, rule 2.251(a)).

☐ **(BY PERSONAL SERVICE)** - I caused such envelope(s) to be delivered by hand to the office(s) of the addressee(s).

---

Executed on November 13, 2026 at Pasadena, California.

☐ **(STATE)** - I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ **(FEDERAL)** - I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

---------------------------------------------------------------------------------
NATALIE URBINO
nurbino@ccllp.law

**ESTATE OF LONNIE RUPARD ET AL. V. COUNTY OF SAN DIEGO ET AL.**
**Case Number: 3:23-cv-1357-CAB-JAC**
**CCLLP File Number: 25163**

**SERVICE LIST**

Jeremiah A. Lowe
LOWE LAW, LLP
402 W. Broadway, Suite 1720
San Diego, CA 92101
T: (619) 878-2725 - F: (619) 878-2737
jeremiah@lowelawapc.com
laura@lowelawapc.com
**ATTORNEYS FOR PLAINTIFF JUSTINO RUPARD and the Estate of Lonnie Rupard**

Eugene G. Iredale
Julia Yoo
Sarah Musumeci
Peter Bibring
IREDALE & YOO, APC
105 West F Street, Fourth Floor
San Diego, CA 92101-6036
T: (619) 233-1525 - F: (619) 233-3221
egiredale@iredalelaw.com
jyoo@iredalelaw.com
smusumeci@iredalelaw.com
admin@iredalelaw.com
creherman@iredalelaw.com
gjun@iredalelaw.com
sbrockett@iredalelaw.com
pbibring@iredalelaw.com
**ATTORNEYS FOR PLAINTIFF JUSTINO RUPARD**

Corey E. Krueger
Alexandra Sennet
Kimberly B. Pinkerton
TRESSLER LLP
909 North Pacific Coast Highway, Suite 840
El Segundo, CA 90245
T: (310) 203-4800 - F: (323) 486-2704
ckrueger@tresslerllp.com
asennet@tresslerllp.com
kpinkerton@tresslerllp.com
**ATTORNEYS FOR DEFENDANTS ANTHONY CRUZ, M.D. and LIBERTY HEALTHCARE OF CALIFORNIA, INC.**

Jerome Murphy
TRESSLER LLP
233 S. Wacker Drive, 61st Floor
Chicago, IL 60606
jmurphy@tresslerllp.com
**ATTORNEY FOR DEFENDANTS ANTHONY CRUZ, M.D. and LIBERTY HEALTHCARE OF CALIFORNIA, INC.**